IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**TOMAS HAYDEN BARNES**,　　　　*

　　　　　　　　　　　　　　　　*

　　　Plaintiff,　　　　　　　　*

　　　　　　　　　　　　　　　　*

v.　　　　　　　　　　　　　　　*　CASE NO.: 1:08-cv-00077-CAP

　　　　　　　　　　　　　　　　*

**RONALD M. ZACCARI**, et al.,　*

　　　　　　　　　　　　　　　　*

　　　Defendants.

## DEFENDANTS  VALDOSTA STATE UNIVERSITY, BOARD OF REGENTS, ZACCARI, GASKINS, KEPPLER, MAST, and MORGAN'S BRIEF IN SUPPORT OF THEIR PRE-ANSWER MOTION TO DISMISS

COME NOW Defendants Ronald M. Zaccari, Valdosta State University, Board Of Regents of the University System of Georgia; Laverne Gaskins, Kurt Keppler, Russ Mast, and Victor Morgan, by and through the Attorney General for the State of Georgia and file this, their Brief in Support of their Pre-Answer Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  In support thereof, Defendants show the following:

# I.  STATEMENT OF FACTS[1]

On April 16, 2007, "a gunman tragically took the lives of 32 fellow students and teachers at Virginia Tech University. The terrible events of that morning captivated the nation." (Compl., ¶ 32).   In the wake of this massacre at Virginia Tech, President Zaccari, with the enormous responsibility for the safety and wellbeing of entire Valdosta State University ("VSU") campus, was confronted with a situation involving a student who, like the killer at Virginia Tech, was under psychiatric care, had issued veiled threats to President Zaccari via his Facebook web page and had exhibited erratic behavior.  (Compl. ¶¶ 4, 39-41, 51).  This student, Plaintiff Thomas Hayden Barnes, suffers from "challenges related to anxiety and depression," who alleges that he has overcome "difficult family issues" and has "developed into an engaged student, was a licensed and decorated emergency medical technician, and was politically aware and involved." (Compl., ¶ 4).

On or about April 13, 2007, President Zaccari became very concerned for his own safety after Plaintiff posted a "political collage protesting the parking garage, ... on his webpage on Facebook.  The collage included photos of a multilevel parking structure, ... a photo of Zaccari, and a picture of a public bus

---

[1] For the limited purpose of this motion to dismiss, the above listed Defendants accept all facts alleged in the Complaint as true.

under a no-smoking-style 'not allowed' red circle and slash.  It also included, *inter alia*, text such as … 'S .A.V.E. Zaccari Memorial Parking Garage." (Compl., ¶ 27).

Taking the posting of the word "memorial" as a veiled threat to his safety, a short time later, President Zaccari employed a security detail for protection.  (Compl., ¶ 42).

Out of concern for the safety of the VSU campus, President Zaccari made the determination to administratively withdraw Plaintiff from VSU.  (Compl., ¶¶ 1, 5, 51-52).  On May 7, 2007, President Zaccari informed Plaintiff in writing that he was being withdrawn because he found Plaintiff's Facebook collage to be "threatening" and that Plaintiff "[presented] a clear and present danger to [the VSU] campus."  (Compl., ¶ 52).  President Zaccari further informed Plaintiff that he could avoid such action if he provided VSU with "(1) correspondence from a psychiatrist indicating that Barnes posed no danger to self or others; and (2) documentation from a 'certified mental health professional' indicating that during his tenure at VSU, Barnes would receive ongoing therapy."  (Id).

In direct response to the May 7, 2007 letter, Plaintiff provided information and supporting documentation by mental health professionals that he hoped would persuade Defendant Zaccari to issue his reinstatement to VSU. (Compl. at ¶ 58).

President Zaccari, who, after reviewing the submitted documentation, remained

unconvinced that his decision to remove Plaintiff from campus should be reversed and thus refused to reinstate Plaintiff. (Compl., ¶ 58, 60).

Prior to filing this Complaint, Plaintiff appealed his administrative withdrawal to the Board of Regents, who initially referred the appeal to the Office of State Administrative hearings. (Ex. 1, OSAH form 1). Prior to an administrative hearing on the matter, on January 17, 2008, the Board of Regents rescinded Plaintiff's administrative withdrawal. (Ex. 2).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act and the Rehabilitation Act, alleging that he has been discriminated against and retaliated against because of his disabilities and for asserting his First Amendment rights. Further, Plaintiff asserts that he was improperly withdrawn from VSU without due process and in breach of contract.

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. PLAINTIFF'S RETALIATION CLAIMS FAIL.

In Counts 1 and 3 of the Complaint, Plaintiff contends that Defendants retaliated against him because he exercised his First Amendment rights by voicing his opposition to the proposed parking deck. These retaliation claims fail because Plaintiff's speech, as presented on his Facebook web page does not constitute protected speech.

For Plaintiff to state a 42 U.S.C. § 1983 claim for retaliation, he must establish that: (1) his speech or act was constitutionally protected; (2) the defendants' alleged retaliatory conduct discourages his protected speech;[2] and (3) a causal connection existed between the retaliatory conduct and the adverse effect on Plaintiff's speech. Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005); Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).

        1.  Plaintiff's speech was not constitutionally protected.

Colleges and universities are not immune from the requirements of the First Amendment. Healy v. James, 408 U.S. 169, 180 (1972); Papish v. Board of Curators of University of Missouri, 410 U.S. 667, 670-71 (1973). However, not all student speech is protected by the First Amendment. For instance, fighting words, which tend to provoke immediate violence, are not protected by the First Amendment. Chaplinsky v. New Hampshire, 315 U.S. 568, 572 (1942). Similarly, words that create an immediate panic are not entitled to constitutional protection. NAACP v. Claiborne Hardware Co., 458 U.S. 886, 927 (1982). "The reason why fighting words are categorically excluded from the protection of the First Amendment is not that their content communicates any particular idea, but that

---

[2] The 11th Circuit has adopted the objective "ordinary firmness" test in deciding retaliation cases and has determined that only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action. Bennett v. Hendrix, 423 F.3d 1247, 1251 (11th Cir. 2005) (citations and quotations omitted).

their content embodies a particularly intolerable (and socially unnecessary) *mode* of expressing *whatever* idea the speaker wishes to convey."  R. A. V. v. St. Paul, 505 U.S. 377, 393 (1992) (emphasis in original).

In the instant case, Plaintiff's veiled threats by a student under psychiatric care, whose reference to the "Zaccari memorial parking deck" in his collage were found to be "threatening" by President Zaccari, particularly because the word "memorial" is often used in reference to honoring dead people. This concern was particularly heightened in light of the shootings at Virginia Tech and the outrage expressed because of the inaction by the Virgina Tech administration.  President Zaccari's fear and subsequent concern for the campus is evidenced by the measures this Defendant took to protect himself and the campus, including his request for a security detail and his decision to administratively withdraw Plaintiff. Because the manner in which Plaintiff's chose to protest the parking deck struck fear in President Zaccari to the extent that President Zaccari altered his daily habits, Plaintiff's speech is not protected by the First Amendment, and his claims in Counts 1 and 3 should be dismissed in their entirety.

2. <u>Plaintiff presents no causal connection between the actions by Defendants Gaskins, Keppler, Mast, and Morgan and his alleged constitutional deprivation.</u>

Even if Plaintiff's speech is constitutionally protected, he has still failed to state a valid retaliation claim against Defendants Gaskins, Keppler, Mast, and Morgan, because he has failed to sufficiently allege a causal connection between their actions and Plaintiff's alleged constitutional deprivation.

In order to sufficiently state a claim under 42 U.S.C. § 1983, a plaintiff must show a causal connection between a defendant's acts, orders, customs, policies, or breaches of statutory duty and a deprivation of a right, privilege or immunity protected by the Constitution or laws of the United States. <u>Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986); <u>Little v. City of North Miami</u>, 805 F.2d 962, 965 (11th Cir. 1986). Furthermore, in order to establish a valid civil rights claim, the complaint must allege sufficiently specific facts in accordance with Fed. R. Civ. P. 8(e). <u>GJR Investments, Inc. v. County of Escambia, Fla.</u>, 132 F.3d 1359, 1367 (11th Cir. 1998). The Eleventh Circuit has held that for a civil rights complaint to sufficiently pled,

> "[m]ore than mere conclusory notice pleading is required. A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. Moreover, in reviewing a motion to dismiss, courts need only accept well-pleaded facts and reasonable inferences drawn from those facts.

> Unsupported conclusions of law or of mixed fact and law
> have long been recognized not to prevent a Fed. R. Civ.
> P. 12(b)(6) dismissal."

Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003).

In the instant case, Plaintiff does not assert the requisite nexus between the acts by Defendants Gaskins, Keppler, Mast, McMillan and Morgan and a violation to Plaintiff's First Amendment rights. Although Plaintiff makes vague reference to President Zaccari concocting a claim that Plaintiff presented a danger so that he presumably could be removed from campus, and that President Zaccari pursued this strategy with the assistance of defendants Gaskins, Keppler, Mast, McMillan and Morgan, Plaintiff does not identify a single specific act by these Defendants that furthered such scheme or even that these Defendants were aware of any scheme President Zaccari may have had.

In addition, the few other references Plaintiff makes of these Defendants in the Complaint are extremely limited and do not present sufficient causation to state a claim under § 1983. For instance, Plaintiff alleges merely that Defendant Keppler was present at the May 3, 2007 meeting where President Zaccari's decision to administratively withdraw Plaintiff was discussed. (Compl., ¶ 51). Plaintiff merely alleges that Defendant Mast gave Zaccari a copy of the collage Barnes had posted on Facebook (Compl., ¶ 38) and that he was present at the May

3, 2007 meeting. (Compl., ¶ 51). In addition, Plaintiff alleges that Defendant Gaskins asked Board of Regents counsel Betsey Neely her position on how a university president could file a complaint against a student for violating the Student Code of Conduct (Comp., ¶ 46) and that she was present at the May 3, 2007 meeting. (Compl., ¶ 51).

These allegations are wholly insufficient to establish § 1983 claims as they do not show a causal relationship between such acts and Plaintiff's administrative withdrawal. Plaintiff openly concedes that the decision to withdraw Plaintiff was President Zaccari's alone; *no other Defendant participated in this decision.* (Compl., ¶¶ 1, 5, 51-52). In essence, Plaintiff seeks to hold these Defendants liable under a theory of vicarious liability, which is not actionable under § 1983. Brown v. Smith, 813 F.2d 1187 (11th Cir. 1987). Because Plaintiff fails to allege some degree of personal participation by these Defendants in President Zaccari's decision, no liability exists, and thus all claims against these Defendants must be dismissed. Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986).

## B. PLAINTIFF'S SUBSTANTIVE AND PROCEDURAL DUE PROCESS CLAIMS FAIL.

The basis of Counts 2 and 4 of the Complaint rests in Plaintiffs' assertion that he has a protected property interest in his college education and was denied both pre- and post- deprivation due process when he was administratively

9

withdrawn from VSU.  However, Plaintiff's procedural and substantive due process claims fail as a matter of law.  First, Plaintiff does not sufficiently allege a substantive due process claim.  Second, Plaintiff cannot show that he has a property interest in his education.  Last, Plaintiff was provided all the process he was due.

> 1. Plaintiff fails to sufficiently allege a substantive due process claim.

According to Plaintiff, attending Valdosta State University falls under the Due Process Clause's substantive component.  The scope of substantive due process may be analyzed from two perspectives:

1) That substantive due process encompasses rights that are "implicit in the concept of ordered liberty." Palko v. Conn., 302 U.S. 319, 325 (1937); or

2) That substantive due process protects persons from state actions which "shock the conscience." McKinney v. Pate, 20 F.3d 1550, 1556 n7 (11th Cir. 1994).

Regardless of the approach that is employed, the Supreme Court is hesitant to expand the reach of substantive due process.  McKinney, 20 F.3d at 1556 (citing Collins v. City of Harker Heights, 503 U.S. 115 (1992).  This reluctance applies particularly when the alleged right was created by state law, which is "not subject to substantive due process protection . . . because 'substantive due process rights are created only by the Constitution.'" Id. (quotations and citations omitted).

Attending a public post-secondary school is not a right created by the United States Constitution. *See, e.g*., <u>Fedorov v. Bd. of Regents</u>, 194 F. Supp. 2d 1378, 1390-91 (S.D. Ga. 2002) (Court found "that attending dental school is not a fundamental right. While dentists provide valuable services, their education is not 'implicit in the concept of ordered liberty.'" (*Citing,* <u>Palko</u>, supra, 302 U.S. at 325)).

In applying the first of the above-listed approaches to Plaintiff's substantive due process claims, the prevailing legal authority shows that attending VSU does not entitle Plaintiff to substantive due process protection because his right to attend college is rooted in State law, not the constitution.  Because Plaintiff's education is not 'implicit in the concept of ordered liberty,' it is not subject to substantive due process protection.

In applying the second of the above-listed approaches to Plaintiff's substantive due process claims, Defendants' alleged actions toward Plaintiff do not "shock the conscience" and thus do not rise to the level of substantive due process violations.  "Conduct by a government actor will rise to the level of a substantive due process violation ***only*** if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." <u>Waddell v. Hemerson</u>, 329 F.3d 1300, 1305 (11th Cir. 2003) (emphasis provided).  Further, "decisions made by a government actor must be egregious, that is, shock the conscience, at the time the government

actor makes the decision." Waddell v. Hemerson, 329 F.3d 1300, 1305 (11th Cir.

2003). Simply stated, "conduct intended to injure in some way unjustifiable by *any*

government interest is the sort of official action most likely to rise to the

conscience-shocking level..." County of Sacramento v. Lewis, 523 U.S. 833, 849

(1998). (emphasis added). Conversely, those actions that are justified by a

government interest do not rise to the conscience-shocking level. See, e.g., Nix v.

Franklin County Sch. Dist., 311 F.3d 1373 (11th Cir. 2002) (claims properly

dismissed where student died of electrical shock during an experiment in class,

parents' allegations of deliberate indifference did not shock the conscience in a

way that gave rise to a due-process violation); Vaughan v. Cox, 343 F.3d 1323

(11th Cir. 2003) (Plaintiff's substantive due process claim based on the deputy's

alleged conduct lacked merit because the individual had not shown that the

deputy's actions were motivated by anything but the desire to arrest him).

     Defendants' actions as alleged do not rise to the level of "conscience

shocking." As noted in the Complaint, Defendant Zaccari articulated a valid

governmental concern for the action he took by administratively withdrawing

Plaintiff. Plaintiff concedes in his Complaint that Defendant Zaccari's withdrawal

letter stated that Defendant Zaccari found Plaintiff's Facebook collage to be

"threatening" and that Plaintiff presented "a clear and present danger" to the

campus. (Compl. at ¶ 52).  Thus, pursuant to <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 849 (1998) and the legal authority in this jurisdiction, Plaintiff is not subject to substantive due process protections from Defendants' actions.  <u>Nix v. Franklin County Sch. Dist</u>., 311 F.3d 1373 (11th Cir. 2002).  Accordingly, Plaintiff's substantive due process claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

> 2. <u>Plaintiff's pre-deprivation procedural due process claim fails because he received all the process he was due.</u>

Plaintiff alleges in counts 2 and 4 of his Complaint that his procedural due process rights were violated when he was administratively withdrawn without notice or being heard.  These claims fail because Plaintiff received adequate notice and an opportunity to be heard.

It is well-founded that "[a] person is not entitled to procedural due process unless he is deprived of an interest in life, liberty, or property.  <u>Bd. of Curators, Univ. of Mo. v. Horowitz</u>, 435 U.S. 78, 84 (1978).  However, "whether receiving post-graduate education rises to the level of a liberty or property interest is an unsettled question."  <u>Fedorov v. Bd. of Regents</u>, 194 F. Supp. 2d 1378, 1391 (S.D. Ga. 2002) (citing <u>Bd. Of Curators</u>, *supra*, 435 U.S. at 84-85.

Although courts have declined to directly address whether receiving post-graduate education rises to the level of a liberty or property interest, the courts

have determined that students enjoy *some* level of due process protection,

particularly where a student is subject to disciplinary penalties.  Bd. Of Curators,

*supra*, 435 U.S. at 86-87. Such protection is limited by the nature and

circumstances of the disciplinary action.  For instance, students "have the right to

respond [to the charges], but their rights in the academic disciplinary process are

not co-extensive with the rights of litigants in a civil trial or with those of

defendants in a criminal trial."  Nash v. Auburn University, 812 F.2d 655, 664 (11th

Cir. 1987) (*citing* Goss v. Lopez, 419 U.S. 565, 583 (1975)).  In addition, "the

adequacy of the notice and the nature of the hearing vary according to an

'appropriate accommodation of the competing interests involved." Id. at 660

(citations and quotations omitted).  Thus, the student is not necessarily entitled to a

"full-dress judicial hearing, with the right to cross-examine witnesses… [but]

should be given the opportunity to present to the Board, or at least an

administrative official of the college, his own defense against the charges and to

produce either oral testimony or written affidavits of witnesses in his behalf."

Dixon v. Ala. State Bd. of Educ., 294 F.2d 150, 159 (5th Cir. 1961).

　　　In the instant case, Defendant Zaccari notified Plaintiff in writing of his

decision to administratively withdraw Plaintiff from school and his reasons for

such action.  (Compl. at ¶ 52).  This Defendant further informed Plaintiff that he

14

could avoid such action if he provided VSU with "(1) correspondence from a psychiatrist indicating that Barnes posed no danger to self or others; and (2) documentation from a 'certified mental health professional' indicating that during his tenure at VSU, Barnes would receive ongoing therapy." (Id). This correspondence thus satisfies the notice requirement for due process.

In response, Plaintiff provided Defendant Zaccari with "correspondence from Dr. Winders indicating that Barnes posed no danger to self or others… and documentation from a 'certified mental health Professional' indicating that during his tenure at VSU, Barnes would receive ongoing therapy." (Compl. at ¶ 58). Although Plaintiff did not receive a predeprivation hearing in the traditional sense, Plaintiff was provided an opportunity to answer and address the concerns posed by Defendant Zaccari. In direct response to the May 7, 2007 letter, Plaintiff provided information and supporting documentation by mental health professionals that he hoped would persuade Defendant Zaccari to issue his reinstatement to VSU. By providing such information satisfies the due process requirement that the student be heard. Dixon v. Ala. State Bd. of Educ., 294 F.2d 150, 159 (5th Cir. 1961). That Plaintiff did not like Defendant Zaccari's refusal to rescind the administrative action after he provided the documentation does not negate the fact that he was provided an opportunity to address his withdrawal with VSU officials. Because

Defendants provided Plaintiff with adequate notice and an opportunity to be heard, Plaintiff has failed to state a valid pre-deprivation due process claim.

3. Plaintiff's post-deprivation procedural due process is moot because his administrative withdrawal was rescinded.

To the extent that Plaintiff alleges post-deprivation due process claims, such claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because the Board of Regents has rescinded his administrative withdrawal imposed by Defendant Zaccari.

The United States Supreme Court has held that "… those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." City of Los Angeles v. Lions, 461 U.S. 95, 100, (1983). It necessarily follows that where there is no case or controversy, federal courts are without jurisdiction to entertain a claim for injunctive relief. Id. "A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." Ethredge v. Hail, 996 F.2d 1173, 1175 (11th Cir. 1993). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . *if unaccompanied by any continuing, present adverse effects*." Id., citing O'Shea v. Littleton, 414 U.S. 488, 495-96, (1974) (emphasis provided).

16

"A case is moot when events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief." <u>Jews for Jesus v. Hillsborough County Aviation Auth.</u>, 162 F.3d 627, 629 (11th Cir. 1998). "A moot case is nonjusticiable and Article III courts lack jurisdiction to entertain it." <u>Troiano v. Supervisor of Elections</u>, 382 F.3d 1276, 1281 (11th Cir. 2004). Thus, the issue of mootness must be addressed before the court addresses the merits of the action. <u>Crown Media</u>, supra, 380 F.3d at 1324. *See also*, <u>Granite State Outdoor Adver., Inc. v. City of Clearwater</u>, 351 F.3d 1112, 1119 (11th Cir. 2003).

In the instant case, the Plaintiff no longer presents a live case or controversy regarding any post-deprivation to his procedural due process rights. Prior to filing this Complaint, Plaintiff appealed his administrative withdrawal to the Board of Regents, who initially referred the appeal to the Office of State Administrative hearings. (Ex. 1, OSAH form 1). Prior to an administrative hearing on the matter, on January 17, 2008, the Board of Regents rescinded Plaintiff's administrative withdrawal. (Ex. 2). Because Plaintiff appealed the president's decision to an appropriate administrative body that oversees the administration of VSU and such decision was rescinded by the Board of Regents, his post-deprivation procedural

due process claim is moot.  Thus, this Court no longer has jurisdiction to provide the relief Plaintiff seeks. Fed. R. Civ. P. 12(b)(1).

### C. VALDOSTA STATE UNIVERSITY, THE BOARD OF REGENTS AND THE NAMED DEFENDANTS IN THEIR OFFICIAL CAPACITY ARE NOT PERSONS UNDER 42 U.S.C. § 1983

To the extent Plaintiff asserts official capacity claims for damages pursuant to 42 U.S.C. § 1983 against Zaccari, Laverne Gaskins, Kurt Keppler, Russ Mast, and Victor Morgan, and to the extent that Plaintiff asserts § 1983 claims against Valdosta State University and the Board of Regents of the University System of Georgia, such claims must be dismissed because these state officials and entities are not "persons" as defined by 42 U.S.C. § 1983. The statutory language of § 1983 provides that certain actions by a "person" or "persons" which violate the rights of others may be actionable.  The United States Supreme Court has ruled that the term "person" in this context is to be given its ordinary meaning, and that, more specifically, "a State, or governmental entity is not a person within the meaning of § 1983." Will V. Michigan Dep't of State Police, 491 U.S. 58, 65 (1989).  The United State Supreme Court has further determined that the term "State" includes State agencies and local governmental entities as well as *individual state officers sued in their official capacities*. Id. at 70, 71 (emphasis added).

18

In the instant case, to the extent Plaintiff raises § 1983 damage claims against Defendants Zaccari, Laverne Gaskins, Kurt Keppler, Russ Mast, or Victor Morgan in their official capacities, such claims must be dismissed because these government officials are not persons capable of being sued under 42 U.S.C. § 1983.  Likewise, all claims against Defendant Valdosta State and the Board of Regents of the University System of Georgia must be dismissed because these state entities are not persons capable of being sued under 42 U.S.C. § 1983.

### D. PLAINTIFF'S § 1983 CLAIMS AGAINST VALDOSTA STATE UNIVERSITY, THE BOARD OF REGENTS AND DAMAGES CLAIMS AGAINST THE NAMED DEFENDANTS IN THEIR OFFICIAL CAPACITY ARE BARRED BY THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

To the extent Plaintiff asserts official capacity claims for damages pursuant to 42 U.S.C. § 1983 against Zaccari, Laverne Gaskins, Kurt Keppler, Russ Mast, and Victor Morgan, and to the extent that Plaintiff asserts § 1983 claims against Valdosta State University and the Board of Regents of the University System of Georgia, such claims must be dismissed because the Eleventh Amendment bars such claims.

It has long been established that the Eleventh Amendment bars suit against a State or one of its agencies, departments or officials, absent a waiver by the State or a valid congressional override, when the State is the real party in interest or

when any monetary recovery would be paid from State funds.  Kentucky v. Graham, 473 U.S. 159, 169 (1985).  See Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100-01 (1984).  The United States Supreme Court has construed the Eleventh Amendment jurisdictional bar to extend to federal suits against a non-consenting state "by her own citizens as well as citizens of another state."  Port Authority Trans-Hudson v. Feeney, 495 U.S.  299 (1990) (quoting Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984) (Pennhurst II).

The Eleventh Amendment is an absolute bar to damage actions against the State, its entities, and its officers in their official capacities in federal court or federal claim, under 42 U.S.C. § 1983.  See Will v. Michigan Dept. of State Police, 491 U.S. 58, 65 (1989); Gamble v. Florida Department of Health & Rehab. Services, 779 F.2d 1509,1511-20 (11th Cir. 1986); Fouche v. Jekyll Island State Park Authority, 713 F.2d 1518, 1520-22 (11th Cir. 1983).  Thus, the damages claims brought against the aforementioned named Defendants in their official capacities as well as against Valdosta State University and the Board of Regents must be dismissed as such claims are barred by the Eleventh Amendment to the United States Constitution.

### E. PLAINTIFF'S CLAIMS FOR BREACH OF CONTRACT SHOULD BE DISMISSED.

In Count 5 of the Complaint, Plaintiff alleges that Defendants breached a contract with Plaintiff by "failing to provide the procedures and rights guaranteed by their own policies [which has] imposed substantial economic harm upon Barnes, who has lost the academic benefits of the classes he was unable to complete, has suffered reputational harm, has been forced to bear the financial burden of enrolling at another public university at great expense, and has been forced to relocate to Atlanta to continue his studies." (Compl., ¶ 101). Plaintiff attempts to establish the existence of a written, binding contract between the parties by alleging that VSU's written policies and procedures in the student handbook, in conjunction with the housing contract Plaintiff presumably signed, establishes a binding agreement between the parties that can be enforced by this Court. (Comp. ¶ 97). Plaintiff claims that this "agreement" was breached when he was administratively withdrawn from VSU. (Compl. at ¶ 101). These allegations fail to state a claim for breach of contract because there was no meeting of the minds and because the purported implied contract lacks certainty.

1.  <u>Plaintiff's breach of contract claim fails because there was no meeting of the minds or certainty regarding the terms.</u>

Under Georgia law, the enforceability of a contract is determined by whether its terms are expressed in plain and explicit language so as to convey what was agreed upon by the parties. <u>Dibrell Bros. Int'l S.A. v. Banca Nazionale Del Lavoro</u>, 38 F.3d 1571, 1582 (11th Cir. 1994). No contract is formed without certainty regarding the terms of the subject matter, "consideration, and mutual assent." <u>Lamb v. Decatur Fed. Sav. & Loan Assoc</u>., 201 Ga. App. 583, 411 S.E.2d 527, 529 (1991); see O.C.G.A. § 13-3-1 (1982). A contract is formed only when there is a meeting of the minds. <u>Oldham v. Self</u>, 279 Ga. App. 703, 707 (2006).

The vague allegations of the Complaint do not establish a meeting of the minds or certainty regarding the essential terms of a contract sufficient to state a claim. For example, Plaintiff does not allege or otherwise provide any of the terms of his Housing contract or how they establish a binding contract with respect to VSU's student handbook. Simply put, Plaintiff has failed to provide any facts that state with sufficient certainty the terms and scope of any agreement between the parties. The allegations regarding the purported implied contract are so indefinite so as to make it impossible to determine what, if anything, was agreed upon and whether there was performance. As a result, the Complaint fails to state a claim for breach of contract.

2.  <u>Sovereign Immunity Bars Plaintiff's Breach of Contract Claim.</u>

Even if the Complaint sufficiently alleges the existence of an implied contract, any breach of contract claim based upon such a contract is barred by the sovereign immunity of the State of Georgia. "Under the doctrine of sovereign immunity, the State cannot be sued without its consent." <u>State Board of Education v. Drury</u>, 263 Ga. 429, 430 (1993). The Georgia Constitution extends sovereign immunity to the State and all of its departments and agencies except as follows:

> Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

Ga. Const. Art. I, § II, ¶ IX(e).

Thus, the State is immune from suit except as specifically waived in the Constitution or except as provided by an act of the General Assembly specifically providing that sovereign immunity has been waived and the extent thereof. <u>Woodard v. Laurens County</u>, 265 Ga. 404, 405 (1995). The State of Georgia waives sovereign immunity only for breaches of **written** contracts. O.C.G.A. § 50-21-1 ("[S]overeign immunity is waived as to any action ex

contractu for the breach of any written contract . . . entered into by the state …."). Thus, the State of Georgia is subject to a lawsuit for breach of contract only if the contract is in writing. Federov v. Board of Regents for the University System of Georgia, 194 F. Supp. 2d 1378, 1395 (S.D. Ga. 2002). Indeed, sovereign immunity is *not waived* when a breach of contract claim is premised upon an implied contract. Merk v. DeKalb County, 226 Ga. App. 191, 193 (1997).

The burden of demonstrating a waiver of sovereign immunity rests with the plaintiff. Balasco v. County of San Diego, 140 Ga. App. 482, 487 (1976). The Plaintiff, therefore, has the burden of showing that his claim falls within an applicable waiver of sovereign immunity. This he can not do because Georgia law is unmistakably clear that sovereign immunity is not waived for a breach of an implied contract. Because Plaintiff's breach of contract claim is premised upon a purported implied contract, his claim is barred by sovereign immunity and thus must be dismissed.

3. Georgia has not waived its Eleventh Amendment Immunity from breach of contract claims.

Even if the Court determines that the State of Georgia has waived its immunity in state court, the State has not waived its Eleventh Amendment immunity from such suits in federal court.

24

"It is well established that, absent an express waiver by the state, the Eleventh Amendment bars state law claims against a state in federal court." Maynard v. Bd. of Regents, 342 F.3d 1281, 1287 (11th Cir. 2003) (Citing and quoting, Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-99 (1984).  The Georgia Constitution provides that "[n]o waiver of sovereign immunity . . . shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution."  Ga. Const. Art. 1, 2, Para. 9(f), reprinted in 2 Ga. Code Ann. (1996 Supp.).  Therefore, the State of Georgia has not waived the immunity provided to it, its agencies and its officials under the Eleventh Amendment.  Because Plaintiff's breach of contract claim has not been properly brought in this Court, Defendants Zaccari, Gaskins, Keppler, Mast, and Morgan respectfully ask that Plaintiff's contract claims be dismissed.

### F.  THE INDIVIDUALLY NAMED DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE NOT PROPER DEFENDANTS UNDER THE ADA OR RA

The Americans With Disabilities Act ("ADA") provides that a "public entity" cannot discriminate against a qualified individual with a disability on account of that individual's disability.  42 U.S.C. § 12121.  The individually named Defendants are not considered "public entities" within the terms of the

Act.  A "public entity" under the ADA is defined as, "(A) any state or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority."  42 U.S.C. § 12131.  Importantly, this statute does not provide for official capacity claims against a named individual.

Similarly, the Rehabilitation Act ("RA") applies to "a program or activity receiving Federal financial assistance." 29 U.S.C. § 794.  The statute defines program or activity as:

> (1)  (A)  a department, agency, special purpose district, or other instrumentality of a State or of a local government; or
>
> (B)  the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;

(2)  (A)  a college, university, or other post-secondary institution, or a public system of higher education;... 29 U.S.C. § 794 (in relevant part). Here, too, the statute does not provide for official capacity claims against a named individual.

Accordingly, the Eleventh Circuit Court of Appeals has found that there is no individual liability under the ADA.  <u>Mason v. Stallings</u>, 82 F.3d 1007 (11th Cir. 1996).

Likewise, there is no individual liability under the RA.  See, e.g., <u>Schiavo ex rel. Schindler v. Schiavo</u>, 403 F.3d 1289, 1294 (11th. Cir. 2005) ("cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa.").  As such, Defendants respectfully ask that all ADA and RA claims against the named Defendants be dismissed.

### G. PLAINTIFF FAILS TO STATE VALID ADA AND RA CLAIMS.[3]

Plaintiff bears the burden of establishing a *prima facie* case that he: 1) is disabled, 2) is a qualified individual, and 3) was subjected to unlawful discrimination because of his disability.  <u>Rossbach v. City of Miami</u>, 371 F.3d 1354 (11th Cir. 2004); <u>Reed v. Heil Co.</u>, 206 F.3d 1055, 1061 (11th Cir. 2000); <u>Hilburn v. Murata Elec. N. A., Inc.</u>, 181 F.3d 1220, 1226 (11th Cir. 1999).  The standard for determining liability under the Rehab Act is the same as that under the American with Disabilities Act (hereinafter "ADA").  <u>Gordon v. E.L. Hamm & Assoc., Inc.</u>, 100 F.3d 907, 911 (11th Cir. 1996) (using EEOC Rehab Act

---

[3] Venue, which is now within the Northern District of Georgia, will be improper in the event these claims are dismissed.

regulations to determine ADA disability).  Plaintiff's ADA and RA claims fail

because he does not have standing to assert such a claim for injunctive relief, he

does not show that he is disabled or otherwise a qualified individual under the Acts

and he does not show that any Defendant discriminated against him because of any

disability.

    1.   <u>Plaintiff lacks standing to bring his ADA and RA<br>      claims for injunctive relief.</u>

Plaintiff sues Defendants in their official capacity for injunctive relief[4] for

alleged violations of Title II of the ADA and Section 504 of the RA.  However, the

injunctive relief Plaintiff seeks cannot be granted by this Court.

Generally speaking, in order to meet the requirements of Article III standing,

a plaintiff must establish that he has suffered an injury in fact, that the injury was

causally connected to the defendant's actions, and that the injury would be

redressed by a judgment in the plaintiff's favor. See, <u>Lujan v. Defenders of

Wildlife</u>, 504 U.S. 555, 560-561 (1992).  In addition, where a plaintiff seeks

injunctive relief, the Court in <u>Lujan</u> states that "Past exposure to illegal conduct

---

[4] Defendants acknowledge that the Eleventh Circuit has found that Congress had the authority to abrogate the States' immunity under Title II as applied to Universities *See* <u>Association for the Disabled, Inc. v. Florida International University</u>, 2005 U.S. App. LEXIS 5440, (11th Cir. April 6, 2005).  In an abundance of caution and due to the ever changing status of the law Defendants raise the validity of the abrogation as to Title II in order to preserve the issue should the status of the law change.  This issue will not be briefed any further at this time as the Court is bound by the Eleventh Circuit's decision.

does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by *any continuing present adverse effects*." Id. at 564.  The threat of future injury must be "real and immediate – as opposed to . . . merely conjectural or hypothetical." Wooden v. Bd. of Regents of Univ. Sys. of Geo., 247 F.3d 1262, 1284 (11th Cir. 2001).  Further, a plaintiff's statement of 'intent' to return to a place where he was allegedly deprived of some right "is simply not enough. Such 'some day' intentions – without any description of concrete plans, or indeed even any specification of *when* the some day will be – do not support a finding of the 'actual or imminent' injury that our cases require." Lujan, 504 U.S. at 564 (emphasis in original).

In the instant case, Plaintiff concedes that he is pursuing his education at Kennesaw State University.  Although he requests injunctive relief in general terms, he does not state precisely what relief he seeks and asserts no specific desire or intention to return to VSU.  Further, Plaintiff does not allege that he risks further or repeated discrimination should he return to VSU.  As noted above, the Board of Regents granted Plaintiff's appeal and rescinded Plaintiff's administrative withdrawal.  The Board's action was a final determination on the matter.  (Exhibit 2).  Because Plaintiff has failed to show a present controversy for prospective

injunctive relief under either Title II of the ADA and Section 504 of the RA,

dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is appropriate on these claims.

2. Plaintiff has failed to show that he is disabled or otherwise a qualified individual under the ADA and RA.

In assessing whether Plaintiff is a qualified individual as defined by the Acts

the Court must determine if he is disabled as defined by the Acts.  In order to fit

the definition of disability Plaintiff must demonstrate that his ailment affects a

major life activity.  (29 U.S.C. § 705 (9); 42 U.S.C. § 12102).  Plaintiff has failed

to meet this burden.  Quite the contrary, in fact, Plaintiff fails to identify his

disability at all, instead claiming that he is protected merely because he has

"challenges related to anxiety and depression."  "Challenges" do not amount to a

disability as defined by the ADA and RA.

Even if the "challenges" did constitute a disability, Plaintiff must

demonstrate that his disability affected a major life activity.  Bragdon v. Abbott,

524 U.S. 624 (1998); Sutton v. United Air Lines, 527 U.S. 471 (1999).  Congress

has defined "disability" as a 1) physical or mental impairment that substantially

limits one or more of the major life activities of an individual; 2) a record of such

impairment; or 3) being regarded as having such impairment.  42 U.S.C. § 12102.

Merely having an impairment, standing alone, does not mean that an individual has

a disability within the meaning of the Act.  Bragdon v. Abbott, 524 U.S. 624

(1998); Gordon v. E.L. Hamm & Associates, 100 F.3d 907 (11th Cir. 1996).

The impairment must limit one or more of the individual's major life

activities.  Id.  The Plaintiff has described no major life activity in which he is or

was unable to participate.  A major life activity is not defined by the Act but the

Supreme Court and the Eleventh Circuit have used the EEOC regulations for

guidance.  Bragdon v. Abbott, 524 U.S. 624 (1998); Standard v. A.B.E.L. Services,

161 F.3d 1318 (11th Cir. 1998).  The regulations define major life activities as

functions such as caring for one's self, performing manual tasks, walking, seeing,

hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2.  Plaintiff

has made no claim that his life was affected in any way by "challenges related to

anxiety and depression."  Zenor v. El Paso Health Care System, 176 F.3d 847 (5th

Cir. 1999); Yeskey v. The Commonwealth Pennsylvania Department of

Corrections; 76 F.Supp. 2d 572 (M.D. Penn. 1999)(decision upon remand).

"Substantially limited" means "significantly restricted as to the condition, manner,

or duration under which [the] individual can perform [the] particular major life

activity as compared to the condition, manner, or duration under which the average

person in the general population can perform the same major life activity."  29

C.F.R. § 1630.2(j)(1)(ii).  The "substantially limits" standard is a "demanding

standard" and must be strictly interpreted.  Gordon, 301 F.Supp. 2d at 1340

(quoting Toyota Motor Mfg. v. Williams, 534 U.S. 184, 197 (2002)).  Courts have

further been directed to consider three factors when determining whether an

impairment substantially limits a major life activity: (1) the nature and severity of

the impairment; (2) the duration or expected duration of the impairment; and (3)

the permanent or long term impact of the impairment.  *See*  Hilburn v. Murata

Electronics North America, 181 F.3d 1220, 1226 n. 13 (11th Cir. 1999).  Plaintiff's

own complaint demonstrates that he was not so affected.  (para. 48-49)  As such

Plaintiff's condition can hardly be characterized as substantially impairing a major

life activity as defined above.

Moreover, in order to show a substantial limitation on the life activity of

working, Plaintiff must prove that he is "restricted in the ability to perform either a

class of jobs or a broad range of jobs in various classes."  29 C.F.R.

§ 1630.2(j)(2)(i).  "The inability to perform a single, particular job does not

constitute a substantial limitation in the major life activity of working."  Rossbach,

371 F.3d at 1359 (citing Carruthers v. BSA Adver., Inc., 357 F.3d 1213, 1216

(11th Cir. 2004)); Sutton v. United Airlines, Inc., 527 U.S. 471 (1999).  Since

Plaintiff fails to define a class of jobs he cannot perform he similarly does not

qualify as disabled.

In the instant case, Plaintiff does not define his disability or impairment but merely claims that his "challenges" qualify him for ADA and RA protection. Further, Plaintiff does not indicate that these challenges are debilitating in any way. Rather, Plaintiff openly admits that no major life activity was affected; Plaintiff asserts that he has overcome "difficult family issues" and "developed into an engaged student, was a licensed and decorated emergency medical technician, and was politically aware and involved." (Compl., ¶ 4).   Plaintiff has not alleged sufficient facts to establish that he is disabled within the meaning of the Acts or to substantiate a claim under the ADA or the RA.   Thus, Defendants are entitled to dismissal of these claims as a matter of law.

3.  Plaintiff does not adequately allege that he was subjected to unlawful discrimination because of his disability.

Plaintiff asserts that Defendants subjected Plaintiff to intentional discrimination because of his alleged depression and anxiety, in violation of Title II of the ADA and Section 504 of the RA.  Plaintiff's claim fails because the allegations as set forth in the Complaint fail to adequately establish that he was discriminated against because of his alleged disability.

As noted above, in order to state a valid ADA claim for damages under Title II, a plaintiff must allege, inter alia, that he was "excluded from participation in or … denied the benefits of the services, programs, or activities of a public entity" or

otherwise "discriminated [against] by such entity… by reason of such disability."

42 U.S.C. § 12132.  See also, Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir.

2001).  Further, in order to recover compensatory damages under the RA, a

plaintiff must demonstrate "intentional discrimination or bad faith."[5] Wood v.

President & Trs. of Spring Hill Coll. in City of Mobile, 978 F.2d 1214, 1219 (11th

Cir. 1992). In other words, "good faith attempts to pursue legitimate ends are not

sufficient to support an award of compensatory damages under section 504 [of the

RA]. Id.

    Assuming that Plaintiff has sufficiently shown that he is a "qualified

individual" under the ADA, Plaintiff nevertheless fails to show that he was

discriminated against because of his disability.  Plaintiff does not allege that he

was excluded from participation in or denied the benefits of any service, program,

or activity of VSU because of his depression or anxiety or how he was otherwise

subject to discrimination on account of his alleged disability.

    To the contrary, Plaintiff's Complaint presents at least two reasons, based

upon independent circumstances entirely unrelated to Plaintiff's alleged depression

or anxiety, which support President Zaccari's decision to administrative withdraw

---

[5] With the exception of its federal funding requirement, the RA uses the same standards as the
ADA, and therefore, cases interpreting either are applicable and interchangeable. *See, e.g., Cash
v. Smith,* 231 F.3d 1301, 1305 & n.2 (11th Cir. 2000).

Plaintiff from VSU:  that Defendant Zaccari found Plaintiff's Facebook collage to be "threatening" and that Plaintiff presented "a clear and present danger" to the campus. (Compl. at ¶ 52). The facts of this case as alleged in the Complaint simply do not support a showing of intentional discrimination or bad faith on the part of any Defendant because of Plaintiff's alleged depression or anxiety.  Plaintiff's conclusory allegations are wholly inadequate to state a valid claim under Title II of the ADA or Section 504 of the Rehabilitation Act.  As such, Plaintiff's ADA and RA claims warrant dismissal from this action.

## H. DEFENDANTS ZACCARI, GASKINS, KEPPLER, MAST, and MORGAN ARE ENTITLED TO QUALIFIED IMMUNITY.

As shown above, Plaintiff is unable to show that Defendants Zaccari, Gaskins, Keppler, Mast, and Morgan violated any of Plaintiffs' constitutional rights. Because Plaintiff is unable to establish a constitutional violation, he has failed to state a valid claim under 42 U.S.C. § 1983 and it is therefore unnecessary to continue in the qualified immunity analysis. Saucier v. Katz, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")

Assuming, arguendo, that Plaintiff can establish a constitutional injury, these Defendants are still entitled to qualified immunity from Plaintiff's § 1983 claims.

The law provides that state officials are immune from suit for discretionary acts while acting within the scope of their authority unless their conduct violates a "clearly established statutory or constitutional right of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

"To even be potentially eligible for … qualified immunity, the official must have been engaged in a 'discretionary function' when she performed the acts of which the plaintiff complains." Holloman v. Harland, 370 F.3d 1252, 1263-1264 (11th Cir. 2004) citing Harlow, 457 U.S. at 818. It is the Defendants' burden to make this showing. Id. The Court in Holloman stated that "to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with his legitimate job description." Id. at 1266. In the instant case, at all times relevant to this lawsuit, Defendants were acting pursuant to their roles as administrative officials and employees of the Board of Regents and the State of Georgia and therefore, they were acting within their discretionary authority.

Once Defendants establish that they were engaged in a discretionary function at the time of the acts in question, the burden shifts to Plaintiff to show that Defendants are not entitled to qualified immunity. Id. at p. 1267. In its evaluation of Defendants' qualified immunity defense, the court must determine

"whether the plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736 (2002) citing Saucier v. Katz, 533 U.S. 194 (2001). If the Court determines that the state actor may have violated the plaintiff's constitutional rights, the court must then determine whether that right was clearly established. Id. at p. 739.

Thus, if the Court determines that a plaintiff's constitutional rights may have been violated, the Court must still examine the status of the law at the time and determine if the defendant violated clearly established law. Id. The Supreme Court requires that a state actor needs only "fair warning" that his conduct deprived his victim of a constitutional right. Hope, 536 U.S. at 741. This standard, however, does not change the fact that liability only attaches if "the contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." United States v. Lanier, 520 U.S. 259, 270 (1997).

Following a careful examination of case law in this and other Circuits and relevant statutory authority, no preexisting case law exists, involving materially similar facts as alleged by Plaintiff, that would give Defendants Zaccari, Gaskins, Keppler, Mast, and Morgan fair and clear warning that they violated any of Plaintiffs' First Amendment rights. For instance, there is no legal authority that

provides notice to President Zaccari, who was confronted with the circumstances and aftermath of the Virginia Tech massacre, being the recipient of veiled threats by a student who was under psychiatric care, and who witnessed Plaintiff's arguably erratic behavior, that his decision to protect himself and the campus violated Plaintiff's constitutional rights.  Further, Plaintiff is unable to locate any legal authority to place the other named Defendants on notice that providing information to President Zaccari or attending meetings where President Zaccari's decision was discussed in any way violates Plaintiff's constitutional rights.  Thus, Plaintiff cannot meet his burden to establish that Defendants are not entitled to qualified immunity.

### III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss all claims brought by Plaintiff in this action.

Respectfully submitted this 1st day of April, 2008.

Respectfully submitted,

THURBERT E. BAKER 033887
Attorney General

KATHLEEN PACIOUS  558555
Deputy Attorney General

(Signatures continued on next page.)

s/DEVON ORLAND
Georgia Bar No. 554301
Senior Assistant Attorney General

s/Tamara Wayland
Georgia Bar No. 742525
Assistant Attorney General
Attorney for Defendants Zaccari, Gaskins,
Keppler, Mast, Morgan, Valdosta State
University, and the Board of Regents

**Please Address All Communications To:**
TAMARA J. WAYLAND
40 Capitol Square, S.W.
Atlanta, Georgia 30334-1300
PH:    (404) 463-8850
Twayland@law.ga.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I electronically filed DEFENDANTS

VALDOSTA STATE UNIVERSITY, BOARD OF REGENTS, ZACCARI,

GASKINS, KEPPLER, MAST, and MORGAN'S PRE-ANSWER

MOTION TO DISMISS with the Clerk of Court using the CM/ECF system

which will automatically send email notification of such filing to the

following attorneys of record:

ROBERT CORN-REVERE
Admitted Pro Hac Vice
District of Columbia Bar No. 375415
Davis Wright Tremaine, LLP
Suite 200
1919 Pennsylvania Avenue, NW
Washington, Diversion Center  20006
Counsel for Plaintiff

CARY STEPHEN WIGGINS
Georgia Bar No. 757657
Cook Youngelson & Wiggins
260 Peachtree Street, NW
Suite 401
Atlanta, GA  30303
Counsel for Plaintiff

This 1st day of April, 2008.


s/Tamara Wayland
Assistant Attorney General

## CERTIFICATION AS TO FONT

Pursuant to N.D. Ga. Local Rule 7.1 D, I hereby certify that this

document is submitted in Times New Roman 14 point type as required by to

N.D. Ga. Local Rule 5.1(b).


s/Tamara Wayland
Georgia Bar No. 742525