IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THOMAS HAYDEN BARNES, | * |
| | * |
| Plaintiff, | * |
| | * |
| -vs- | * |
| | * Case No. 1:08-cv-00077-CAP |
| RONALD M. ZACCARI, *et al.*, | * |
| | * |
| Defendants. | * |
| | * |

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. Plaintiff T. HAYDEN BARNES ("Barnes") is a Georgia resident and former student at Valdosta State University. Pl.'s Ex. A; Pl.'s Ex. K.

2. Defendant RONALD M. ZACCARI ("Zaccari") is the President of Valdosta State University. Pl.'s Ex. A.

3. Defendant VALDOSTA STATE UNIVERSITY ("VSU") is a college-level institution of higher learning located in Valdosta, Georgia, and is a political subdivision of the State of Georgia with the capacity to sue or be sued. http://www.valdosta.edu/.

4. Defendant BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA ("the Board") is a political subdivision of the State of

Georgia with the capacity to sue or be sued. The Board operates and supervises thirty-five university and college institutions throughout the State of Georgia and is headquartered in Atlanta, Georgia. http://www.usg.edu/regents/.

5. Defendant LAVERNE GASKINS ("Gaskins") serves as in-house counsel to VSU. http://www.valdosta.edu/legal/staff.shtml.

6. Defendant KURT KEPPLER ("Keppler") is Vice President for Student Affairs at VSU. http://www.valdosta.edu/studentaffairs/vp/.

7. Defendant RUSS MAST ("Mast") is Dean of Students at VSU. http://www.valdosta.edu/studentaffairs/dean/.

8. Defendant LEAH MCMILLAN ("McMillan") is a counselor at VSU's student counseling center. http://www.valdosta.edu/counseling/LeahMcMillan.shtml.

9. Defendant VICTOR MORGAN ("Morgan") is Director of the VSU student counseling center. http://www.valdosta.edu/counseling/VictorMorgan.shtml.

10. On May 7, 2007, President Ronald M. Zaccari of Valdosta State University, without notice or any type of hearing, summarily expelled student T. Hayden Barnes. Pl.'s Ex. A.

11. The stated basis for this expulsion was that Barnes represented a "clear and present danger" to the campus. *Id*.

12. The basis for Zaccari's claim was a collage that Barnes had posted on or about April 13, 2007, on a webpage at Facebook.com to protest the environmental impact of a proposed parking garage planned for the university campus. Pl.'s Exs. A, B; VSU Defs.' Mem. at 2-3.

13. The collage included photos of a multi-level parking structure, a bulldozer, a globe flattened by a tire tread, an asthma inhaler, a photo of Zaccari, and a picture of a public bus under a no-smoking-style "not allowed" red circle and slash. It also included, *inter alia*, text such as "more smog," "bus system that might have been," "climate change statement for president Zaccari," and "S.A.V.E.-Zaccari Memorial Parking Garage." The collage did not contain any threatening statements. Pl.'s Ex. B.

14. Barnes' statements on the issue of the parking garage focused on the environmental issues raised by encouraging an increase in automotive traffic and consumption of fossil fuels, and what he saw as the needless expense of committing more than $30 million in student fees to the project. *Id.*; *see also* Pl.'s

Ex. E at BARNES 000044 (Hayden Barnes, Response to 'Parking decks to be built at VSU,' *The Spectator,* April 19, 2007.[1]

15.  Defendant Zaccari summoned Barnes to his office for a meeting with him and Defendant Mast the afternoon of April 16, in reaction to Barnes' prior posting of flyers around campus regarding the parking garage. At the time of the meeting, Defendant Zaccari had not yet seen the Facebook.com collage. Pl.'s Exs. K, L.

16.  Barnes' meeting with Zaccari took place on April 16, 2007, the same day as the tragic shootings at Virginia Tech University. But President Zaccari did not discuss Virginia Tech at that meeting, at which Defendant Mast also was present. Rather, Zaccari focused on attempting to explain and justify his plans for the parking garage. He complained that Barnes had "made life hard" for him, and that he "could not forgive" Barnes for that embarrassment. Zaccari asked Barnes, "who do you think you are" to question my judgment? Pl.'s Exs. K, L.

17.  On or about April 20, 2007, Defendant Mast gave Zaccari a copy of the collage Barnes had posted on Facebook. Pl.'s Ex. L; VSU Defs.' Mem. at 8.

---

[1] Plaintiff's Exhibit E is a collection of materials provided by Defendant Zaccari to Defendant McMillan by hand-delivery on April 26, 2007. It is referred to hereinafter as "Zaccari/McMillan Materials."

18. Defendant Zaccari based his decision to expel Barnes on the Facebook.com collage as well as Plaintiff's other non-violent speech activities relating to the parking garage. Pl.'s Exs. A, K, L; VSU Defs.' Mem. at 2.

19. Knowing that Barnes had availed himself of counseling services made available to all students by VSU, Zaccari repeatedly met with Barnes' personal counselor, Defendant McMillan, seeking information to support his decision to expel Barnes. Pl.'s Exs. C, I; Zaccari/McMillan Materials.[2]

20. Defendant Zaccari was told both by Defendant McMillan and by Barnes' private psychiatrist who was consulted in the matter, that Barnes had never exhibited any violent tendencies and that he did not represent any danger either to himself or to others. McMillan Mem. at 2-3, 6; Pl.'s Exs. G, H, I, J.

21. Despite the direct information provided by Barnes' counselors that he posed no danger to himself or others, Defendant Zaccari proceeded with a plan to expel the Plaintiff from school. He did so with the assistance of Defendants Gaskins, Keppler, Mast, McMillan and Morgan. Pl.'s Ex. L; VSU Defs.' Mem. at 8-9.

---

[2] The copies of the VSU policies attached as Exhibit C to Plaintiff's Memorandum (hereinafter "Annotated Policies") are true and correct copies of documents compiled and annotated during the decisionmaking process regarding Barnes, and maintained in his FERPA file at VSU.

22. On or about April 23, 2007, Barnes posted a series of items on his Facebook page, including clips of Bill Maher and *The Daily Show* television programs regarding a variety of political issues; a *New York Times* article about processed foods; a note that Hayden was cleaning out his room; and a link to a Salon.com article (written in response to the Virginia Tech shootings the week prior). The Salon.com article observed that the tragedy was "doubly depressing" because not only was the act terrible, but that in the author's view, people would thereafter irrationally associate the heinous acts of the shooter with all people with mental illness. Zaccari arranged to have Barnes' Facebook postings monitored. Zaccari/McMillan Materials.

23. On or about April 24, 2007, Defendant Zaccari met again with Defendant McMillan to discuss Barnes' speech activities and treatment history. Pl.'s Ex. L; Zaccari/McMillan Materials.

24. Defendant McMillan reiterated to Zaccari that Barnes had not exhibited violent tendencies in his meetings with her. Defendant Zaccari told McMillan that he would address the situation. Pl.'s Ex. L; Zaccari/McMillan Materials; McMillan Mem. at 2-3.

25. On or about April 25, 2007, under the direction of Defendant Zaccari, Defendant McMillan contacted Dr. Kevin Winders, Barnes' private psychiatrist, and requested that he assess Zaccari's asserted concerns. Pl.'s Ex. G.

26. Dr. Winders responded to Defendant McMillan's query that Barnes' history included no record of threats, violence or even "significant confrontations." *Id*.

27. Dr. Winders has met with Barnes on-and-off since Barnes was a child. Their sessions have addressed common issues such as agoraphobia and anxiety. He informed Defendant McMillan that at no time have issues related to violence, threats of violence, or violent ideation arisen in his meetings with Barnes. *Id*.

28. On April 26, 2007, at Zaccari's request, Defendant Gaskins inquired of an attorney for the Board of Regents, Betsey Neely, as to how a university president could file a complaint against a student "for violation of the Student Code of Conduct" and what processes would apply to such a situation. Neely responded by cautioning Gaskins that "[i]t is not good practice for the President to be bringing a complaint against any student," as student-conduct issues "should be handled by staff in Student Affairs. Once the President has made a decision in a matter, there is no due process at the campus level." Pl.'s Ex. F.

29. On April 26, 2007, Zaccari hand-delivered printouts of the Facebook pages he planned to use, as well as Barnes' letter to the editor, to McMillan. Next to a "Project Searchlight" banner ad on one of the pages, Zaccari wrote "This reference concerns me." Zaccari/McMillan Materials.

30. On or about April 30, 2007, Defendant McMillan asked Dr. Winders to evaluate Barnes. Dr. Winders met with Barnes that same day, and reported to McMillan that "[t]here was nothing during the interview that led [Dr. Winders] to think that [Barnes] was dangerous to himself or others." Pl.'s Ex. H.

31. On May 1, 2007, Dr. Winders discussed the interview and his observations over the phone with McMillan, who relayed them to Zaccari. *Id*.

32. On May 2, 2007, Dr. Winders sent a letter summarizing his observations to McMillan. In that letter, he reiterated his view that Barnes posed no threat to himself or others. *Id*.

33. On May 3, 2007, Zaccari held a meeting with Defendants Gaskins, Mast, McMillan, and Keppler at which the decision was made to expel Barnes. VSU Defs.' Mem. at 8-9.

34. In the May 3 meeting, the Defendants decided to implement the decision to expel Barnes without any notice or hearing. Pl.'s Ex. A.

35. On May 7, 2007, Defendant Zaccari informed Barnes via letter of Defendants' decision to expel him from VSU. *Id*.

36. The May 7, 2007 letter stated, in pertinent part:

> Dear Mr. Barnes:
>
> As a result of recent activities directed towards me by you, included [sic] but not limited to the attached threatening document [(the Facebook collage)], you are considered to present a clear and present danger to this campus. Therefore, pursuant to Board of Regents' policy 1902, you are hereby notified that you have been administratively withdrawn from Valdosta State University effective May 7, 2007.

The letter also informed Barnes that he would be reinstated at VSU after providing: (1) correspondence from a psychiatrist indicating that Barnes posed no danger to self or others; and (2) documentation from a "certified mental health professional" indicating that during his tenure at VSU, Barnes would receive ongoing therapy. *Id*.

37. Board of Regents policy 1902 states that any student "who clearly obstructs, or disrupts, or attempts to obstruct or disrupt" campus activities "shall be subject to disciplinary procedures, possibly resulting in dismissal" from VSU. This same policy is listed in the VSU student handbook under the title "Disorderly Assembly." Pl.'s Ex. D.

38.     At no time has Barnes ever obstructed, disrupted, or attempted to obstruct or disrupt any campus activities.  Pl.'s Exs. A, K, L.

39.     VSU policies for student disciplinary procedures are set forth in the VSU student handbook.  These procedures include:  (1) a "judicial committee" composed of either eleven VSU students or five faculty members and two students which will be assigned to hear a given case; (2) five days' prior notice in writing of the charges made against the student and the date, time and place of a hearing to be held regarding those charges; (3) the right to have an advisor accompany the student to the hearing; (4) the right to question any and all witnesses and to submit his or her own witnesses; (5) the right to open proceedings; and (6) the right to have the proceedings recorded.  None of these due process requirements were followed by VSU.  Annotated Policies; Pl.'s Ex. A.

40.     The VSU student handbook also provides for "mental health withdrawal."  The procedure for such withdrawal includes: (1) a determination by a mental health professional (not an administrator) that a student may be of danger to himself or others; (2) recommendation by such a mental health professional that a hearing be held concerning the student; and (3) a hearing conducted by the office of the Dean of Students, at which the student may present witnesses and evidence.  VSU followed none of these policies.  Annotated Policies.

41. Defendants reviewed these policies in detail before deciding not to comply with them. *Id.*

42. No provision exists in either the VSU student handbook or in Board of Regents policies for unilaterally imposed "administrative withdrawal." *Id.*; Pl.'s Ex. D.

43. Within days of receipt of the expulsion notice, Barnes satisfied the requirements for reinstatement set forth in the May 7, 2007 letter. He provided: (1) correspondence from Dr. Winders indicating that Barnes posed no danger to self or others; and (2) documentation from a "certified mental health professional" ("McMillan") indicating that during his tenure at VSU, Barnes would receive ongoing therapy. *See* ¶¶ 44-45, *infra*. Nevertheless, VSU refused to reinstate Barnes. Pl.'s Ex. A; VSU Defs.' Mem. at 3-4.

44. On May 8, 2007, Defendant McMillan sent a letter to the Board of Regents and to Defendant Zaccari confirming her professional opinion that, like Dr. Winders, she did not believe Barnes was "a threat, indirectly or directly to anyone on the VSU Campus (i.e., President, staff, faculty, students, others, or self)." Pl.'s Ex. I.

45. On May 8, 2007, Dr. Winders also submitted a letter reiterating his opinion that Barnes posed no threat of violence to himself or others. Regarding

VSU's decision to expel Barnes, the letter stated, "I am surprised that this action was taken with a good report from me and no further evaluation to contradict my findings." Pl.'s Ex. J.

46. Despite this substantial evidence that Barnes posed no threat, Defendant Zaccari refused to reinstate Barnes. VSU Defs.' Mem. at 3-4; Pl.'s Exs. K, L.

47. On May 21, 2007, Barnes appealed his expulsion to the Board of Regents. Pl.'s Ex. K.

48. On June 21, 2007, Defendant Zaccari submitted a letter explaining his decision to the Board. In this letter, Zaccari defended his decision to build the parking garage and accused Barnes of "mocking" him. He cited the Virginia Tech tragedy as justification for his reaction to the Facebook collage, but did not mention the professional opinions of Dr. Winders or Defendant McMillan. Pl.'s Ex. L.

49. In this letter, Zaccari wrote, in justifying his decision not to accord Barnes his rights under the Constitution and Board/VSU policies:

> I took what I believed to be appropriate action and minimize campus focus on Mr. Barnes and his documented behavior by not scheduling a judicial hearing. The exigency of the circumstances dictated action that would not invite alarm. A campus hearing would have involved a judicial panel comprised of students and faculty. This format would

have alerted the campus of a potential threat, and would have compromised campus safety by exacerbating potential alarm.

*Id.*

50.  On or about August 7 and 8, 2007, the Board of Regents heard Barnes' appeal and referred the matter to an Administrative Law Judge at the Office of State Administrative Hearings.  Defs.' Ex. 2; Pl.'s Ex. M.

51.  On or about December 17, 2007, the Board decided to reevaluate Barnes' appeal in a closed executive session.  Pl.'s Ex. O.

52.  On January 17, 2008, the Board, in a closed executive session, rescinded the decision by Zaccari and the other VSU Defendants to expel Barnes. Defs.' Ex. 2.

53.  To this date, Barnes has not been allowed to attend any hearing regarding his expulsion from VSU.  Pl.'s Ex. A, Defs.' Ex. 2.

54.  Barnes desires to return to VSU and to have his record cleared of any purported wrongdoing.  Pl.'s Ex. N.

Respectfully submitted this 2nd day of May, 2008.

> */s/ Robert Corn-Revere*
> Robert Corn-Revere
> Brigham J. Bowen
> Lisa B. Zycherman
> Admitted *Pro Hac Vice*

Attorneys for Plaintiff
Davis Wright Tremaine, LLP
Suite 200
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
202-973-4200
Email: bobcornrevere@dwt.com

***/s/ Cary Stephen Wiggins***
Cary Stephen Wiggins
Irma Espino
Georgia Bar No. 757657
Georgia Bar No. 558220
Attorneys for Plaintiff
Cook Youngelson & Wiggins
260 Peachtree Street, NW
Suite 401
Atlanta, GA 30303
404-659-2880
Email: cary@cywlaw.com

## **CERTIFICATE OF SERVICE AND COMPLIANCE**

I hereby certify that on May 2, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record. I also certify, pursuant to LR 7.1.D., that this brief has been prepared in Times New Roman 14-point font.

>	*/s/ Cary Stephen Wiggins*
>	Cary Stephen Wiggins
>	Georgia Bar No. 757657
>	Attorney for Plaintiff
>	Cook Youngelson & Wiggins
>	260 Peachtree Street, NW
>	Suite 401
>	Atlanta, GA 30303
>	404-659-2880
>	Email: cary@cywlaw.com