```
                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF GEORGIA
                       ATLANTA DIVISION
```

THOMAS HAYDEN BARNES,

      Plaintiff,

   v.

RONALD M. ZACCARI,
individually and in his
official capacity as President
of Valdosta State University;
VALDOSTA STATE UNIVERSITY;
BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA;
LAVERNE GASKINS, individually
and in her official capacity
as in-house counsel at
Valdosta State University;
KURT KEPPLER, individually and
in his official capacity as
Vice President for Student
Affairs at Valdosta State
University; RUSS MAST,
individually and in his
official capacity as Dean of
Students at Valdosta State
University; LEAH McMILLAN,
individually and in her
official capacity as a
counselor at Valdosta State
University; VICTOR MORGAN,
individually and in his
official capacity as Director
of the Valdosta State
University Counseling Center,

      Defendants.

CIVIL ACTION
NO. 1:08-CV-0077-CAP

## O R D E R

    This matter is before the court on the defendants' motions to

dismiss [Doc. Nos. 16 and 17] and the plaintiff's motion for partial summary judgement [Doc. No. 27].

## **Factual Background**

In January, 2007, Barnes enrolled at Valdosta State University ("VSU"). On March 22, 2007, the VSU student newspaper, the *Spectator*, ran a story regarding VSU President Zaccari's plans to construct a large parking deck on campus. After reading the article, Barnes started an initiative to raise public awareness of the issue and its potential environmental impacts. Over the next week, Barnes posted a series of flyers around the VSU campus expressing his opposition to the parking garage plan, emailed VSU officials and fellow students, and electronically posted information and responses concerning the construction project on his Facebook webpage, an internet social networking website.

On March 26, 2007, classmates involved with Students Against Violating the Environment ("S.A.V.E."), a campus environmental advocacy organization, informed Barnes that President Zaccari was upset with Barnes's speech activities and had recently contacted S.A.V.E. to express his displeasure, particularly with the flyers. In response, Barnes took down his flyers and deleted his entries that were posted on the Facebook webpage. Moreover, Barnes wrote a letter to President Zaccari expressing a desire not to have an adverse response to his activities.

2

During the first part of April, 2007, Barnes learned that the VSU Board would be convening on April 17, 2007, to vote on the proposed parking garage. In response, Barnes contacted members of the VSU Board to explain his opposition prior to the scheduled vote. Upon learning of Barnes's contacts, President Zaccari summoned Barnes to meet with him and Russ Mast, Dean of Students at VSU, on the afternoon of April 16, 2007. Barnes complied with the summons and arrived at President Zaccari's office with a friend. Prior to the start, President Zaccari denied Barnes's request to permit his friend to attend the conference with the school officials because, as Zaccari explained, the matter only concerned Barnes and the President. During the meeting with Barnes, President Zaccari attempted to explain his reasoning and decisions regarding the parking garage and expressed his general frustration with Barnes's opposing views and actions.

In the days following the meeting, Barnes sent President Zaccari two follow-up emails to introduce alternative ideas to the planned construction. Then, on April 19, 2007, the *Spectator* published a Barnes letter to the editor in which he expressed his views regarding the planned parking decks. The following day, President Zaccari attended a breakfast with other VSU administration and members of the faculty during which he discussed his frustrations with Barnes.

On April 24, 2007, President Zaccari employed a personal security team for protection based upon a review of Barnes's new Facebook website postings and a subsequent fear that Barnes would ultimately personally attack him. Additionally, President Zaccari learned that Barnes had received counseling services from the VSU campus counselors, namely Leah McMillan. At this point, President Zaccari initiated an effort, with the assistance of some of the named defendants in the complaint, to learn more about Barnes's psychiatric health and to explore procedures for expelling Barnes as a student.

Ultimately, despite multiple documented assessments from McMillan and Barnes's own private psychiatrist, Dr. Kevin Winders, that Barnes had neither exhibited nor expressed tendencies or proclivities of violence, President Zaccari led a meeting on May 3, 2007, that yielded a decision to remove Barnes as a student from VSU. Defendants Gaskins, Mast, Keppler and McMillan ("VSU Defendants") allegedly attended the expulsion meeting. Barnes was notified of his expulsion via a letter, signed by President Zaccari, that was slipped under the door of his dorm room. Within days of receipt of the expulsion notice, Barnes filed for reinstatement in accordance with the requirements listed in the expulsion letter. Despite compliance with the reinstatement requirements, President Zaccari maintained his opinion that Barnes

4

should be expelled and issued a memorandum to VSU staff notifying them of his decision.

On May 21, 2007, Barnes appealed his expulsion to the Board of Regents of the University System of Georgia ("Board of Regents"). The Board of Regents heard Barnes's appeal in August 2007, and then referred the matter to an Administrative Law Judge at the Office of State Administrative Hearings. Barnes filed this lawsuit on January 9, 2008. On January 17, 2008, the Board rescinded the expulsion decision without comment. Barnes currently resides in the Atlanta area and attends Kennesaw State University.

## Legal Analysis

**A.  Legal Standard**

The defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(1)[1] and 12(b)(6). A Rule 12(b)(6) motion requires an assessment of whether the plaintiff has set forth claims upon which this court may grant relief. In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, Duke v. Cleland,

_____

[1] Rule 12(b)(1) relates to subject matter jurisdiction. The only claim the defendants argue should be dismissed under 12(b)(1) is plaintiff's post-deprivation due process claim. However, there is no claim for post-deprivation due process in the complaint. Therefore, the court will not address the motion to the extent it relates to 12(b)(1).

5 F.3d 1399, 1402 (11th Cir. 1993).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations:

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.

Bell Atlantic Corp. v. Twombly, 550 U.S. ___, ___, 127 S.Ct. 1955, 1964-65 (2007).  Ultimately, the complaint is required to contain "only enough facts to state a claim to relief that is plausible on its face."  Id. at 1974.  But, "[d]ismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised."  Id.  In light of this standard, the court reviews each of the counts alleged in the complaint to determine whether dismissal is warranted.

**B.    Count 1 - Liability under § 1983: Free Speech Clause Violation**

In Count 1 of the Complaint, Barnes alleges that all of the defendants infringed upon his rights under the United States Constitution by expelling him from VSU in retaliation for his exercise of First Amendment freedoms.[2]  Because Barnes sues VSU,

---

[2] The plaintiff also alleges individual liability against President Zaccari, Morgan, and the VSU defendants for retaliation

the Board of Regents, President Zaccari, Morgan, and the VSU defendants in their official capacities, these defendants claim immunity under the Eleventh Amendment as a defense. Thus, prior to addressing the issue of whether Barnes has met pleading standards, the court will review the Eleventh Amendment immunity standard for these defendants.

      **1.   Eleventh Amendment Immunity for Board of Regents and VSU**

In general, the Eleventh Amendment grants the state immunity from lawsuits in federal court. The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Interpretations of this Amendment have extended its application to "suits by citizens against their own states." Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356, 363 (2001).

A plaintiff may overcome Eleventh Amendment immunity in one of two ways. First, the State may waive it. Second, Congress may abrogate it when it both unequivocally intends to do so and acts "pursuant to a valid grant of constitutional authority." Kimel v. Florida Board of Regents, 528 U.S. 62, 73 (2000). Here, the State

---

against free speech exercise in Count 3 of the Complaint, which will be addressed later in the order.

has not waived immunity, therefore the question is whether Congress properly abrogated Eleventh Amendment immunity from suits under 42 U.S.C. § 1983.

In addressing the issue of Congressional abrogation of immunity under 42 U.S.C. § 1983, courts have ruled that States enjoy immunity from claims under § 1983. More specifically, states are not persons capable of being sued within the meaning of § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 85 (1989); see also Quern v. Jordan, 440 U.S. 332, 340-41 (1979) (holding that States enjoy Eleventh Amendment immunity from § 1983 claims). Therefore, to the extent that the plaintiff has asserted claims against state entities, these claims are barred by the Eleventh Amendment.

In determining whether an "entity sued can be considered an agency or instrumentality of the state; this inquiry is generally conducted by reference to state law." Harden v. Adams, 760 F.2d 1158, 1163 (11th Cir. 1985) (citations omitted). Under state law, the Board of Regents of the University System of Georgia is an agency of the state and enjoys Eleventh Amendment immunity. Pollard v. Board of Regents of the University System of Georgia, 401 S.E.2d 272 (Ga. 1991). Additionally, with regard to VSU, it is undisputed that the university is also an entity of the state and therefore is entitled to Eleventh Amendment immunity as well. See

8

<u>Williams v. Board of Regents of University System of Georgia</u>, 477 F.3d 1282, 1301 (11th Cir. 2007) (holding that Eleventh Amendment bars § 1983 claim against state university in Georgia).

### 2.    Eleventh Amendment Immunity for President Zaccari, Morgan, and VSU Defendants

With regard to the liability of President Zaccari, Morgan, and the VSU defendants in their official capacities, the Eleventh Amendment generally bars claims for damages against these individuals just as it bars claims against the state entity itself. <u>Gamble v. Florida Department of Health & Rehabilitation Services</u>, 779 F.2d 1509, 1512 (11th Cir. 1986) (stating that claims for damages against a state government employee in his official capacity is treated as a suit against the state). However, under certain circumstances, a plaintiff may receive equitable relief against state officers. <u>Florida Association of Rehabilitation v. Florida Department of Health</u>, 225 F.3d 1208, 1219 (11th Cir. 2000); <u>see</u> <u>Ex Parte Young</u>, 209 U.S. 123 (1908).

The doctrine of <u>Ex Parte Young</u> provides the basis for the exception to Eleventh Amendment immunity and permits plaintiffs to receive prospective equitable relief against state officers acting in their official capacity. <u>Florida Association of Rehabilitation</u>, 225 F.3d at 1219. However, <u>Ex Parte Young</u> only "applies to cases in which the relief against the state official directly ends the

violation of federal law, as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or simply to compensate the victim." Id. Given that Barnes did not allege that the violations of his constitutionally protected rights continue to occur, President Zaccari, Morgan, and the VSU defendants, in their official capacities, are entitled to Eleventh Amendment immunity as officers of a state entity, VSU.

**C.   Count 2 - Liability under § 1983: Procedural and Substantive Due Process**

In Count 2 of the complaint, the plaintiff alleges that all of the defendants violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment and are therefore liable to the plaintiff under 42 U.S.C. § 1983.[3] Because Barnes sues VSU, the Board of Regents, President Zaccari, Morgan, and the VSU defendants in their official capacities, this cause of action is also barred by Eleventh Amendment immunity.

**D.   Count 3 - Liability under § 1983: Individual Liability for Free Speech Clause Violation**

In Count 3 of the complaint, the plaintiff alleges that President Zaccari, Morgan, and the VSU defendants, in their

---

[3]   The plaintiff also alleges individual liability against President Zaccari, Morgan, and the VSU defendants for Procedural and Substantive Due Process violations in Count 4 of the Complaint, which will be addressed later in the order.

individual capacities, infringed upon his rights under the United States Constitution by expelling him from VSU in retaliation for Barnes's exercise of First Amendment freedoms.   Unlike a claim against a state defendant in his official capacity, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."  Kentucky v. Graham, 473 U.S. 159, 165 (1985); see Gamble, 779 F.2d at 1512.  In their motions to dismiss, President Zaccari, Morgan, and the VSU defendants, in their individual capacities, claim qualified immunity relieves them of any personal liability.

   1.   **Qualified Immunity for President Zaccari, Morgan, and the VSU Defendants**

   The defense of qualified immunity provides "complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Thomas v. Roberts, 261 F.3d 1160, 1170 (11th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (additional quotations omitted)).  Given the important public policies underlying the defense of qualified immunity, the Eleventh Circuit has cautioned that "courts should think long and hard before stripping defendants of immunity." Lassiter v. Alabama A&M University, 28 F.3d 1146, 1149 (11th Cir.

1994) (abrogated on other grounds by <u>Hope v. Pelzer</u>, 536 U.S. 730
(2002)); <u>see also</u> <u>Ray v. Foltz</u>, 370 F.3d 1079, 1082 (11th Cir.
2004) (quoting <u>Lassiter</u> for this proposition after <u>Lassiter</u> was
abrogated by <u>Hope</u>).

To receive qualified immunity, "the public official must first
prove that he was acting within the scope of his discretionary
authority when the allegedly wrongful acts occurred." <u>Lee v.</u>
<u>Ferraro</u>, 284 F.3d 1188, 1195 (11th Cir. 2002). Then, "[o]nce the
defendant establishes that he was acting within his discretionary
authority, the burden shifts to the plaintiff to show that
qualified immunity is not appropriate." <u>Id.</u> The Eleventh Circuit
has held that:

> [Q]ualified immunity analysis involves two discrete
> queries. First, we must decide whether the facts
> alleged, assuming they are true, demonstrate that
> the defendants violated a constitutional right. If
> this is answered in the affirmative, we proceed to
> the second query, which is to determine whether the
> right violated was clearly established.

<u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1232 (11th Cir. 2004).
Furthermore, in <u>Saucier v. Katz</u>, the Supreme Court set forth a two-
part test for evaluating whether the plaintiff has met this burden.
533 U.S. 194, 201 (2001); <u>see also</u> <u>Lee</u>, 284 F.3d at 1194. First,
the court must ask this threshold question: "Taken in the light
most favorable to the party asserting the injury, do the facts
alleged show the officer's conduct violated a constitutional

12

right?" <u>Saucier</u>, 533 U.S. at 201; <u>see also</u> <u>Lee</u>, 284 F.3d at 1194. Second, if a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine "whether the right was clearly established." <u>Saucier</u>, 533 U.S. at 201; <u>see also</u> <u>Lee</u> 284 F.3d at 1194.

> **a.    Qualified    Immunity:    Scope    of    Discretionary**
> **Authority**

In this case, it is undisputed that President Zaccari, Morgan, and the VSU defendants were acting within the course and scope of their discretionary authority when they dealt with Barnes.

> **b.    Qualified Immunity: Constitutional Right to Free**
> **Speech under the First Amendment**

On the issue of whether there is a constitutionally protected right to speak out against President Zaccari's construction plan, Barnes argues that his effort to alert the VSU community to the environmental impact of President Zaccari's parking garage plan through the use of flyers, online postings, personal communications, and submissions to the editor of the campus newspaper constitute the "most pristine and classic form[s]" of exercising free speech under the First Amendment. <u>Edwards v. South Carolina</u>, 372 U.S. 229, 235 (1963). Furthermore, the First Amendment represents a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement,

caustic, and sometimes unpleasantly sharp attacks on government and public officials." New York Times v. Sullivan, 376 U.S. 254, 270 (1964). With specific regard to his speech on and around the VSU campus, Barnes points out "state colleges and universities are not enclaves immune from the sweep of the First Amendment. 'It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" Healy v. James, 408 U.S. 169, 180 (1972) (citing Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 506 (1969)). Finally, Barnes argues that "(t)he vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." Shelton v. Tucker, 364 U.S. 479, 487 (1960).

Conversely, the defendants contend that Barnes's speech constituted fighting words and is therefore not protected by the First Amendment. In support of their argument, the defendants claim that Barnes's speech tended to provoke violence and created immediate panic, thus it cannot be constitutionally protected. More specifically, VSU defendants allege the use of the term "memorial," in the phrase "S.A.V.E.-Zaccari Memorial Parking Garage" within a collage expressing opposition to President Zaccari's planned construction, amounted to fighting words because

14

the word "memorial" is often used in reference to honoring dead people.

The issue of whether particular words constitute "fighting" words, that is, words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace," Chaplinsky v. New Hampshire, 315 U.S. 568, 572 (1942), depends "upon the circumstances of their utterance." Lewis v. City of New Orleans, 415 U.S. 130, 135 (1974) (Powell, J., concurring in the result). For purposes of the motion to dismiss, the court determines that the inclusion of the word "memorial" by its mere utterance in a photo collage that was posted on an internet website simply cannot be rationally construed as likely to incite immediate violence, even in the wake of the Virginia Tech tragedy that the defendants allude to in their motion. Moreover, there is no indication that the language had the potential to cause any sort of substantial disruption on the VSU campus or in the classroom. See Tinker, 393 U.S. at 509 (holding that in order for officials to justify prohibition of a particular expression of opinion, it must be able to show the forbidden conduct would materially and substantially interfere with the requirements of appropriate discipline in the operation of the school). Therefore, the court concludes, for purposes of resolving this motion to dismiss, that Barnes's use of the word "memorial" in his collage did not constitute fighting

words and deserves constitutional protection under the First Amendment.

### c. Qualified Immunity: Clearly established Constitutional Right to Free Speech under the First Amendment

The final component of the three-part analysis for determining whether state employees are entitled to qualified immunity in their individual capacities requires the court to determine if the constitutional right allegedly violated was clearly established. In other words, the official's action must be evaluated against "clearly established law," consisting of statutory or constitutional rights that a reasonable person should have known. Harlow, 457 U.S. at 818; Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir. 1988). In making this determination, the relevant, dispositive inquiry "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. Therefore, the necessary inquiry for this particular case is a determination of whether a reasonable state university official would know that expelling a student from school for advocating against planned construction would violate the student's First Amendment right to free speech.

In Hope, the Supreme Court held:

> For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand

16

> that what he is doing violates that right.  This is
> not to say that an official action is protected by
> qualified immunity unless the very action in
> question has previously been held unlawful, <u>see</u>
> <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 535, n. 12; but
> it is to say that in the light of pre-existing law
> the unlawfulness must be apparent.'  <u>Anderson v.</u>
> <u>Creighton</u>, 483 U.S. 635, 640 (1987).

<u>Hope</u>, 536 U.S. at 741.  The Supreme Court then explained that

"'general statements of the law are not inherently incapable of

giving fair and clear warning, and in other instances a general

constitutional rule already identified in the decisional law may

apply with obvious clarity to the specific conduct in question,

even though the very action in question has not previously been

held unlawful.'"  <u>Hope</u>, 536 U.S. at 741 (quoting <u>United States v.</u>

<u>Lanier</u>, 520 U.S. 259, 270 (1997) (other internal quotations

omitted)).

     In <u>Bennett v. Hendrix</u>, the Eleventh Circuit stated "it is

'settled law' that the government may not retaliate against

citizens for the exercise of First Amendment rights."  423 F.3d

1247, 1250 (11th Cir. 2005) (citing <u>Georgia Association of</u>

<u>Educators v. Gwinnett County School District</u>, 856 F.2d 142, 145

(11th Cir. 1988)).  Having already determined, for purposes of this

motion to dismiss, that Barnes's speech was protected by the First

Amendment, the court finds that the defendants were on notice and

had fair warning that retaliating against him for his speech and

expression against the proposed construction of the parking garage would violate his constitutional rights.  Therefore, the defendants are not entitled to qualified immunity as to the retaliation claim.

**2.  Plaintiff's Retaliation Claim against the VSU Defendants**

In their motion to dismiss, President Zaccari and the VSU defendants alternatively argue that Barnes's retaliation claim fails because there was no causal connection between VSU defendants Gaskins, Keepler, Mast, McMillan, and Morgan and his alleged constitutional deprivation.  Having already found above that the VSU defendants, in their individual capacities, are not entitled to qualified immunity, the court now considers whether Barnes's retaliation claim is due to be dismissed on the merits.

**a.  Prong 1: Speech or act constitutionally protected**

In <u>Bennett</u>, the Eleventh Circuit established,

> To state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech.

423 F.3d 1247, 1250 (11th Cir. 2005).  As far as the first prong of this formulation, the court has already concluded, for purposes of this motion to dismiss, that Barnes's speech was constitutionally protected by the First Amendment.

### b.    Prong 2: Defendant's retaliatory conduct adversely affected the protected speech

The second prong of a retaliation claim is proof that the defendant's retaliatory conduct adversely affected the protected speech.  The VSU defendants do not argue that the decision to expel Barnes did not adversely affect the protected speech; therefore, the court moves on to the third prong of a retaliation claim.

### c.    Prong 3: Causal connection between the retaliatory actions and the adverse effect on speech

The third prong of a retaliation claim requires a causal connection between the retaliatory actions and the adverse effect on speech.  Therefore, as to each of the named defendants, the plaintiff must establish that the defendant's conduct was the cause of the adverse effect on a right, privilege, or immunity secured by the United States Constitution or federal law.

In this case, Barnes alleges that the defendants violated his right to free speech under the First Amendment by conspiring to and ultimately expelling him from VSU in retaliation for the exercise of his constitutionally protected freedom.  More specifically,

> On May 3, 2007, Zaccari held a meeting regarding Barnes which, on information and belief, Gaskins, Mast, McMillan and Keppler attended.  At this meeting, Defendants-led by Zaccari-decided, unilaterally and without any process due to Barnes pursuant to the Constitution or to VSU and/or Board Policies, to expel Barnes from VSU.

Plaintiff's Complaint at ¶ 51.   In addition to attending the expulsion meeting, Barnes alleges some other specific acts of certain VSU defendants that he contends were in retaliation for exercising his constitutional right to free speech.   He alleges that Mast attended the April 16, 2007, meeting between President Zaccari and Barnes, and provided President Zaccari with a copy of Barnes's Facebook webpage.   Barnes alleges that Gaskins assisted President Zaccari with finding a way for the University President to bring a complaint against a student, even after being warned such a process would eliminate due process at the campus level. Finally, he alleges that McMillan met with President Zaccari on various occasions and discussed Barnes's confidential counseling files.   In summary, Barnes alleges that the defendants conspired prior to and during the May 3 meeting to retaliate against Barnes's exercise of his First Amendment right to free speech.

### i.   President Zaccari and the VSU Defendants

Given that the complaint is required to contain "only enough facts to state a claim to relief that is plausible on its face," Twombly, 127 S.Ct. at 1974, the court determines that Barnes has met his pleading requirement for the third prong of his retaliation claim with regard to President Zaccari and the VSU defendants. Under the alleged facts, a reasonable inference can be made showing a causal connection between President Zaccari's and the VSU

defendants' direct participation in the expulsion meeting and the adverse effect on Barnes's speech.    At this point in the proceedings, the court finds dismissal of President Zaccari or any of the VSU defendants is inappropriate until the parties conduct discovery and reveal exactly what occurred leading up to and during the May 3 meeting.

### ii.  Defendant Morgan

On the other hand, Barnes fails to allege any causal connection between Defendant Morgan and the retaliation against the student for exercising free speech rights under the First Amendment.  In the complaint, Barnes alleges:

> On or about April 20, 2007, defendant Mast gave Zaccari a copy of the collage Barnes had posted on Facebook.  On information and belief, Zaccari then decided to use the Facebook posting, along with his awareness that Barnes had availed himself of campus counseling services, to concoct a claim, in retaliation for Barnes's speech activities questioning his parking garage plans, that Barnes represented some kind of danger.  Zaccari pursued this strategy with the assistance of defendants Gaskins, Keppler, Mast, McMillan and ***Morgan***.

Plaintiff's Complaint at ¶ 38 (emphasis added).  Merely alleging that Morgan assisted in a strategy, without anything more, fails to link that defendant's conduct with the adverse impact upon a right, privilege, or immunity secured by the United States Constitution or federal law.  Therefore, the court finds that the complaint fails

to state a claim for retaliation against Defendant Morgan in his individual capacity.

**E.    Count 4 - Liability under § 1983: Individual Liability for Violating Procedural and Substantive Due Process Rights**

In Count 4 of the complaint, Barnes alleges that President Zaccari, Morgan, and the VSU defendants, in their individual capacities, violated his Procedural and Substantive Due Process rights under the Fourteenth Amendment.  President Zaccari, Morgan, and the VSU defendants claim qualified immunity in their individual capacities, and in the alternative, make arguments regarding the non-existence of substantive due process rights for Barnes as a college student and further argue that Barnes received all the procedural due process required under the law.

**1.    Substantive and Procedural Due Process Rights of College Students**

The right to a public education under state law is a property interest protected by the Due Process Clause of the Fourteenth Amendment.  See <u>Goss v. Lopez</u>, 419 U.S. 565, 574 (1975).  While the court recognizes that the <u>Goss</u> decision merely addresses the property interest in education for high school students, the Eleventh Circuit has applied the Supreme Court's reasoning in <u>Goss</u> to college students.

In <u>Nash v. Auburn University</u>, the Eleventh Circuit ruled that due process requires, at a minimum, that college students "have a

22

right to respond [to the charges], but their rights in the academic disciplinary process are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal trial." 812 F.2d 655, 664 (11 Cir. 1987) (citing <u>Goss</u>, 419 U.S. at 583).  With regard to the extent of such necessary due process, binding precedent establishes that:

> . . . the student should be given the names of the witnesses against him and an oral or written report on the facts to which each witness testifies. He should also be given the opportunity to present to the Board, or at least to an administrative official of the college, his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf. If the hearing is not before the Board directly, the results and findings of the hearing should be presented in a report open to the student's inspection.  If these rudimentary elements of fair play are followed in a case of misconduct of this particular type, we feel that the requirements of due process of law will have been fulfilled.

<u>Dixon v. Alabama State Bd. of Ed.</u>, 294 F.2d 150, 159 (5th Cir. 1961); <u>see also</u> <u>Board of Curators of University of Missouri v. Horowitz</u>, 435 U.S. 78, 87 (1978) (recognizing differences between decisions to suspend or dismiss a student for disciplinary purposes and similar actions taken for academic reasons which may call for hearings in connection with the former but not the latter).  These cases clearly recognize the existence of some substantive and procedural due process rights for college students when facing disciplinary action.

23

In the instant case, the defendants failed to provide Barnes with any sort of notice of the May 3 meeting or even an opportunity to present a defense on his own behalf. To the extent that the defendants argue that the perceived threat Barnes allegedly posed to President Zaccari and the VSU campus outweighed Barnes's right to any sort of pre-expulsion hearing, this defense is not properly raised in a motion to dismiss. Accordingly, the court finds that Barnes has properly pled claims for the violation of his substantive and procedural due process rights.

### 2. Qualified Immunity for the Defendants

In addition to arguing the non-existence of substantive due process rights and affording Barnes with all procedural due process required, the defendants assert qualified immunity as a defense. As discussed previously, in order for qualified immunity to apply, the defendants must establish they were acting within their discretionary authority, and then the plaintiff bears the burden of proving that his clearly established constitutional right was violated.

It is undisputed that the defendants where acting within their discretionary authority at the time of the alleged violation. And, as discussed above in Part D. 1., Barnes's allegations, taken as true, amount to a violation of his substantive and procedural due process rights. Finally, _Nash_ and _Dixon_ clearly established that

college students facing expulsion for disciplinary reasons must be afforded some sort of notice and a subsequent hearing in order to avoid violating Fourteenth Amendment substantive and procedural due process rights. Therefore, President Zaccari and the VSU defendants are not entitled to qualified immunity on this claim.

On the other hand, Barnes fails to allege enough to state a claim that Defendant Morgan violated his substantive and procedural due process rights.  In the complaint, Barnes only alleges:

> On or about April 20, 2007, defendant Mast gave Zaccari a copy of the collage Barnes had posted on Facebook.  On information and belief, Zaccari then decided to use the Facebook posting, along with his awareness that Barnes had availed himself of campus counseling services, to concoct a claim, in retaliation for Barnes's speech activities questioning his parking garage plans, that Barnes represented some kind of danger.  Zaccari pursued this strategy with the assistance of defendants Gaskins, Keppler, Mast, McMillan and ***Morgan***.

Plaintiff's Complaint at ¶ 38 (emphasis added).  Even taking the allegations that Morgan assisted in a strategy as true, the complaint fails to state a claim that Morgan's conduct caused violations of Barnes's substantive and procedural due process rights.  Therefore, the court finds that  Defendant Morgan is entitled qualified immunity as to the claims against him in his individual capacity.

**F.    Count 5 - Breach of Contract Claim against the Board of Regents and VSU**

In Count 5 of the complaint, Barnes alleges that VSU and the Board of Regents breached a written contract with him by failing to abide by policies and provisions outlined in the VSU student handbook and the contract for student housing.  Despite the defendants' assertions to the contrary, Barnes's claim specifically alleges that he had a written contract with VSU and the Board of Regents, those defendants breached the written contract, and the breach actually and proximately caused him damages.

As far as immunity from the breach of contract claim, VSU and the Board of Regents, as entities of the state, waived their immunity by statute.  O.C.G.A. § 50-21-1(a).  That statute provides "the defense of sovereign immunity is waived as to any action ex contractu for the breach of any written contract existing on April 12, 1982, or thereafter entered into by the state, departments and agencies of the state, and state authorities."  Id.  While the defendants argue that this waiver is only applicable to actions brought in state court, O.C.G.A. § 50-21-1(b) merely limits the venue in which the plaintiff may bring a breach of written contract claim, and venue can be waived.  Therefore, Barnes's breach of contract claim survives the motion to dismiss.

**G.    Count 6 - Americans with Disabilities Act**

In Count 6 of the complaint, Barnes alleges that all of the defendants, in their official capacities, intentionally discriminated against him because of his disability and are therefore in violation of Title II of the Americans with Disabilities Act (ADA).  In their motion, defendants contend that the individual defendants, in their official capacities, are improper defendants and that Barnes has failed to state a valid ADA claim.

Under Title II of the ADA, a suit against an individual is not authorized; rather, only a "public entity" is subject to liability. 42 U.S.C. § 12132.  However, in an official capacity suit for relief, the real party in interest is the government entity.  Thus, a suit against a state official in his or her official capacity is in effect against a "public entity" and is authorized by § 12132. Given that a "public entity" means an agency of the state, the court treats Barnes's ADA claim against all defendants, including individuals in their official capacities, as a claim against the state entities VSU and the Board of Regents.  Next, contrary to the defendants' assertions, the States are subject to the ADA.  United States v. Georgia, 546 U.S. 151 (2006) (holding that Title II of the ADA creates a private cause of action for damages against the

27

States for conduct that actually violates the Fourteenth Amendment and that Title II validly abrogates state sovereign immunity).

A prima facie case of employment discrimination under the ADA is established by demonstrating that the plaintiff: (1) has a disability; (2) is qualified, with or without reasonable accommodations; and (3) was unlawfully discriminated against because of his disability. Rossbach v. City of Miami, 371 F.3d 1354, 1356-57 (11th Cir. 2004). In his complaint, Barnes claims to have a qualified disability, mental health issues, pursuant to the ADA. Plaintiff's Complaint at ¶ 104. Moreover, he alleges that the defendants discriminated against him because of his disability. Plaintiff's Complaint at ¶ 105. Accepting Barnes's allegations as true, the complaint asserts facts from which the court may grant relief and thus survives a motion to dismiss.

**H.    Count 7 - Rehabilitation Act**

In Count 7 of the complaint, Barnes alleges that all of the defendants, in their official capacities, intentionally discriminated against him because of his disability and are therefore in violation of Section 504 of the Rehabilitation Act of 1973, 19 U.S.C. § 794 ("Rehabilitation Act"). As the defendants' motion to dismiss points out, the standards used to determine whether a complaint states a cause of action under the Rehabilitation Act shall be the same as the standards applied under

the ADA.  See  Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255
(11th Cir. 2001).   Having already established that Barnes
sufficiently pled an ADA claim in his complaint, the court
determines that he has sufficiently pled his Rehabilitation Act
claim and thus this survives the motion to dismiss.

I.    **Injunctive Relief Claims**

In many of the his claims within the complaint, the plaintiff
states that he is seeking declaratory and injunctive relief.
However, because the violations he alleges are not ongoing, these
claims for relief are moot.

**Conclusion**

For the reasons set forth above, the court hereby DENIES in
part and GRANTS in part the defendants' motions to dismiss [Doc.
Nos. 16 and 17].  The motions are granted with respect to:

-    Count 1 of the complaint,

-    Count 2 of the complaint,

-    As to Defendant Morgan in Count 3,

-    As to Defendant Morgan in Count 4, and

-    As to all claims for injunctive relief.

The motions are denied with respect to:

-    Count 3 as to President Zaccari and the VSU defendants,

-    Count 4 as to President Zaccari and the VSU defendants,
     and

29

- Counts 5, 6, and 7.

The defendants' answers are due pursuant to Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure.

With regard to the plaintiff's motion for partial summary judgment [Doc. No. 27], the plaintiff failed to assert what claims he seeks justification for granting summary judgment. Moreover, a motion for summary judgment is premature given the fact that the parties have not yet conducted discovery. Therefore, the motion for partial summary judgment [Doc. No. 27] is DENIED.

SO ORDERED, this 19th day of November, 2008.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge