# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| THOMAS HAYDEN BARNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1-08-CV-077- CAP |
| | ) | |
| RONALD M. ZACCARI, | ) | |
| individually and in his official | ) | |
| capacity as President of Valdosta | ) | |
| State University; VALDOSTA | ) | |
| STATE UNIVERSITY; BOARD OF | ) | |
| REGENTS OF THE UNIVERSITY | ) | |
| SYSTEM OF GEORGIA; | ) | |
| LAVERNE GASKINS, individually | ) | |
| and in her capacity as in-house | ) | |
| counsel at Valdosta State University; | ) | |
| KURT KEPPLER, individually and | ) | |
| in his official capacity as | ) | |
| Vice President for Student Affairs | ) | |
| at Valdosta State University; | ) | |
| RUSS MAST, individually and in his | ) | |
| official capacity as Dean of Students | ) | |
| at Valdosta State University; | ) | |
| LEAH McMILLAN, individually and | ) | |
| in her official capacity as a counselor | ) | |
| at Valdosta State University; and | ) | |
| VICTOR MORGAN, individually | ) | |
| and in his official capacity as Director | ) | |
| of the Valdosta State University | ) | |
| Counseling Center, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT LAVERNE GASKINS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant Laverne Gaskins, individually and in her capacity as in-house counsel at Valdosta State University (hereinafter "Attorney Gaskins") and files this Memorandum of Law in support of her motion for summary judgment showing the Court the following:

<u>INTRODUCTION</u>

Plaintiff Barnes is a self-professed troubled individual and activist. Within six months of arriving at Valdosta State University ("VSU"), Plaintiff Barnes was "administratively withdrawn" by VSU president Zaccari. The decision to withdraw Plaintiff Barnes followed his campaign against proposed construction of parking garages on campus. At the height of his crusade, Plaintiff Barnes published on Facebook a photographic montage that included pictures of President Zaccari and references to a "memorial" for the VSU president. In proximity to this morbid reference was an article commenting on the Virginia Tech massacre that occurred the week prior to the Facebook posting and other references that might reasonably be believed to suggest violence.

Following the discovery of the Facebook page, and after obtaining information concerning Plaintiff Barnes' mental health issues, Defendant Zaccari expressed concerns about Plaintiff Barnes' conduct and he convened a meeting attended by the other named defendants. At that meeting, President Zaccari resolved to remove Barnes as a student from VSU based on his perception that

Barnes presented a clear and present danger on campus. Leading up to this decision Defendant Gaskins, VSU's general legal counsel, cautioned that Plaintiff Barnes' due process rights were implicated by the expulsion plan. However, Defendant Zaccari concluded that the risk of harm demanded immediate action, and he elected to immediately remove Barnes from VSU due to that perceived threat of harm. Barnes appealed the expulsion to the Board of Regents, the expulsion was rescinded, and this litigation ensued.[1]

## FACTS OF THE CASE

Defendant Laverne Gaskins is in-house counsel for Valdosta State University. Attorney Gaskins has been sued in the present action, along with other University staff and officials, for allegedly conspiring with and assisting Defendant President Zaccari in his action administratively withdrawing the Plaintiff from Valdosta State University.

The evidence in this case is undisputed that Attorney Gaskins had no knowledge of the Plaintiff, or any concerns about his activities, until she was approached by Defendant President Zaccari, who expressed his concern to her over a possible threat to himself he perceived from a Facebook posting by the Plaintiff

---

[1] This Court previously dismissed Plaintiff's claims against these Defendants in their official capacities. Thus, the only claims remaining are those against the Defendants individually.

which had been brought to the attention of President Zaccari. [Deposition of Laverne Gaskins, pp. 23, 24] Defendant President Zaccari first became aware of those Facebook contents on Friday, April 20, 2007, or Monday, April 23, 2007. [Ronald Zaccari Depo., p. 130] In general discussions following that initial notice of President Zaccari's concern with the Plaintiff, Defendant Gaskins advised President Zaccari that any contemplated withdrawal of the Plaintiff from Valdosta State University because of President Zaccari's concerns would require compliance with the constitutional guarantees afforded students, including due process requirements. [Gaskins Depo., p. 24] Attorney Gaskins also advised President Zaccari that any withdrawal of the Plaintiff could raise some constitutional challenge under the First Amendment if the Plaintiff were to contend that his withdrawal was an effort to stifle his freedom of expression. [Gaskins Depo., p. 28] She also advised President Zaccari that, to the extent the Plaintiff might allege some disability based upon his mental status, his withdrawal raised the potential of a claim under the Americans with Disabilities Act. [Gaskins Depo., pp. 28, 36] Attorney Gaskins advised President Zaccari of the policies and procedures which existed on campus regarding the suspension of students, and provided him with copies of those policies and procedures, specifically pointing out to him that each of those policies and procedures required that the student be afforded due process..

Attorney Gaskins attended a meeting with President Zaccari and other officers and staff members of Valdosta State University in late April of 2007, after her earlier general discussions with President Zaccari about his concerns regarding the Plaintiff, and the due process and equal protection considerations which would apply to any attempt to withdraw or suspend the Plaintiff. At that late April 2007 meeting, President Zaccari did not request any recommendations from anyone at the meeting about what action he should take with respect to the Plaintiff. [Gaskins Depo., p. 44] President Zaccari discussed his concerns about the Plaintiff, and Attorney Gaskins again reminded him that any suspension effort would require affording the Plaintiff the due process and equal protection rights required by the Valdosta State University Student Code of Conduct. [Gaskins Depo., p. 44] There was no deliberation at that meeting about whether the Plaintiff was, in fact, a threat. [Gaskins Depo., p. 47] President Zaccari never asked Attorney Gaskins whether she agreed that the Plaintiff presented some kind of danger. [Gaskins Depo., p. 48]

Around this same time, in late April of 2007, President Zaccari specifically directed Attorney Gaskins to ask Elizabeth Neely, counsel for the Board of Regents in Atlanta, the following question:

> Our appeal process provides that decisions of the judicial board may
> be appealed to the President.

In the event the President files a complaint against a student for a violation of the Student Code of Conduct and the student wishes to file an appeal, should the appeal go directly to your office (BOR) or should the President appoint a designee (i.e., Dr. Levy)?

[Gaskins Depo., Exh. 4]

Plaintiff's Complaint alleges that Gaskins e-mailed Attorney Neely for advice on "how a university president could file a complaint against a student for violation of the Student Code of Conduct …" Clearly, that allegation is without basis, as the e-mail, in fact, merely conveys a direct inquiry from President Zaccari about where a student's appeal would lie in the event the President files a complaint against a student. The Plaintiff, himself, admits that, despite what he alleged in his Complaint, the e-mail asks only about appeal rights and not the ability to file a complaint. [Depo. of Thomas Hayden Barnes, p. 215] The Plaintiff also admits he does not see anything in that e-mail which he contends is a violation of his rights. [Barnes Depo., pp. 215-216]

Attorney Gaskins forwarded the response of Attorney Neely to that inquiry to President Zaccari as soon as she received it. [Gaskins Depo., p. 21; Exh. 4] At that time, Attorney Gaskins advised President Zaccari that due process required that the University provide Plaintiff a hearing. [Depo. of Ronald Zaccari, p. 236]

Attorney Gaskins' next involvement of any kind with respect to the Plaintiff took place on May 1, 2007, when President Zaccari called her to his office and directed her to participate in a conference call between Dr. Zaccari and Attorney

Elizabeth Neely from the Board of Regents in Atlanta. During that conversation, Attorney Gaskins again advised Dr. Zaccari of the due process concerns, the First Amendment concerns, and the ADA concerns implicated in any decision to withdraw or suspend a student. [Gaskins Depo., pp. 58, 60] During that conversation, Attorney Neely acknowledged those concerns, but advised President Zaccari that the safety of the campus and himself was a primary concern. [Gaskins Depo., pp. 58, 61; Zaccari Depo., p. 240]

Gaskins attended one other meeting convened by Dr. Zaccari to discuss his concerns with the Plaintiff, which was also attended by various officers and staff of Valdosta State University, including the Defendants in this case. At that meeting, Dr. Zaccari advised the attendees of his decision to withdraw the Plaintiff from Valdosta State University. The other attendees at that meeting, including Defendant Gaskins, had no authority or discretion to withdraw or suspend the Plaintiff, and possessed no vote or veto with respect to Dr. Zaccari's intended disposition of the Plaintiff's case. [Gaskins Depo., p. 103] Attorney Gaskins again, at that May 3, 2007, meeting, advised President Zaccari that any attempt to expel, remove or withdraw the Plaintiff from Valdosta State University would require that his due process rights be respected. [Gaskins' Supplemental Response to Plaintiff's Interrogatory No. 3; Gaskins Depo., pp. 111-112]

Attorney Gaskins did not know what President Zaccari intended to do with respect to the Plaintiff until Dr. Zaccari made his decision. [Gaskins Depo., p. 113]

Attorney Gaskins never became involved in any attempt to determine whether the Plaintiff was a threat to the Valdosta State University campus, or to Dr. Zaccari, personally. Rather, her concern was to see that the Plaintiff's due process rights were respected, and her belief was that any threat which did exist would be confirmed or refuted at any due process hearing. [Gaskins Depo., pp. 130-131]

On May 4, 2007, President Zaccari advised Attorney Gaskins that he had made his decision to administratively withdraw the Plaintiff, and asked her to draft a proposed letter for his signature advising the Plaintiff of that withdrawal. President Zaccari told Attorney Gaskins what to include in the proposed withdrawal letter. Attorney Gaskins prepared the requested draft as instructed by President Zaccari, and included on the draft document a statement again setting out the requirements of due process implicated in any withdrawal, and providing copies of the Valdosta State University and Board of Regents policies dealing with the withdrawal issue. That inclusion was her one last attempt to emphasize her earlier and consistent advice that the student was entitled to due process. [Gaskins Depo., pp. 138, 139; Exh. 23]

At the meetings with President Zaccari attended by Defendant Gaskins, President Zaccari did not take a poll to determine what action the other participants thought was appropriate, and never asked for votes for a final recommendation on what action should be taken. [Gaskins Depo., pp. 181, 182] Gaskins' role in those meetings was to explain what procedures for withdrawal were authorized by the policies and regulations of Valdosta State University and the Board of Regents, and what due process rights were afforded by each such policy. Her advice was that any of the methods of withdrawal authorized by the policies and procedures would require that due process be provided.

The Plaintiff has no personal knowledge of what occurred at any meetings attended by Attorney Gaskins, or what action she took at any such meeting [Barnes Depo., pp. 216, 217] The Plaintiff's contention is that Attorney Gaskins, as attorney for Valdosta State University, should have advised President Zaccari of the legal implications of his actions, but the Plaintiff admits he doesn't know whether she actually did so or not. As shown herein, Defendant Gaskins *did* give such advice, which is exactly what the Plaintiff claims she *should* have done. [Barnes Depo., pp. 218, 219]

In summary, despite the allegations of the Plaintiff's Complaint, Defendant Gaskins did not participate in the decision to administratively withdraw the Plaintiff, other than to repeatedly and consistently offer her counsel that the

Plaintiff's due process rights must be respected in any withdrawal procedure. Attorney Gaskins had no authority to withdraw any student, and was never asked for her opinion or advice about whether the Plaintiff should be withdrawn or suspended. Her role in this entire case was limited to offering correct legal advice about the due process and equal protection concerns raised by any student withdrawal. The decision of whether to accept that advice or reject it was President Zaccari's, alone. [Zaccari Depo., pp. 226, 240] Consequently, Attorney Gaskins is entitled to judgment as a matter of law.

**ARGUMENT AND CITATION OF AUTHORITY**

**I.   SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Cornelius v. City of Andalusia*, 600 F.Supp.2d 1209, 1219 (M.D.Ala.,2009) *quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Johnson v. Board of Regents of University of Georgia,* 263 F.3d 1234, 1242 -1243 (C.A.11 (Ga.) 2001).

Accordingly, "the plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id., quoting Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986) (internal quotations and punctuation omitted). Once a party moving for summary judgment meets her initial burden of showing that there is no genuine issue of material fact, the burden then shifts to the nonmoving party to present specific facts demonstrating a genuine issue for trial. Importantly, "the nonmoving party may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Schultz v. Ashcroft*, 174 Fed. Appx. 534, 536, 2006 WL 869869, 1 (C.A.11 (Fla.) 2006).

In the case at bar, Plaintiff's case fails based on the absence of *any* evidence supporting his claims against Attorney Gaskins. As shown above, Attorney Gaskins had no role in the decision to withdraw Plaintiff from the University, and Plaintiff concedes the lack of evidence supporting this allegation. In addition, even if Plaintiff could prove that Attorney Gaskins' actions contributed to his removal from campus, it is clear that Attorney Gaskins is entitled to qualified immunity for the exercise of her discretionary duties as general counsel for the University. Therefore, Attorney Gaskins' motion for summary judgment must be granted.

II.    **THE RECORD IS DEVOID OF EVIDENCE THAT ANY ACT OR OMISSION OF ATTORNEY GASKINS' CAUSED PLAINTIFF'S WITHDRAWAL FROM THE UNIVERSITY.**

Plaintiff's Complaint alleges that Attorney Gaskins assisted President Zaccari in an effort to retaliate against Plaintiff for his exercise of free speech (Plaintiff's Complaint, ¶ 38, 46, 51, Count 3 and Count 4). However, the record lacks a shred of evidence that Attorney Gaskins participated in any retaliatory plan, and further lacks evidence that Attorney Gaskins was a decision maker in connection with the alleged deprivation of Plaintiff's due process rights. In fact, the record actually reveals that Attorney Gaskins strongly and repeatedly advised her supervisor that Plaintiff's due process rights must be respected in connection with any action taken.

**A. GASKINS DID NOT TAKE ANY RETALIATORY ACTION AGAINST PLAINTIFF OR DEPRIVE HIM OF ANY CONSTITUTIONAL DUE PROCESS.**

To sustain his retaliation and deprivation claims against Attorney Gaskins Plaintiff must point to evidence that Attorney Gaskins personally and specifically engaged in conduct that adversely affected his right to free speech and due process. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). In a § 1983 suit "each

Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)

The record reflects that Attorney Gaskins consistently advanced the need to respect Plaintiff's due process rights in connection with all proposed action contemplated by the University administration. As legal advisor to the University's chief administrator, Attorney Gaskins was charged with the responsibility of advising the administration on the legal implications of University action contemplated or taken against Plaintiff. In keeping with her role, she identified the key policies, procedures and regulations at issue; however, she did not have a vote or veto power over the ultimate decision.

Plaintiff also alleges that Attorney Gaskins assisted in formulating the means for Plaintiff's administrative withdrawal from school by seeking advice on "how a university president could file a complaint against a student." No such evidence exists before the Court. Instead, the record indicates that Gaskins, under direct orders from her superior, inquired of the Board of Regents' counsel where a student's appeal rights lie where a university president directly brings a student conduct charge. In forwarding on the response to her superior, Attorney Gaskins again pointed out that due process required the University to afford a hearing.

Attorney Gaskins played no part in the discussions over how to address the concerns President Zaccari voiced over Plaintiff. Rather, Attorney Gaskins'

involvement was limited to offering legal advice regarding the legal and/or constitutional requirements implicated by the proposed handling of Plaintiff Barnes. Attorney Gaskins had no role in the discussion regarding the validity of the concerns raised, she had no vote on the decision made in light of those concerns, and she had no veto power over that decision. Plaintiff contends that Attorney Gaskins should have counseled the University's decision-makers of the need to respect his constitutionally protected rights to free speech and due process.[2] The evidence before the Court reveals that Attorney Gaskins did exactly as Plaintiff requires, but that her advice was rejected.

---

[2] In cases involving adverse employment action, the focus in determining individual liability is to determine which of the defendants was the decisionmaker with respect to the adverse employment actions at issue. "The 'decisionmaker' inquiry addresses who has the power to make official decisions and, thus, be held individually liable." *Tatroe v. Cobb County, Georgia* 2006 WL 559437, 10 (N.D. Ga.,2006), *citing Quinn v. Monroe County,* 330 F.3d 1320, 1326 (11th Cir.2003) In the case at bar, it is clear that Attorney Gaskins lacked decision making authority over the handling of Plaintiff's administrative withdrawal. Her role was strictly advisory, and her advice, under the circumstances, was expressly rejected by the decision-maker.

The evidence is uncontradicted: at all relevant times Attorney Gaskins repeatedly and consistently counseled President Zaccari that Plaintiff's First Amendment rights were implicated and that due process must be afforded prior to acting in response to the threat perceived from his allegedly protected speech. President Zaccari's decision to proceed with administrative withdrawal despite that advice is not an action attributable to his subordinate, and accordingly, there is no genuine issue of material fact of any causal connection between the legal advice given by Attorney Gaskins and any adverse effect on Plaintiff's speech or deprivation of due process. Accordingly, Attorney Gaskins is entitled to judgment as a matter of law on all claims against her for individual liability.

## B. ATTORNEY GASKINS DID NOT PARTICIPATE IN ANY CONSPIRACY TO EXPEL PLAINTFF

Plaintiff's complaint alleges that Attorney Gaskins conspired with President Zaccari to retaliate against him for his speech activities and to deprive him of his due process rights. *See* Complaint, generally at Counts 3 and 4. Plaintiff cites two instances supporting his conspiracy theory against Attorney Gaskins: an email exchange with the Board of Regents counsel and attendance at the May 3, 2007, meeting at which President Zaccari resolved to effect the Plaintiff's administrative withdrawal from the University. However, as shown above, Plaintiff's claims lack basis in fact, and his conspiracy claim therefore fails.

An essential element of a civil conspiracy claim is the existence of an underlying constitutional violation. As shown in Section A, above, the record lacks any evidence of a constitution violation committed by Attorney Gaskins, and she is entitled to summary judgment on this basis. However, Plaintiff's conspiracy claims also fail based on the absence of evidence that Attorney Gaskins reached an understanding with President Zaccari to violate Plaintiff's rights.

It is true that conspiring to violate another person's constitutional rights violates 42 U.S.C. § 1983. *Dennis v. Sparks,* 449 U.S. 24, 27 101 S.Ct. 183, 186 (1980). However, a prima facie case of § 1983 conspiracy requires "a plaintiff [to] show, among other things, that the defendants reached an understanding to violate his rights." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 -1284 (11th Cir. 2002) *quoting Strength v. Hubert* ,854 F.2d 421, 425 (11th Cir. 1996) (internal punctuation omitted). "The plaintiff does not have to produce a "smoking gun" to establish the "understanding" or "willful participation" required to show a conspiracy, but must show some evidence of agreement between the defendants. *Id. citing Bendiburg v. Dempsey,* 909 F.2d 463, 469 (11th Cir.1990) *Bailey v. Bd. of County Comm'rs of Alachua County,* 956 F.2d 1112, 1122 (11th Cir.1992) For a conspiracy claim to survive summary judgment "[a] mere 'scintilla' of evidence ... will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id. quoting Walker v. Darby,* 911 F.2d 1573, 1577 (11th

Cir.1990). *See also, Schultz v. Ashcroft*, 174 Fed.Appx. 534, 539, 2006 WL 869869, 5 (11th Cir. 2006).

Here, Plaintiff presented *no* evidence of an agreement between the Attorney Gaskins and any other individual defendant. On the contrary, the record shows that Attorney Gaskins steadfastly disagreed with the action proposed and ultimately taken against Plaintiff based on her conclusion that Plaintiff's First Amendment and due process rights were implicated. Accordingly, Plaintiff's conspiracy claims against Attorney Gaskins fail to survive summary judgment.

## II.     PLAINTIFF FAILED TO SATISFY HIS BURDEN OF DEMON-STRATING THAT GASKINS IS NOT ENTITLED TO QUALIFIED IMMUNITY.

A state employee sued in her individual capacity under § 1983 may obtain summary judgment on the basis of qualified immunity. *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1263 (11th Cir.2004); *Thomas v. Roberts*, 261 F.3d. 1160, 1170 (11th Cir. 2001). Qualified immunity is an important doctrine serving at least three important societal aims: protecting the public from unwarranted timidity by public officials; attracting talented candidates to public service by reducing the threat of damages suits; and reducing the chance that lawsuits will distract the official from the performance of her duties. *Richardson v. McKnight,* 521 U.S. 399, 408 (1997).

To be eligible for qualified immunity, Attorney Gaskins must first establish that she was performing a "discretionary function" at the time the alleged violation of federal law occurred. *Holloman,* 370 F.3d at 1263-64. Thereafter, the *plaintiff* bears the burden of demonstrating that the official is *not* entitled to qualified immunity. *Id.* at 1264. To satisfy this burden, a plaintiff must show two things: (1) that the defendant committed a constitutional violation and (2) that the constitutional right violated by the defendant was "clearly established" at the time she did it. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Holloman,* 370 F.3d at 1264. This two-step test protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271(1986). There is no dispute tha Attorney Gaskins acted within her discretionary authority in connection with Plaintiff's claims[3]. Therefore, Plaintiff bears the burden of satisfying the two-part *Saucier* test.

---

[3] This Court previously acknowledged that no dispute existed over whether Attorney Gaskins was acting within the course and scope of her discretionary authority in dealing with Plaintiff. See Doc. 37 (Order on Defendants' Motion to Dismiss at p. 13).

## A.    PLAINTIFF FAILED TO PROVE ANY CONSTITUTIONAL VIOLATION COMMITTED BY ATTORNEY GASKINS

Plaintiff contends that Attorney Gaskins took action against him based on his expression of opposition to the University's construction activities, and further that she conspired to deprive him of his due process rights at the campus level. As an initial matter, Plaintiff concedes that he lacks knowledge of any action taken by Attorney Gaskins to suppress his right of expression. Further, Plaintiff concedes that he lacks evidence that Attorney Gaskins failed to advise her superior, and the decision maker at the University, of the legal implications of retaliating against Barnes and refusing to respect his due process rights. In fact, the record affirmatively shows that Attorney Gaskins did exactly as Plaintiff insists she should have done: advise President Zaccari on the legal implications of his proposed actions. [Barnes Depo., pp. 218, 219] Absent evidence of a causal connection between Attorney Gaskins' actions and the alleged retaliation against Plaintiff for exercising his free speech rights under the First Amendment, Attorney Gaskins is entitled to judgment as a matter of law.

Further, and as noted above, a government official is only liable for her own misconduct in determining whether there is a violation of clearly established right to overcome qualified immunity. An express or actual "purpose rather than

knowledge is required to impose [§1983] liability on the subordinate for unconstitutional discrimination. *Ashcroft v. Iqbal*, 129 S.Ct. at 1949.

The evidence before the Court fails to demonstrate that Attorney Gaskins violated any clearly established constitutional right belonging to the Plaintiff and as a result she is is entitled to qualified immunity. *Pearson v. Callahan,* --- U.S. ---, 129 S.Ct. 808 (2009). It is clear that Attorney Gaskins acted reasonably in fulfilling her duty to advise the University president of the legal implications of actions contemplated and ultimately taken against Plaintiff; therefore, Attorney Gaskins retains qualified immunity in the instant suit and she is entitled to summary judgment.

## B.    ATTORNEY GASKINS' CONDUCT WAS REASONABLE AND DID NOT VIOLATE ANY CLEARLY ESTABLISHED RIGHTS OF PLAINTIFF.

The second prong of the *Saucier* test requires Plaintiff to prove that Attorney Gaskins' conduct related to his administrative withdrawal violated his clearly established Constitutional rights. As shown above, Attorney Gaskins' "conduct" relevant to this matter was limited to providing legal advice to President Zaccari on the legal implications of the actions contemplated and

ultimately taken.[4] She correctly counseled President Zaccari on the First Amendment and due process considerations. Plaintiff was administratively withdrawn in spite of Attorney Gaskins' accurate legal analysis.

It is well-settled that government attorneys advising officials on application of the law are entitled to, at a minimum, qualified immunity. *See e.g, Buckley v. Fitzsimmons*, 509 U.S. 259, 268, 113 S.Ct. 2606, 2613 (1993). Thus, government attorneys are "not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id., quoting Harlow v. Fitzgerald,* 457 U.S., at 818, 102 S.Ct., at 2738:

> Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not

---

[4] It is also undisputed that the precise situation, where it was the University President asserting a complaint and seeking a student's removal, was not one Attorney Gaskins encountered before. Consequently, the applicable policies and the Board of Regents' instructions on handling the matter were unclear. [Gaskins Depo., pp. 16-17, 19-20]

> reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to know that the law forbade conduct not previously identified as unlawful.

*Harlow v. Fitzgerald*, 457 U.S. at 818-819 (internal citations, quotations and punctuation omitted).

Applying the objective reasonableness standard to the instant issue, it cannot be said that "it would be clear to a reasonable [attorney] that [her] conduct was unlawful in the situation [she] confronted." *Saucier*, 533 U.S. at 202. There does not appear to be, nor would one expect to find, any legal authority for subjecting a university or other government attorney to liability for correctly counseling a governmental entity on the legal implications of contemplated disciplinary action. Accordingly, Attorney Gaskins retains her qualified immunity because there is no known precedent for imposing personal liability against an attorney for action taken against her sound advice. *See Pearson v. Callahan*, 129 S.Ct. 808, 823 (2009). In other words, Attorney Gaskins did not violate any clearly established law by counseling the University president on the due process rights owed to Plaintiff, and she is entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant Laverne Gaskins respectfully requests that the Court enter judgment in her favor based on the absence of genuine issues of material fact establishing any individual damages liability to Plaintiff.

Pursuant to Local Rule 7.1(D), the undersigned counsel for Defendant Gaskins hereby certifies that the foregoing brief has been prepared using Times New Roman font (14 point), which is one of the font and point selections approved for use by the Court in Local Rule 5.1(C).

This 23rd day of December, 2009.

|  | **BRANNEN, SEARCY & SMITH, LLP** |
|---|---|
|  | By:    /s/ David R. Smith |
| Post Office Box 8002 | **DAVID R. SMITH** |
| Savannah, GA 31412 | Georgia State Bar No. 655587 |
| (912) 234-8875 | **BEVERLY G. O'HEARN** |
|  | Georgia State Bar No. 287650 |
|  | *Attorneys for Defendant* |
|  | *Laverne Gaskins* |