IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THOMAS HAYDEN BARNES,  *
          *
Plaintiff,       *
          *
-vs-         *
          *  Case No. 1:08-cv-00077-CAP
RONALD M. ZACCARI, *et al.*,  *
          *
Defendants.     *
          *

**PLAINTIFF'S OPPOSITION TO DEFENDANT LAVERNE GASKINS'
MOTION FOR SUMMARY JUDGMENT**

Robert Corn-Revere
Chris A. Fedeli
Lisa B. Zycherman
Erin N. Reid
Admitted *Pro Hac Vice*
Davis Wright Tremaine LLP, Suite 200
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
202-973-4200
Email: bobcornrevere@dwt.com

Cary Stephen Wiggins
Georgia Bar No. 757657
Irma Espino
Georgia Bar No. 558220
The Wiggins Law Group
260 Peachtree Street, NW, Suite 401
Atlanta, GA 30303
404-659-2880
Email: cary@cywlaw.com

January 19, 2010

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................. 1

ARGUMENT ....................................................................................... 2

I. STANDARD OF REVIEW ........................................................... 2

II. DEFENDANT GASKINS ADMITS THAT SHE ASSISTED
PRESIDENT ZACCARI IN AN EFFORT TO RETALIATE AGAINST
PLAINTIFF FOR HIS EXERCISE OF FREE SPEECH ............................... 3

III. DEFENDANT GASKINS IN NOT ENTITLED TO QUALIFIED
IMMUNITY ................................................................................. 6

A. Standard of Review ............................................................ 6

B. Notwithstanding Her Awareness of Barnes' Legal Rights and Her
Duty Not to Infringe Them, Defendant Gaskins Actively Assisted
With the Withdrawal and With its Defense ............................... 8

1. Defendant Was Well Aware of Her Legal Duty ..................... 9

2. Defendant Gaskins Is Not Entitled To Qualified Immunity Merely
Because She Did Not Have "Veto" Authority Over Zaccari .............. 12

C. Defendant Gaskins Cannot Claim Qualified Immunity Based on the
Notion that Barnes' Rights Were Somehow Unclear .............................. 14

CONCLUSION .................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*American Bankers Ins. Group v. United States,*
    408 F.3d 1328 (11th Cir. 2005) ...........................................................................2

*Anderson v. Creighton,*
    483 U.S. 635 (1987) ...........................................................................................15

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) .......................................................................................13

*Chesser v. Sparks,*
    248 F.3d 1117 (11th Cir. 2001) ...........................................................................6

*Doe v. Rains County Indep. Sch. Dist.,*
    66 F.3d 1402 (5th Cir. 1995) .........................................................................9, 12

*Doe v. Taylor Indep. Sch. Dist.,*
    15 F.3d 443 (5th Cir. 1994) (*en banc*) ...............................................................12

*Eberhardt v. Waters,*
    901 F.2d 1578 (11th Cir. 1990) ...........................................................................2

*Goebert v. Lee County,*
    510 F.3d 1312 (2007) .........................................................................................14

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ...........................................................................6, 7, 14, 15

*Holmes v. Kucynda,*
    321 F.3d 1069 (11th Cir. 2003) .....................................................................7, 15

*Hope v. Pelzer,*
    536 U.S. 730 (2002) .......................................................................................7, 15

*Saucier v. Katz,*
    533 U.S. 194 (2001) .............................................................................................7

*Sims v. Adams,*
    537 F.2d 829 (5th Cir. 1976) ............................................................... 9

*United States v. Oakley,*
    744 F.2d 1553 (11th Cir. 1984) ......................................................... 2

*Williams v. Bennett,*
    689 F.2d 1370 (11th Cir. 1982) ......................................................... 9

*Wood v. Strickland,*
    420 U.S. 308 (1975) .............................................................. 7, 14, 16

*Zatler v. Wainwright,*
    802 F.2d 397 (11th Cir. 1986) ......................................................... 8

## RULES

Fed. R. Civ. P. 56(c) ........................................................................... 2

Ga. Rules of Prof. Conduct § 1.13(b) ........................................... 10

Ga. Rules of Prof. Conduct § 1.13(c) ....................................... 8, 10

Ga. Rules of Prof. Conduct § 1.13, cmt. 7 ............................. 10, 11

Local Rule 56.1(B)(2)(a) .................................................................. 3

## INTRODUCTION

The motion for summary judgment filed by Defendant Laverne Gaskins confirms her complicity in an action against Plaintiff Hayden Barnes that she knew was wrong. Through her acts and omissions, Gaskins shares responsibility for the deprivation of Mr. Barnes' federal rights. Although Gaskins warned that Defendant Ronald Zaccari's proposed course of conduct would violate Barnes' rights under the First and Fourteenth Amendments as well as the Americans With Disabilities Act ("ADA"), she nevertheless assisted in implementing the withdrawal decision.

Gaskins cannot now hide behind her *post-hoc* claims that she was merely following orders and doing the bidding of Zaccari when she knew that assisting him in implementing his plan necessarily meant violating Barnes' rights under federal law. Government actors, such as Gaskins, are explicitly precluded from obtaining qualified immunity where, as here, they knowingly participate in a course of action that violates an individual's constitutional and federal rights. Additionally, Gaskins failed to adhere to her legal obligation to bring the matter to the attention of higher authority. Accordingly, this Court should deny Defendant Gaskins' motion for summary judgment and instead grant Plaintiff's cross-motion for summary judgment.

## ARGUMENT

### I.    STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990). The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *American Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555-56.

## II.    DEFENDANT GASKINS ADMITS THAT SHE ASSISTED PRESIDENT ZACCARI IN AN EFFORT TO RETALIATE AGAINST PLAINTIFF FOR HIS EXERCISE OF FREE SPEECH

Plaintiff and Defendant Gaskins agree on the following sequence of events.[1]

Gaskins, in-house counsel for VSU (Statement of Undisputed Material Facts ¶ 1

(Dkt. # 174) (hereinafter "Gaskins' Statement of Facts"); Rule 56 Statement of

Undisputed Facts Supporting Plaintiff Thomas Hayden Barnes' Motion for

Summary Judgment ¶ 5 (Dkt. # 179) ("hereinafter Barnes' Statement of Facts")[2]),

was approached by President Zaccari, who asserted that Barnes' Facebook.com

collage was a threat. (Gaskins' Statement of Facts ¶ 3; Barnes' Statement of Facts

¶¶ 59-60). On April 26, 2007, Zaccari directed Gaskins to contact Elizabeth Neely,

the Board's Vice Chancellor for Legal Affairs, to determine how a university

---

[1] Pursuant to Local Rule 56.1(B)(2)(a), Plaintiff attaches a Statement of Disputed Material Facts to this opposition.

[2] Plaintiff's Motion for Summary Judgment, Memorandum of Law in support, and Statement of Facts were filed, along with a motion to file the documents under seal, on December 23, 2009. (Dkt. # 179). Gaskins' Motion for Summary Judgment and related Statement of Facts and exhibits were not filed under seal. (Dkt. # 174). Pursuant to this Court's January 7 and January 14, 2010 Orders pertaining to pending motions to file documents under seal, Plaintiff's Statement of Facts and exhibits to his motion for summary judgment are not presently available on the Court's ECF system. (Dkt. # 196, 201). Accordingly, any references herein to Plaintiff's Statement of Facts refer to the document currently under seal. Plaintiff attaches as exhibits to this opposition any documents referenced herein that do not contain confidential information for the convenience of the Court.

president could file a complaint against a student "for violation of the Student Code of Conduct" and what processes would apply to such a situation. (Apr. 26, 2007 E-mail from Gaskins to Neely (attached hereto as Ex. A); *see also* Gaskins' Statement of Facts ¶ 13). Neely responded by cautioning Gaskins that "[i]t is not good practice for the President to be bringing a complaint against any student," as student-conduct issues "should be handled by staff in Student Affairs. Once the President has made a decision in a matter, there is no due process at the campus level." (*Id.*; *see also* Deposition of Elizabeth Evans Neely ("Neely Dep.") 14:5-16 (attached hereto as Ex. B)).

On May 1, 2007, Zaccari met with Defendant Gaskins in his office for a conference call with Neely. (*See* Gaskins' Statement of Facts ¶ 18; Barnes' Statement of Facts ¶ 102). Neely discussed various ways Barnes could be administratively withdrawn from the university. (Deposition of Laverne Gaskins ("Gaskins Dep.") 61:19-21 (attached hereto as Ex. C)). Neely said that, as President of VSU, Zaccari had the authority to withdraw Barnes. (*Id.* at 53:22-24). Gaskins raised "due process concerns [and] ADA concerns" about the process with Neely and Zaccari. (*Id.* at 58:9-61:1; *see* Gaskins' Statement of Facts ¶ 19). She also expressed concerns about violating Barnes' First Amendment rights. *Id.* at 60:16-18; Gaskins' Statement of Facts ¶ 19. But Neely dismissed Gaskins' words

4

of caution, saying, "[w]e'll worry about the lawsuit later." Gaskins never agreed with Zaccari that Barnes represented any kind of threat to campus security. (Ex. C, Gaskins Dep. 135:25-136:4)).

On May 3, 2007, Zaccari convened a meeting with Defendant Gaskins and other members of the VSU administration. (*See* Gaskins' Statement of Facts ¶¶ 21-24). Zaccari informed the group that he planned to administratively withdraw Barnes. (*Id.*) Defendant Gaskins again raised due process concerns. (*Id.* ¶ 24).

Thereafter, notwithstanding her professed knowledge that Zaccari's proposed course of conduct would violate Barnes' federal rights, on May 4, 2007, Defendant Gaskins prepared a memorandum for Zaccari providing a draft of a proposed withdrawal letter. (Draft Withdrawal Notice and Gaskins Memorandum (attached hereto as Ex. D); *see* Gaskins' Statement of Facts ¶ 28). The memorandum identified policies that "appear to be implicated" and again noted "due process dictates that the student be apprised of what particular policy has been violated, an opportunity to be heard and also be informed of the appeal process." (*Id.*) The Administrative Withdrawal notice was delivered to Barnes on May 7. (Barnes' Statement of Facts ¶ 113).

On May 21, 2007, Barnes appealed his administrative withdrawal to the Board. (May 21, 2007 Letter from Barnes to Board of Regents (attached hereto as

Ex. E)).  Under the process, letters were to be sent to Neely, the same Board counsel who had told Zaccari he had unilateral authority to withdraw Barnes.  (May 29, 2007 Letter from Neely to Barnes (attached hereto as Ex. F)).  On June 21, 2007, Zaccari sent his defense of the Administrative Withdrawal to Neely.  (June 21, 2007 Letter from Zaccari to Neely (attached hereto as Ex. G)).  Zaccari's defense was prepared with Gaskins' assistance.  (Ex. C, Gaskins Dep. 138:4-139:19).

## III.  DEFENDANT GASKINS IN NOT ENTITLED TO QUALIFIED IMMUNITY

### A.    Standard of Review

Defendant Gaskins asserts that she should be entitled to qualified immunity protection.  The doctrine shields government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity analysis proceeds in two steps.  *See Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001).  First, the court addresses the "threshold question" of whether the facts as alleged, viewed in the light most favorable to Defendant Gaskins, establish a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Next, the court determines whether that right was clearly established. *Id.* Qualified immunity does not offer protection "if an official 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff].'" *Harlow*, 457 U.S. at 815 (*quoting Wood v. Strickland*, 420 U.S. 308, 322 (1975)) (emphasis omitted). Thus, "[t]he essence of qualified immunity is notice." *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003) (*citing Hope v. Pelzer*, 536 U.S. 730 (2002)).

As Gaskins emphasizes in her brief and in her statement of undisputed facts, she was highly-informed and thus unquestionably on notice that the decision to administratively withdraw Barnes for his speech activities was unconstitutional. As Gaskins put it, "The evidence is uncontradicted: at all relevant times Attorney Gaskins repeatedly and consistently counseled President Zaccari that Plaintiff's First Amendment rights were implicated and that due process must be afforded *prior to acting* in response to the threat perceived from his allegedly protected speech." (Defendant Laverne Gaskins' Motion for Summary Judgment (Dkt. # 174) ("Gaskins' Mot.") 15 (emphasis added); *see id.* at 4, 5, 6, 7, 8, 9, 14, 17; *see also* Gaskins' Statement of Facts ¶¶ 5, 6, 7, 8, 10, 17, 19, 24, 27, 30, 31, 33, 34, 37, 41). Nevertheless, despite Gaskins' professional obligations as a member of the

Georgia Bar, and her obligations as "legal advisor to the University's chief administrator," (Gaskins' Mot. 13), she did nothing to refer the matter to a higher authority in the organization. *See* Ga. Rules of Prof. Conduct § 1.13(c).

**B.    Notwithstanding Her Awareness of Barnes' Legal Rights and Her Duty Not to Infringe Them, Defendant Gaskins Actively Assisted With the Withdrawal and With its Defense**

In her motion, Defendant Gaskins attempts to distance herself from the decision to withdraw Plaintiff, asserting that she "had no role" in the final decision to expel Barnes and "had no veto power over that decision." (Gaskins' Mot. 14). However, Gaskins' claim that she had "no role" in the administrative withdrawal is not accurate, and her statement that she had no "veto power" is not legally significant. Gaskins, as the other defendants, participated in, and contributed to, the series of events that led to Mr. Barnes' expulsion from VSU. *See, e.g., Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) ("A causal connection may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation."). Defendant Gaskins' acknowledged involvement in preparing Barnes' withdrawal notice, assisting Zaccari in presenting his case for the appeal process, and her failure to fulfill her professional obligation to report the constitutional violations to higher authorities confirm Gaskins' culpability. (*See, e.g.,* Gaskins' Statement of Facts ¶ 30).

For purposes of Section 1983 analysis, it does not matter whether Gaskins had a "vote" in the final decision. The inquiry into causation must focus on "the duties and responsibilities of each of the individual defendants whose acts or omissions are alleged to have resulted in a constitutional deprivation." *Williams v. Bennett*, 689 F.2d 1370, 1381 (11th Cir. 1982). A state official "is subject to Section 1983 liability when he breaches a duty imposed by state or local law, and this breach causes plaintiff's constitutional injury." *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976). In this regard, a finding of liability "does not specifically require 'personal participation'" in the constitutional violation. *Id.* Section 1983 liability attaches where an act or omission under color of state law breaches a legal duty and deprives a person of a federally secured right or interest. *Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1411-12 (5th Cir. 1995).

In this case, Gaskins has no legitimate argument that she was unaware that the course of conduct in which she assisted would violate the Constitution, or that she did not understand her duties as a member of the Georgia Bar.

## 1.    Defendant Was Well Aware of Her Legal Duty

The Georgia Bar Rules of Professional Conduct confirm the qualified immunity analysis. Georgia Bar rules require that when an attorney for an organization is aware that a proposed action will lead to a violation of law "which

reasonably might be imputed to the organization," the lawyer is ethically bound to ask for reconsideration, to seek a second opinion for presentation to higher authorities, or to refer the matter to a higher authority in the organization, "including the highest authority that can act" on the organization's behalf. Ga. Rules of Prof. Conduct § 1.13(b). If the organization persists in a course of conduct that clearly is contrary to law and the organization's legitimate interests, Bar rules permit the attorney to resign from the matter. *Id.* at § 1.13(c). However, Defendant Gaskins did none of these things, and continued to help defend actions that she knew to be illegal.

Comment 7 to Ga. Rules of Prof. Conduct § 1.13 is also apt. It clarifies the lawyer's role when an organization's interests conflict with the interests of an organization's constituent, explaining:

> [7] There are times when the organization's interest may be or become adverse to those of one or more of its constituents. In such circumstances the lawyer should advise any constituent, whose interest the lawyer finds adverse to that of the organization (1) of the conflict or potential conflict of interest, (2) that the lawyer cannot represent such constituent, and (3) that such person may wish to obtain independent representation. Care must be taken to assure that the individual understands that, when there is such adversity of interest, the lawyer for the organization cannot provide legal representation for that constituent individual, and that discussions between the lawyer for the organization and the individual may not be privileged.

*Id.* at § 1.13, cmt. 7.    Gaskins should have complied with her professional obligation to inform Zaccari that his desire to withdraw Barnes in violation of Plaintiff's federal rights was adverse to the interests of the Board of Regents and VSU, that Gaskins could not help him in this action, and that he may wish to obtain independent representation.    Gaskins failed to take any of these actions.

Gaskins highlights her failure to abide by Bar rules in her motion for summary judgment.    She acknowledges her role as "legal advisor to the University's chief administrator," (Gaskins' Mot. 13), and confirms that her duty "was to explain what procedures for withdrawal were authorized by the policies and regulations of Valdosta State University and the Board of Regents, and what due process rights were afforded by each such policy." (Gaskins' Mot. 9). However, once it became clear that Zaccari and the other VSU defendants were not going to follow her advice, she warned them that "it is not if, but when [Barnes] will . . . sue" over the constitutional and statutory violations.    (Major Anne Farmer's Contemporaneous Notes of May 3, 2007 Meeting at 16 (attached hereto as Ex. H)).    Nevertheless, Gaskins did not seek reconsideration or report the matter to "the highest authority that can act" as required by Georgia Bar rules.    Instead, she assisted Zaccari in drafting a withdrawal notice she knew to be constitutionally defective, and she helped Zaccari defend the action to the Board.

2.    **Defendant Gaskins Is Not Entitled To Qualified Immunity
Merely Because She Did Not Have "Veto" Authority Over
Zaccari**

Defendant cannot deny her involvement in infringing Barnes' constitutional

rights by asserting that she was not the final word in the withdrawal decision.

While the breach of legal duty analysis is often associated with defendants in

supervisory positions, such is not always the case. *See Doe v. Rains County*, 66

F.3d at 1413 ("We have never suggested ... that only supervisors can be held liable

for a failure to act that results in a constitutional injury."). Courts have found that

"control can exist in other ways." *Id.* "[I]f a 'real nexus' exists between the

activity out of which the violation occurs and the teacher's duties and obligations

as a teacher, then the teacher's conduct is taken under color of state law." *Doe v.

Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994) (*en banc*).

In her motion, Gaskins repeatedly emphasizes that despite her involvement

in several meetings regarding Zaccari's plan to expel Barnes she somehow lacks

responsibility for Barnes' ultimate expulsions because she was not the ultimate

decisionmaker. For example, Gaskins notes that Zaccari "did not request any

recommendations from anyone" at a late April 2007 meeting to discuss Barnes.

(Gaskins' Mot. 5). Gaskins further notes that she attended a meeting with Zaccari

and others on May 3, 2007, where she "had no authority or discretion to withdraw

or suspend the Plaintiff, and possessed no vote or veto with respect to Dr. Zaccari's intended disposition of the Plaintiff's case." (Gaskins' Mot. 7 (*citing* Gaskins Dep. at 103)).

Although Gaskins warned that Zaccari's proposed course of conduct implicated Barnes' rights under the First Amendment, Due Process Clause, and the ADA (Ex. C, Gaskins Dep. 27:22-32:22), she nevertheless assisted in implementing the withdrawal decision.    Gaskins knew that VSU and the Board planned to withdraw Barnes with full knowledge that doing so would violate his rights. (*See, e.g., id.* 28:9-13, 68:9-17 ("we will worry about the lawsuit later")).    Yet, she actively assisted Zaccari in drafting the Withdrawal Notice, and assisted him afterward in defending his decision to the Board. *Id.* 171:14-179:9.

However, as Gaskins acknowledges in her motion, an individual's title has no bearing on Section 1983 liability.  In a Section 1983 suit, "each Government official, ***his or her title notwithstanding***, is only liable for his or her own misconduct." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (emphasis added); *see* Gaskins' Mot. 12-13 (*quoting* same).  In this case, Gaskins alone made the decision regarding whether or not to fulfill her professional obligation.  That lapse had a clear nexus to the ultimate decision regarding Barnes.

### C.    Defendant Gaskins Cannot Claim Qualified Immunity Based on the Notion that Barnes' Rights Were Somehow Unclear

The second step in the qualified immunity analysis is also met because Defendant Gaskins "'knew or reasonably should have known that the action [she] took within [her] sphere of official responsibility would violate the constitutional rights of the [plaintiff].'" *Harlow*, 457 U.S. at 815 (*quoting Wood v. Strickland*, 420 U.S. at 322) (emphasis omitted).   Liability attaches equally to both acts of a defendant, and to omissions, where that person has a duty to take action, as Gaskins did here. *See Goebert v. Lee County*, 510 F.3d 1312, 1329 (2007) ("Once a constitutional violation is found ... and the discretionary action element is established, the question is whether the official's alleged ***acts or omissions*** 'violate clearly established statutory or constitutional rights.'") (*quoting Harlow*, 457 U.S. at 818) (emphasis added).

Gaskins attempts to persuade this Court to grant her qualified immunity because "the precise situation" was "not one that Attorney Gaskins encountered before" and "[t]here does not appear to be, nor would one expect to find, any legal authority for subjecting a university or other government attorney to liability for correctly counseling a governmental entity on the legal implications of contemplated disciplinary action." (Gaskins Mot. 21, 22).  However, officials are denied qualified immunity, even when there is not a case directly on point, if it

14

should have been apparent to a reasonable person in the official's position that the challenged action was unlawful. *Hope v. Pelzer*, 536 U.S. at 739, 744-45; *Harlow*, 457 U.S. at 818.

For a constitutional right to be clearly established, it is not necessary that "the very action in question has previously been held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citation omitted). As such, "the fact pattern of prior cases used to show that a right is clearly established need not be 'fundamentally similar' or even 'materially similar' to the facts alleged." *Holmes v. Kucynda*, 321 F.3d at 1077 (*quoting Hope*, 536 U.S. at 741). Rather, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* "Thus, the nub of the inquiry is whether 'the state of the law [at the time of the alleged violation]' gave the officials 'fair warning that their [acts were] unconstitutional.'" *Id.*

It is absurd for Gaskins to assert that she lacked "fair warning" that the administrative withdrawal of Hayden Barnes was unconstitutional where the bulk of her defense consists of her repeated statements that VSU was disregarding Barnes' rights under the First and Fourteenth Amendments, as well as under the ADA. (Gaskins' Mot. 4, 5, 6, 7, 8, 9, 14, 15, 17; *see also* Gaskins' Statement of Facts ¶¶ 5, 6, 7, 8, 10, 17, 19, 24, 27, 30, 31, 33, 34, 37, 41). It may well be that

Gaskins had the best of intentions, but the Supreme Court has made clear that a school administrator "must be held to a standard of conduct based not only on permissible intentions, but also on knowledge of the basic, unquestioned constitutional rights" of students. *Wood v. Strickland*, 420 U.S. at 322. Nor can Gaskins claim that the Georgia Bar rules were in any way ambiguous or that she lacked "fair warning" of her professional obligations. She was fully aware that VSU was preparing to embark on an unconstitutional action and that it likely would result in legal liability for the institution. Nevertheless, rather than seeking reconsideration of the action from higher authority, she chose to participate in the administrative withdrawal and its defense. There is no basis for Gaskins' assertion of qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendant Laverne Gaskins' Motion for Summary Judgment should be denied, and Plaintiff's cross-motion for summary judgment should be granted in its entirety.

Respectfully submitted this 19th day of January, 2010.


By:   /s/ *Robert Corn-Revere*
Robert Corn-Revere
Christopher A. Fedeli
Lisa B. Zycherman
Erin N. Reid
Admitted *Pro Hac Vice*
Attorneys for Plaintiff
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
Email: bobcornrevere@dwt.com


By:   /s/ *Irma Espino*
Irma Espino
Georgia Bar No. 558220
Attorneys for Plaintiff
Wiggins Law Group
Suite 401
260 Peachtree Street, NW
Atlanta, GA 30303
404-659-2880
Email: irma@wigginslawgroup.com

## CERTIFICATE OF SERVICE AND COMPLIANCE

I hereby certify that on January 19, 2010, I filed the foregoing with the Clerk

of the Court and sent a copy of the foregoing Plaintiff's Opposition to Defendant

Laverne Gaskins' Motion for Summary Judgment, Statement of Disputed Issues of

Material Fact, and related exhibits by electronic mail to all counsel of record. I

also certify, pursuant to LR 7.1(D), that this memorandum has been prepared in

Times New Roman 14-point font.

By: _/s/ Robert Corn-Revere_
Robert Corn-Revere
Christopher A. Fedeli
Lisa B. Zycherman
Erin N. Reid
Admitted _Pro Hac Vice_
Attorneys for Plaintiff
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
Email: bobcornrevere@dwt.com


By: _/s/ Irma Espino_
Irma Espino
Georgia Bar No. 558220
Attorneys for Plaintiff
Wiggins Law Group
Suite 401
260 Peachtree Street, NW
Atlanta, GA 30303
404-659-2880
Email: irma@wigginslawgroup.com