IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THOMAS HAYDEN BARNES,  *
           *
Plaintiff,       *
           *
-vs-         *
           *  Case No. 1:08-cv-00077-CAP
RONALD M. ZACCARI, *et al.*,  *
           *
Defendants.     *
           *

**PLAINTIFF'S MEMORANDUM IN REPLY TO DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE
DR. MATTHEW NORMAN AS AN EXPERT WITNESS**

Dr. Matthew Norman's proffered expert opinion is wholly unreliable and irrelevant and should, therefore, be excluded pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594-95 (1993), and its progeny. Dr. Norman admits that his service on behalf of the Defendants in rendering his expert opinion did not conform to the standard methodology in his field. Moreover, Dr. Norman's two principle opinions – that (1) "a reasonable person could have deemed Mr. Barnes a clear and present danger on or about April and May, 2007"; and (2) "a reasonable mental health clinician could have deemed Mr. Barnes to pose a present danger on or about April and May, 2007" – are unreliable and irrelevant. This Court has already ruled that a "reasonable person" opinion is inadmissible in this case because it would not assist the trier of fact. Further, a "reasonable clinician"

opinion is likewise inadmissible because it is irrelevant to the decisions taken by the VSU Defendants who are not mental health clinicians.  Accordingly, the probative value, if any, of Dr. Norman's testimony and expert report is substantially outweighed by the danger of unfair prejudice to the Plaintiff and, therefore, should be excluded.

## ARGUMENT

**I.    This Court Should Award Costs and Fees Against the VSU Defendants Because Their Own Accounting Confirms That They Mislead the Court and Plaintiff Regarding When They Hired Their Expert Witness**

In their Opposition, VSU Defendants claim that they "have been candid over their tardy disclosure of their late discovered expert witness."  (Dkt. # 194, Defs.' Opp. at 5).  VSU Defendants did not "discover" a need to hire an expert witness late in the discovery process, as represented to this Court.  Instead, they chose to wait until the last minute to retain their expert and then misled the Court and the parties as to the reason why his opinion was shared after the close of discovery. Facts surrounding the retention of VSU Defendants' expert revealed during Dr. Norman's deposition illustrate that VSU Defendants presented no "substantial justification" for their failure to timely disclose their expert.  *See St. Fleurose v. Worldwide Dedicated Servs., Inc.*, 2007 U.S. Dist. LEXIS 89486, Case No. 6:06-cv-1272-Orl-18KRS4 (M.D. Fla. Dec. 5, 2007).

VSU Defendants' chronology confirms that they sought to retain Dr. Norman's services not in response to Dr. Winders' testimony – as they previously claimed – but several weeks before Dr. Winders' deposition.  VSU Defendants admit that Dr.  Norman agreed to review a set of Plaintiff's records provided by Attorney Holly Hance on July 6, 2009, several weeks before the close of discovery, however, VSU Defendants claim that this "initial records review" was somehow distinguishable because it was "billable time rendered *prior to being retained* to create an actual expert report."  (Dkt. # 194, Defs.' Opp. at 2) (emphasis in original).

Relying on an email from VSU Defendants' liability insurance administrator, Defendants now claim that they were not authorized to retain Dr. Norman until July 28, 2009.  (Dkt. # 194, Defs.' Opp. at 2) (citing Opp. Ex. N-2). Although VSU Defendants' story keeps changing, the impact remains the same. Rather than disclose their expert witness during the discovery period when they admittedly first determined that his services were needed, Defendants waited until the end of discovery to hire Dr. Norman, and only disclosed that fact weeks later.

VSU Defendants allege that "Plaintiff has yet to cite to any harm Defendants' late disclosure of Dr. Norman has caused him."  (Dkt. # 194, Defs.' Opp. at 5).  First, the party making a late expert witness disclosure has the burden of showing that the failure to comply was harmless, which VSU Defendants do not

attempt to address in their opposition. *See U.S. v. Batchelor-Robjohns*, 2005 WL 1761429 (S.D. Fla. 2005). Second, Plaintiff set forth the immediate harm caused by VSU Defendants' untimely disclosure of their expert witness in his first motion to exclude Dr. Norman's testimony. (*See* Dkt. 139-2, Pl.'s Mot. to Exclude at 8-9). Since that initial motion in August 2009, the circumstances in this proceeding have changed – Plaintiff was granted an opportunity to depose Dr. Norman before the parties submitted motions for summary judgment, which addressed Plaintiff's initial potential harm. (*See* Dkt. 156). Moreover, Plaintiff continues to be harmed by the additional costs of pursuing two motions to exclude Dr. Norman's late-filed testimony. As Plaintiff sets forth above, VSU Defendants do not meet the threshold substantial justification requirement for their tardy expert disclosure. If Defendants had been honest about the circumstances of their delay from the beginning, and shown true candor with the Court and the parties, a lot of effort and on-going costs could have been avoided.

VSU Defendants now complain that "[f]rom October 30 through November 13, 2009, Plaintiff's Attorney refused to pay Dr. Norman's pre-deposition and pre-discovery deposit and quibbled over financial responsibility for it over a two (2) week period of time." (Dkt. # 194, Defs.' Opp. at 4). This is irrelevant to any of Defendants' arguments, although it does support the conclusion that Dr. Norman is nothing more than a professional witness. VSU Defendants merely attempt to

distract this Court from the issues relevant to Plaintiff's *Daubert* motion by attaching only one side of the correspondence between counsel for VSU defendants and counsel for Plaintiff on a tangential issue. As the parties' subsequent correspondence demonstrates, Dr. Norman was paid for his services. (*See* Jan. 7, 2010 Letter from David Will to Cary Wiggins (attached hereto as Ex. 1); Jan. 26, 2010 Letter from Robert Corn-Revere to David Will (attached hereto as Ex. 2); February 1, 2010 Letter from David Will to Robert Corn-Revere (attached hereto as Ex. 3).) It also shows that the dispute between the parties arose from some of the same issues addressed in the instant motion, including Defendants' misrepresentations regarding Dr. Norman's engagement.

## II.     Dr. Norman's Proffered Opinions Do Not Meet the "Reliability" Requirement of *Daubert*

In opposition to Plaintiff's claim that Dr. Norman's proffered opinions are unreliable and fail to conform to the standard methodology in his field, VSU Defendants argue: "Dr. Norman *in fact relies* on authoritative publications when identifying the risk factors presented in Barnes in his expert report, and cites to them throughout his expert report." (Dkt. # 194, Defs.' Opp. at 7-8) (emphasis in original). VSU Defendants miss the point. At his deposition Dr. Norman, referencing the forensic psychology texts, admitted that he did not employ the methodology and standards of his profession when he developed his expert opinion in this case. (Dkt. # 164, Pl.'s Mot. at 9-14). Dr. Norman's failure to comply with

the methods of his profession renders him unqualified to offer an opinion or testify in this case because he has a history of serving as a "hired gun," he offers an inherently unreliable opinion on "future dangerousness," and his decision to merely conduct a "record review" is contrary to the standard methodology required by his field of expertise.  Contrary to the medical literature on which he purports to rely, Dr. Norman admittedly failed to satisfy the components of a thorough examination in the field of forensic psychology.  Accordingly, Dr. Norman's testimony and expert report should be excluded because they are not reliable under *Daubert*.

VSU Defendants' attempt to revive Dr. Norman's expertise and methodology is to no avail.  For example, Plaintiff argued that Dr. Norman's opinion and testimony are unreliable because (among other things) notwithstanding the standard methodology in his field, Dr. Norman typically does not perform any independent research before forming an expert opinion in a case.  (Dkt. # 164, Ex. B to Pl.'s Mot., Deposition of Dr. Matthew Norman 70:23-24 (hereinafter "Norman Dep.")).  VSU Defendants respond that Dr. Norman testified that he conducts "independent thinking ***based on what data is presented*** and then provide[s] an opinion based on that."  (Dkt. # 194, Defs.' Opp. at 10) (quoting Norman Dep. 75:5-8) (emphasis added).  Dr. Norman went on to testify that "if [he] come[s] across something in the records where [he's] reviewed that …

6

references other data and [he] think[s] that would be helpful, [he] will ask for

[more data]." (*Id.*) (quoting Norman Dep. 71:2-5). This testimony does not

undermine Plaintiff's assertion that Dr. Norman's custom is to not perform

independent research, which he admits is in conflict with the methodology set forth

by the treatise on forensic psychiatry he relies on in support of his expert report.

(*See* Dkt. # 164, Ex. B to Pl.'s Mot., Norman Dep. 73:23-75:23).

Admitting that Dr. Norman did not conduct independent research in

preparation of his expert report, VSU Defendants argue that no such research

would be required for Dr. Norman to opine on whether a reasonable person or a

reasonable clinician could have deemed Mr. Barnes a clear and present danger on

or about April and May 2007. According to the VSU Defendants, "Dr. Zaccari's

belief was based on a limited amount of data presented on Barnes from April to

May of 2007. Dr. Norman's expert opinion was intended to analyze the data

available to Dr. Zaccari, Dr. Winders, and Defendant McMillan at the time."

(Dkt. # 194, Defs.' Opp. at 11). VSU Defendants argue that by only reviewing

documents hand-selected by counsel for defendants, Dr. Norman could provide "an

*objective* analysis of the risk factors present in this limited data." (*Id.* at 11)

(emphasis in original). VSU Defendants are misapplying the Supreme Court's

requirement in *Daubert* that an expert's testimony "be scientific … knowledge

[implying] a grounding in the methods and procedures of science [and connoting]

more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 589-90 (internal quotations and footnote omitted). Dr. Norman's failure to conform to the methodology of his profession, which required independent analysis and research when rendering a forensic psychological opinion, was inherently unreliable and thus could not achieve the objectivity otherwise required under *Daubert*.

Moreover, VSU Defendants' allegations that Plaintiff's treating therapists, Defendant McMillan and Dr. Winders, are less credible because of a "therapeutic alliance" with Mr. Barnes is irrelevant to an analysis of whether Dr. Norman is qualified to offer an expert opinion in this case. (Dkt. # 194, Defs.' Opp. at 11-12). The jury is not "entitled to know" Dr. Norman's expert opinion as an alternative to the testimony offered by Defendant McMillan and Dr. Winders that Mr. Barnes did not pose a threat to others at the time he was expelled. (*Id.* at 12). Dr. Norman is only permitted to offer his opinion if it meets the *Daubert* requirements, which it does not.

VSU Defendants also miss the point with regard to Plaintiff's argument that Dr. Norman's opinion on future dangerousness is inherently unreliable under *Daubert* because the standard forensic psychology texts (on which Dr. Norman relies) caution that "prediction of dangerousness is a fundamentally unreliable endeavor…." (Dkt. # 164, Pl.'s Mot. at 10 (citing Ex. D at 67); *see also, id.*,

Norman Dep. 211:16-23).  In response, Defendants assert "Plaintiff will undoubtedly continue to argue that the opinions of Dr. Winders and Defendant McMillan in May 2007 are *reliable* authorities to belittle Defendant Zaccari's opinion on Barnes' dangerousness."  (Dkt. # 194, Defs.' Opp. at 13-14) (emphasis in original).  Defendants do not answer, and therefore concede, Plaintiff's actual claim that any opinion on future dangerousness lacks reliability under *Daubert*.

VSU Defendants further contend that Dr. Norman's expert opinion is not undermined by his failure to conduct an in-person evaluation of Mr. Barnes because his opinion focused on "what should have, or could have, been objectively perceived at the time by Dr. Winders, and McMillan, at least communicated to Dr. Zaccari."  (Dkt. # 194, Defs.' Opp. at 14).  Nevertheless, Dr. Norman himself admitted that if he had interviewed Mr. Barnes he may have reached a different conclusion than the opinions he offers in his expert report.  (Dkt. # 164, Ex. B to Pl.'s Mot., Norman Dep. 40:18-22).  Dr. Norman's failure to conduct an in-person examination of Mr. Barnes is echoed in the qualification Dr. Norman asserts in his expert report, stating: "All opinions formulated are based only on record view and not a direct examination of the Plaintiff, Mr. Thomas Hayden Barnes."  (Dkt. #136, Norman Rep. at 8).  Moreover, at his deposition Dr. Norman acknowledged that, this qualification would serve to address the "ethical" concerns presented by his failure to examine Barnes.  (Dkt. # 164, Ex. B to Pl.'s Mot., Norman Dep. 152:23-

153:3).  Dr. Norman's admitted failure to employ the appropriate methodology in

this case renders his expert report and testimony unreliable and inadmissible.

## III. Both Dr. Norman's "Reasonable Person" and "Reasonable Clinician" Opinions Are Irrelevant and Should Be Excluded

VSU Defendants' various arguments on the relevance of Dr. Norman's

expert report and proffered testimony are confusing and fail to specifically address

most of the critiques set forth in Plaintiff's motion.  As Plaintiff argued in his

motion, there are inconsistencies or a lack of "fit" between the data and

information on which Dr. Norman relied, and the issues in this case that he is

offered to testify on, such that his conclusions would hinder, rather that assist, the

trier of fact.

In particular, Plaintiff asserts in his motion that Dr. Norman's reasonable

person opinion is *per se* inadmissible based on this Court's earlier rulings.

Confusingly, VSU Defendants respond: "Assuming arguendo that the Court does

not permit Dr. Norman to render a conclusion on the 'reasonable person's'

assessment as to Barnes' propensity for dangerousness at the time Dr. Zaccari

withdrew him from school, Dr. Norman should be permitted to testify as to the risk

factors that a reasonable person *should have* considered upon consulting a clinician

regarding the risk factors for dangerousness."  (Dkt. # 194, Defs.' Opp. at 16)

(emphasis in original).  While Defendants' premise is unclear, VSU Defendants

fail to respond to Plaintiff's argument that the reasonable person opinion offered

10

by Dr. Norman should be excluded from this proceeding because this Court has already ruled that such testimony is inadmissible because it is not "beyond the understanding of the average lay person and [would] not help the trier of fact." (Dkt. # 156, Order on Motion to Exclude at 7; *see also* Dkt. # 160 Order on Motion for Clarification at 2-3).

Plaintiff further argued in his motion that even if, *arguendo*, this Court did not exclude Dr. Norman's "reasonable person" opinion based on its earlier rulings, Dr. Norman's "reasonable person" opinion does not conform with the *Daubert* relevance standard because it relies on the perspective of an unreasonable person. (*See* Dkt. # 164, Pl.'s Mot. at 16-17).  In response, VSU Defendants confusingly respond that although the U.S. Surgeon General has issued a report identifying "the general stigmatization and 'the public's' perspective on propensities for dangerousness [of people with mental illness]," (Dkt. # 194, Defs.' Opp. at 18), "[t]hese topics are exclusive from Dr. Norman's opinions of what a reasonable person should infer from observations of objective scientific data." (*Id.*)  VSU Defendants wholly ignore Dr. Norman's deposition testimony that his "reasonable person" standard in fact relies on the presumption that many people unfairly stigmatize people with mental illness, (Dkt. # 164, Ex. B to Pl.'s Mot., Norman Dep. 24:21-23), and that "a reasonable person can make a determination on dangerousness," but that they "will have a … lower threshold of dangerousness."

(*Id.*, Norman Dep. 128:15-21; *see also, id.,* Norman Dep. 129:20-130:7). Because there is no rational basis for a person to fear violence from people who are mentally ill, Dr. Norman's "reasonable person" opinion, which relies on such an assumption, is irrelevant to this case and is, therefore, inadmissible.

VSU Defendants attempt circumvent this Court's ruling that a "reasonable person" opinion is inadmissible in this case by asserting, for the first time, that the various factors Dr. Norman's report relies on for his "reasonable person" opinion are equally applicable to his "reasonable clinician" opinion. In particular, VSU Defendants now claim:

> In his report, Dr. Norman intended for all of the factors listed in the … "reasonable person" section to *not* be exclusive from the "reasonable clinician" section. Norman Aff. ¶ 24, Exh. N-9. That is to say that the factors listed in the "reasonable opinion" section as numbers "1" through "11" on pages 4 through 5, are also the factors which would be considered by the "reasonable clinician." Id.

(Dkt. # 194, Defs.' Opp. at 16) (emphasis in original). With no opportunity to question Dr. Norman on this new interpretation of his report, Plaintiff can only presume that VSU Defendants intend to rely on the portions of Dr. Norman's report that apply to his "reasonable person" analysis should this Court conclude, as it already has in this case, that a "reasonable person" opinion is inadmissible.

However, as Plaintiff outlined in his motion, most of the factors VSU Defendants would now have this Court view as the basis for Dr. Norman's

"reasonable clinician" opinion lack relevance and are unreliable because (1) they irrationally place the same weight to every factor, notwithstanding the fact that the factors do not, in and of themselves, indicate future dangerousness, (*see* Dkt. # 164, Pl.'s Mot. at 18); and (2) Dr. Norman has not adequately accounted for obvious alternative explanations, (*see id.* at 19).[1]  VSU Defendants claim that by pointing out these inconsistencies, "Plaintiff is urging that Dr. Norman must follow some unknown version of the rules of expert report construction in drafting his report."  (Dkt. # 194, Defs.' Opp. at 19).  Plaintiff holds Dr. Norman's report to no higher standard than the requirements set forth by *Daubert* and its progeny. Plaintiff's analysis of Dr. Norman's expert report appropriately evaluates the conclusions drawn by Defendants' expert, the lack of evidence to support those conclusions, and the inconsistent reasoning throughout the document.  Such an analysis is required under *Daubert* and its progeny, and in this case illustrates the highly arbitrary and unreliable nature of Dr. Norman's proffered opinions.

Finally, VSU Defendants allege that "[i]f Dr. Zaccari's inclinations as to Barnes' propensities for violence are confirmed, retroactively, by a forensic expert, at least on an objective basis, Dr. Zaccari is entitled to heightened deference, which

---

[1] Moreover, as Plaintiff noted in his Motion, Dr. Norman admitted at his deposition that he does not "have an opinion on imminence," and would "take the word 'imminent' out" of his opinion, thus rendering his entire "reasonable clinician" opinion irrelevant to his assessment of "clear and present danger."  (*See* Dkt. # 164, Pl.'s Mot. at 21).

is relevant to his defense of qualified immunity." (Dkt. # 194, Defs.' Opp. at 19).

VSU Defendants are entitled to no "heightened deference" because they found and

hired an expert witness to support their case, and they have pointed to no legal

authority in support of this self-serving conclusion. Accordingly, this Court should

reject Dr. Norman's expert report and testimony because his unreliable opinion is

irrelevant and does not "fit" the facts in this case.

## IV.    Dr. Norman's Damages Opinion Is Inadmissible

Defendants offer no response to Plaintiff's assertion that Dr. Norman's

damages assessment is incomplete, unreliable, and lacking relevance because

Dr. Norman acknowledged that his opinion could change if he interviewed Barnes,

(Dkt. # 164, Ex. B to Pl.'s Mot., Norman Dep. 155:11-13, 278:6-18), and that his

opinion only addresses possible psychological harm, but does not rule out

emotional harm. (*Id.*, Norman Dep. 156:13-16).  Instead, VSU Defendants point

to Dr. Norman's general testimony "on the tendency of the subject patient to

malinger in reporting post-traumatic stress disorder." (Dkt. # 194, Defs.' Opp. at

20).  Such testimony is not tied to the facts in this case, is not based on personal

observation, and does not rehabilitate Dr. Norman's otherwise deficient damages

opinion, which should be excluded.

**V.    The Probative Value, If Any, of Dr. Norman's Proffered Opinions Is Substantially Outweighed By the Danger of Unfair Prejudice**

VSU Defendants maintain that "[t]he trier of fact will be hindered if Defendants are left to their lay perspectives on the esoteric topic of forensic psychiatry," because "[t]he facts of the case place forensic psychiatry and the risk factors posed by Barnes directly in issue…."  (Dkt. # 194, Defs.' Opp. at 21). However, the subject matter of Dr. Norman's expert report and proffered testimony is wholly unreliable and irrelevant to this proceeding.  This Court has already concluded that a "reasonable person" opinion is inadmissible, and Dr. Norman's "reasonable clinician" opinion is irrelevant to the facts of this case because the Defendants who decided to expel Mr. Barnes from VSU on basis of their conclusion that he posed a risk of future dangerousness to the campus community were not clinicians.  The probative value of Dr. Norman's proffered opinions is thus substantially outweighed by the danger of unfair prejudice to Plaintiff. Accordingly, this Court should exclude Dr. Norman as an expert witness in this case.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this court issue an Order excluding Dr. Norman as a witness and any evidence of Dr. Norman's opinions and assessing Plaintiff's costs and attorneys' fees against the VSU Defendants.

Respectfully submitted this 24th day of March, 2010.

/s/ *Robert Corn-Revere*

Robert Corn-Revere
Christopher A. Fedeli
Lisa B. Zycherman
Erin N. Reid
Admitted *Pro Hac Vice*
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006
202-973-4200
Email: bobcornrevere@dwt.com

/s/ *Cary Stephen Wiggins*
Cary Stephen Wiggins
Georgia Bar No. 757657
Irma Espino
Georgia Bar No. 558220
Wiggins Law Group
260 Peachtree Street, NW
Suite 401
Atlanta, GA 30303
404-659-2880
Email: cary@wigginslawgroup.com

Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE AND COMPLIANCE</u>

I hereby certify that on March 24, 2010, I served the foregoing to all counsel of record.  I also certify, pursuant to Local Rule 7.1(D), that this document has been prepared in Times New Roman 14-point font.

*/s/ Robert Corn-Revere*
Robert Corn-Revere
Admitted *Pro Hac Vice*
Davis Wright Tremaine LLP
Suite 200
1919 Pennsylvania Avenue, N.W.
Washington, DC 20006
202-973-4200
Email: bobcornrevere@dwt.com

Attorney for Plaintiff