## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

THOMAS HAYDEN BARNES,

        Plaintiff,

v.

RONALD M. ZACCARI, et al.,

        Defendants.

CASE NO.
1:08-cv-00077-CAP

## DEFENDANT LEAH MCMILLAN'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

COMES NOW LEAH MCMILLAN, a Defendant in the above styled matter, who files this response in opposition to Plaintiff's Motion for Summary Judgment (Doc. 179), showing this Honorable Court as follows:

## I.  INTRODUCTION

On December 23, 2009, all parties moved this Court for summary judgment.  In what follows, Mrs. McMillan files her response in opposition to Plaintiff's motion for summary judgment.  Rather than re-hashing all the facts and supporting evidentiary sources regarding her involvement in this matter, Mrs. McMillan hereby adopts and incorporates by reference her previously filed motion for summary judgment with exhibits, statement of

undisputed material facts, and summary judgment brief.  (See Fed.R.Civ.P. 10).

Mrs. McMillan respectfully submits that Plaintiff's motion for summary judgment should be denied, and her motion for summary judgment granted in full.  As Mrs. McMillan will show, Plaintiff's motion for summary judgment lacks any evidentiary support to sustain the First Amendment retaliation and due process claims filed against her.  Moreover, the law relied upon by Plaintiff in support of his claims against Mrs. McMillan is erroneously applied and in many instances taken completely out of context.

## II.    ARGUMENT AND CITATION OF AUTHORITY

### A.    Plaintiff's Motion For Summary Judgment Fails To Establish Mrs. McMillan Committed A Constitutional Violation Or That She Violated Any Clearly Established Law.

### 1.    Plaintiff's First Amendment Retaliation Claim.

As Mrs. McMillan previously pointed out, and Plaintiff agrees, one must establish three elements to maintain a First Amendment retaliation claim: (1) protected speech; (2) retaliatory action that adversely affected the protected speech; and (3) a causal relationship between the protected speech and the retaliatory action.  Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005).  (Pf's Brief in Support of Summary Judgment, p. 30).

2

A First Amendment retaliation plaintiff must "do more than make general attacks upon a defendant's motivations and must [instead] articulate affirmative evidence of retaliation to prove the requisite motive." Colquitt v. Ellegood, 2009 U.S. Dist. Lexis 23305 at * 14-15 (M.D. Fla. March 20, 2009), citing Crawford-El v. Britton, 523 U.S. 574, 600 (1998). The plaintiff must show that "the defendant[] was subjectively motivated" by the plaintiff's protected speech to prevail with a first amendment retaliation claim. Moulds v. Bullard, 2009 U.S. App. Lexis 18296 at * 14 (11th Cir. Aug. 17. 2009), quoting Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008). When a plaintiff fails to show a causal relationship between his protected speech and a defendant's alleged retaliatory action, summary judgment is appropriate. Marsh v. Florida Dept. of Corrections, 2009 U.S. App. Lexis 10649 at * 8 (11th Cir. May 18, 2009) (upholding summary judgment where the "complaint fails to allege any facts showing a causal connection between the defendants' conduct and [plaintiff's having filed] earlier cases.").

In our case, Plaintiff declares that the three prong test set forth in Bennett for establishing a first amendment retaliation case is "met easily." (Pf's Brief In Support Of Summary Judgment, p. 30). The problem with Plaintiff's victory proclamation however is that he has no evidence that Mrs.

3

McMillan's actions were retaliatory.  **This is a fact Plaintiff has known for**
**some time.**  In his deposition, taken back on June 25, 2009, Plaintiff testified
that "**I don't have any specific evidence** for [Mrs. McMillan] releasing
information prior to my administrative withdrawal in retaliation for my
beliefs regarding the parking garage, to my knowledge."  (Barnes Dep., p.
262, lines 8-14).  (Emphasis Added).

Moreover, as far back as February 25, 2009, when asked to produce
evidence that Mrs. McMillan's actions were allegedly retaliatory during the
course of written discovery, Plaintiff admitted that **"[u]pon reasonable**
**inquiry, the information known or reasonable obtainable . . . is**
**insufficient to admit or deny"** such inquiries.  (McMillan's Brief In Support
of Summary Judgment, p. 42, Plaintiff's Written Responses To Mrs.
McMillan's First Request For Admissions, Interrogatories And Production
Of Documents, Response To RFA Nos. 1, 2, 4, 7, Exhibit "E").  (Emphasis
Added).  Plaintiff failed to supplement these discovery responses (discovery
concluded on August 1, 2009), showing once again that Plaintiff has
maintained this civil action against Mrs. McMillan knowing full well that he
does not have any evidence of retaliation on her part.

In an attempt to maneuver around his having no evidence of
retaliation by Mrs. McMillan, Plaintiff's motion for summary judgment

repeatedly refers to "the Defendants'" alleged retaliatory actions—an obvious improper attempt to have the alleged retaliation of other's imputed to Mrs. McMillan.  (Pf's Motion For Summary Judgment Brief, p. 28, p. 32, pp. 34-35, pp. 46-47, p. 51, p. 54, p. 57, pp. 60-66, pp. 70-74).

Plaintiff's motion for summary judgment also resorts to name calling and attempting to demean Mrs. McMillan by characterizing her as "less cowardly" for her "lapse in professional conduct" in discussing his current mental health status on two occasions without first obtaining a waiver of confidentiality—once upon inquiry from VSU Police Major Ann Farmer on April 20, 2007, and once upon inquiry from President Zaccari[1] on April 24, 2007.  (Id., pp. 15-17, pp. 65-66, p. 73, p. 75).

Plaintiff's hurling of insults at Mrs. McMillan however backfires horribly as it only underscores the fact that Mrs. McMillan did not retaliate against him.  According to President Zaccari's administrative withdrawal letter, Plaintiff was withdrawn from VSU for representing a "***clear and***

---

[1] Plaintiff claims that Mrs. McMillan was summoned to President Zaccari's office on April 24, 2007, to discuss his "advocacy about the parking deck and his treatment history."  (Pf's Motion For Summary Judgment Brief, p. 16).  Plaintiff's false innuendos aside, only President Zaccari can speak to why he summoned Mrs. McMillan to his office.  Secondly, as both Mrs. McMillan and President Zaccari have testified, at no time did Mrs. McMillan discuss Plaintiff's treatment history with President Zaccari. (McMillan's Motion For Summary Judgment Brief, p. 21, Statement Of Undisputed Material Facts, ¶ 44).

*present danger to this campus*." (Pf's Motion For Summary Judgment Brief, Withdrawal Letter, Ex. "2"). (Emphasis Added) This premise is *polar opposite* to: (1) Mrs. McMillan's pre-withdrawal statements to President Zaccari, VSU Police Major Ann Farmer, and VSU Attorney Laverne Gaskins, that she did not believe Plaintiff was a threat to anyone; (2) Mrs. McMillan having advocated for Plaintiff to stay enrolled at VSU, and (3) Mrs. McMillan doing everything in her power after the withdrawal to get Plaintiff reinstated to VSU. (Pf's Motion For Summary Judgment Brief, pp. 15-17, p. 20, pp. 24-26). Plaintiff can attempt to vilify Mrs. McMillan all he wants for not obtaining waivers from him prior to her speaking with VSU Police Major Ann Farmer on April 20, 2007 and President Zaccari on April 24, 2007. (Id., pp. 15-17, pp. 65-66, p. 73, p. 75). But his doing so only shows how the information provided by Mrs. McMillan was helpful to him and not retaliatory.

Moreover, the record evidence shows that *the reason* for Mrs. McMillan's having commented on Plaintiff's current mental health status with Major Farmer and President Zaccari *was to try to help and protect him*—not in retaliation for Plaintiff's opposition to the construction of a parking garage at VSU. (McMillan's Motion For Summary Judgment Brief, pp. 16-18, pp. 22-23; Statement Of Undisputed Material Facts, ¶¶ 28, 32, 33,

6

41, 42, 45, 54, 56, 57, 58).   The inquiries made by Major Farmer and President Zaccari to Mrs. McMillan regarding the possibility of Plaintiff being a threat came within days after the shootings at Virginia Tech, and Mrs. McMillan wanted the two to understand that she had never seen that type of behavior from Plaintiff.   (McMillan's Motion For Summary Judgment Brief, p. 17, p. 23; Statement Of Undisputed Material Facts, ¶¶ 28, 42).   As Mrs. McMillan has testified, she did not want "someone going to [Plaintiff's] dorm room and snatching him out" or for "anyone going after him."  (McMillan Aff., ¶ 14; McMillan Dep., p.  81, lines 13-17, p. 94, lines 13-15).

The fact that Mrs. McMillan was trying to help and protect him was not lost on Plaintiff, as he points to the testimony of Major Ann Farmer, who "concluded that *Leah McMillan 'gave me exactly what I needed to know ... that I didn't have to worry about whether or not [Barnes] was a danger to anybody else.'"*   (Pf's Motion for Summary Judgment Brief, p. 16). (Emphasis Added).

Lastly, as Plaintiff unashamedly chronicles, Mrs. McMillan did everything in her power to help him after his administrative withdrawal.  As Plaintiff points out, "immediately" after receiving his administrative withdrawal letter from President Zaccari, he called Mrs. McMillan and

asked her to write a letter to President Zaccari "on his behalf, and she agreed." (Id., pp. 24-25).  The very next morning, Mrs. McMillan met with Plaintiff in her office to discuss his having been administratively withdrawn, and during the meeting Mrs. McMillan reviewed a letter of support Plaintiff's mother had prepared to send to President Zaccari.  (Id., p. 25; McMillan's Motion For Summary Judgment Brief, p. 43, Statement Of Undisputed Material Facts, ¶¶ 74, 75).  Mrs. McMillan then wrote a letter to President Zaccari and the Board of Regents, "*which she hand-delivered*" to President Zaccari that very same day stating that in her opinion Plaintiff *"is not a threat, indirectly or directly to anyone on the VSU Campus."* (Id., pp. 25-26; McMillan's Motion For Summary Judgment Brief, p. 43, Statement Of Undisputed Material Facts, ¶¶ 74, 75).  (Emphasis Added).  Nevertheless, Plaintiff would have this Court believe Mrs. McMillan retaliated against him.  But there's more.

Mrs. McMillan assisted Plaintiff's attorney *in this case* obtain his VSU Counseling Center records *and went so far as to summarize her therapy notes so that Plaintiff's attorney could better understand them*. (McMillan's Motion For Summary Judgment Brief, pp. 43-44, Statement Of Undisputed Material Facts, ¶¶ 74-79).  (Emphasis Added).  Plaintiff then used the letter of support authored by Mrs. McMillan, as well as the

documentation she helped him procure, to successfully have his administrative withdrawal overturned by the Board of Regents. (McMillan Statement Of Undisputed Material Facts, ¶¶ 74-79). Therefore, Mrs. McMillan helped Plaintiff have his administrative withdrawal nullified, and *while he was preparing to sue her*, she summarized her therapy notes for the law firm that is representing him in this matter.

The undisputed evidence shows that Mrs. McMillan did not retaliate against Plaintiff, and despite his recognition of such throughout this matter, Plaintiff has nonetheless maintained this lawsuit against her. One cannot sustain a first amendment retaliation claim absent evidence of retaliation. Bennett, 423 F.3d at 1250. Therefore, Plaintiff's motion for summary judgment on his First Amendment retaliation claim against Mrs. McMillan should be denied.

### 2. **Plaintiff's Due Process Claims.**

Plaintiff's motion for summary judgment also addresses the due process claims he has filed against all of the individuals named in this suit in their official capacities. (Doc. 1, pp. 27-28). In doing so, Plaintiff broadly asserts that "the Defendants" violated his due process rights. (Pf's Motion For Summary Judgment Brief, p. 54). As with his retaliation claim, Plaintiff's motion for summary judgment is completely silent regarding how

Mrs. McMillan—a staff level counselor—somehow "knowingly and consciously evaded [his] due process protections . . . provided by VSU and Board of Regents official policies."  (Id.).

The Court previously held at the motion to dismiss stage that Plaintiff's due process claims were viable against all Defendants because it is alleged in the Complaint that "***the defendants*** failed to provide [Plaintiff] with any sort of notice of the May 3 meeting or even an opportunity to present a defense on his own behalf."  (Doc. 37, p. 24).  (Emphasis Added).  According to Plaintiff, there was a meeting held on May 3, 2007, which he was not given notice of or a chance to defend himself at, where "the Defendants" made the decision to remove him from VSU.  (Doc. 1, ¶ 51).

The evidence now before the Court however clearly establishes that the idea that Mrs. McMillan somehow deprived Plaintiff of his due process rights is outlandish.  First, ***as Plaintiff acknowledges in his brief***, Mrs. McMillan did not "participate in" or attend the May 3rd meeting where the decision was allegedly made to remove him from VSU.  (Pf's Motion For Summary Judgment Brief, pp. 22-23).  Instead, Mrs. McMillan was at a conference in St. Simons and was no where near the VSU campus.

(McMillan's Motion For Summary Judgment Brief, pp. 33-34, p. 46, Statement Of Undisputed Material Fact, ¶¶ 70, 82).[2]

Secondly, **Mrs. McMillan advocated against** the idea that Plaintiff posed a threat to anyone, and against Plaintiff's being removed from VSU. (See discussion *supra*,  pp. 6-8).  At no time did Mrs. McMillan ever recommend to President Zaccari, or anyone else, that Plaintiff should be administratively withdrawn from VSU.  (McMillan Summary Judgment Brief, p. 39).  Nonetheless, and contrary to Mrs. McMillan's May 8, 2007 letter to President Zaccari and the Board of Regents regarding the same, President Zaccari "rejected [Mrs. McMillan's] conclusions" and made the decision to keep Plaintiff's administrative withdrawal in place—further dispelling any argument that Mrs. McMillan somehow deprived Plaintiff of his due process rights.  (Pf's Motion For Summary Judgment Brief, p. 26; McMillan's Motion For Summary Judgment Brief, p. 39, Statement Of Material Facts, ¶ 84).

Lastly, as Plaintiff highlights, at the meeting on May 3, 2007, President Zaccari "informed the group that **he** was planning to administratively withdraw Barnes," that "the decision had been made," and

---

[2] The only reason the Court allowed Plaintiff's case to proceed against Mrs. McMillan was due to Plaintiff having alleged Mrs. McMillan was at the May 3, 2007, meeting that "resulted in the expulsion of Barnes."  (Doc. 43, pp. 3-4).

that President Zaccari informed those in attendance that "the only remaining questions 'were when to withdraw [Plaintiff] and who is going to notify him.'" (Pf's Motion For Summary Judgment Brief, pp. 22-23). (Emphasis Added). It is beyond dispute that the decision to administratively withdraw Plaintiff from VSU, and the manner in how to do it, was that of President Zaccari—not Mrs. McMillan (See also McMillan's Motion for Summary Judgment Brief, pp. 39, 47, Statement of Material Facts, ¶ 80).

As the foregoing shows, Mrs. McMillan did not deprive Plaintiff of his due process rights. Therefore, Plaintiff's motion for summary judgment on his due process claims against Mrs. McMillan should be denied.

### 3.    Plaintiff's Previously Submitted ADA and Rehabilitation Act Claims Against Mrs. McMillan in Her Official Capacity are to be Construed Against Defendants VSU and The Board of Regents.

Plaintiff contends in his motion for summary judgment that "VSU's expulsion of Hayden Barnes violated the Americans with Disabilities Act and the Rehabilitation Act." (Pf's Motion For Summary Judgment Brief, p. 60). In his Complaint, Plaintiff asserted claims under Title II of the ADA and Section 504 of the Rehabilitation Act against all of the individuals named as defendants in their official capacities. (Doc. 1, ¶¶ 105 & 109; Pf's Motion For Summary Judgment Brief, p. 61). However, as Plaintiff points out, this Court previously ruled that Plaintiff's official capacity claims under

the ADA and Rehabilitation Act are to be construed against state entity Defendants VSU and the Board of Regents—who are represented by separate counsel and **have already responded to these claims separately**. (Doc. 37, pp. 27-29; Plaintiff's Motion For Summary Judgment Brief, pp. 63-64; McMillan's Motion For Summary Judgment Brief, pp. 2-3; VSU Defendants' Motion For Summary Judgment Brief, pp. 46-50).

### 4.    Plaintiff's 42 U.S.C. § 1983 "Liability" Claim.

The last argument presented in Plaintiff's motion for summary judgment states that the defendants are "liable" to him "[u]nder 42 U.S.C. § 1983." (Pf's Motion For Summary Judgment Brief, p. 70). Plaintiff opines that "each of the defendants participated in, and contributed to, the serious of events that led to Mr. Barnes' ouster" and as a result each should be liable to him under § 1983. (Id.). In Mrs. McMillan's case, Plaintiff again points to her having discussed his current mental health status on two occasions without obtaining waivers—once upon inquiry from VSU Police Major Ann Farmer and once upon inquiry from President Zaccari. (Id., pp. 74-75).

To begin, Mrs. McMillan respectfully submits that Plaintiff's argument here is simply not plausible—particularly as it pertains to her. To wit, Plaintiff would have this Court find Mrs. McMillan liable to him under

42 U.S.C. § 1983 for causing his administrative withdrawal by providing *helpful* information about him. (See discussion *supra*, pp. 6-8).

Secondly, Plaintiff's argument is contrary to the basic precepts of § 1983 law. As this Court is well aware, 42 U.S.C. § 1983 creates no substantive rights but is simply a vehicle used for enforcement of federally created rights. Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Emory v. Peeler, 756 F.2d 1547, 1554 (11th Cir. 1995). "To successfully litigate a lawsuit for deprivation of constitutional rights under 42 U.S.C. § 1983, a plaintiff must show a violation of a constitutionally protected liberty or property interest and deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1496 (11th Cir. 1991). "The negligent act of an official causing unintended loss or injury to life, liberty, or property does not implicate due process rights under 42 U.S.C. § 1983." Id.

Moreover, of equal importance to the instant discussion is that "[a]s with any common law tort," a § 1983 plaintiff "must establish an adequate causal link between the alleged harm and the alleged unlawful conduct." Dixon v. Burke Co., 303 F.3d 1271, 1275 (11th Cir. 2002). "The connection between conduct and harm must be legally sufficient to satisfy notions of common fairness and policy." Id. "The causal relation does not exist when

the continuum between [the] Defendant's action and the ultimate harm is occupied by the conduct of deliberate and autonomous decision-makers." Id.

In our case, Plaintiff has attempted to hold Mrs. McMillan civilly liable to him by plucking out of context "causation" quotes from cases involving **supervisory liability** under § 1983. The main case[3] relied upon by Plaintiff for this is Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986). The Zatler case involved an inmate plaintiff attempting to hold the Secretary of the Florida Department of Corrections and other prison superintendents liable for his having allegedly been sexually assaulted by other inmates. Id. at 397. The Eleventh Circuit affirmed the district court's granting the prison officials' summary judgment. Id. at 403. In doing so, the Court explained that a prison official "may be liable [under § 1983] where a policy or custom that he established or utilized results in deliberate indifference to an inmate's constitutional rights" or where the prison official "breaches a duty imposed by state or local law, and this breach causes plaintiff's constitutional injury." Id., at 401.

---

[3] The other cases cited to by Plaintiff for this argument –Williams v. Bennett, 689 F.2d 137 (11th Cir. 1982), Sims v. Adams, 537 F.2d 829 (5th Cir. 1976), and Doe v. Rains County Indep. Sch. Dist., 66 F.3d 1402 (5th Cir. 1995)— are all supervisory liability cases and have been similarly used out of context as it relates to Plaintiff's case against Mrs. McMillan.

Therefore, under the proper circumstances, a ***supervisor*** can be found liable under § 1983, even if he did not physically participate in the underlying constitutional violation, if his supervisory acts caused Plaintiff's constitutional injury. But Mrs. McMillan was not a supervisor, nor did she cause any purported constitutional injury to Plaintiff. (McMillan's Motion For Summary Judgment Brief, p. 6, Statement of Undisputed Material Facts, ¶ 1; discussion *supra*). Plus, it is unfathomable how Mrs. McMillan—a staff level counselor—could be held liable for having created "a policy or custom" in this case that "caus[ed] [P]laintiff's [alleged] constitutional injury." Id. Nonetheless, Plaintiff's attempt to hold Mrs. McMillan liable under § 1983 stretches even farther.

Plaintiff cites to a section of the rules and regulations for professional counselors in Georgia, which purportedly rendered it "a condition of [Mrs. McMillan's] license" for her to have obtained waivers of confidentiality from Plaintiff prior to responding to VSU Police Major Ann Farmer and Present Zaccari's inquiries regarding Plaintiff' propensity to cause harm. (Id., p. 75). This is blatant misrepresentation of said rule as there is no language in O.C.G.A. § 43-10A-17 requiring Mrs. McMillan to have obtained waivers from Plaintiff. Moreover, Mrs. McMillan's alleged breach of this rule did not "cause[] plaintiff's constitutional injury." Zatler, 802

F.2d at 401.  To say such would mean that she *caused* Plaintiff's constitutional rights to have been violated by stating to Major Farmer and President Zaccari that Plaintiff was *no threat*.  Again, President Zacarri's withdrawal letter of May 8, 2007, states that Plaintiff was being withdrawn for presenting a *"clear and present danger"* to President Zaccari and the VSU campus.  (See discussion *supra,* p. 6).  (Emphasis Added).

Plus, even if, for argument sake, Mrs. McMillan was somehow required to obtain waivers of confidentiality from Plaintiff under this code section, her not doing so does not constitute the *"deliberate indifference* to constitutional rights" required to hold an individual liable under § 1983. Rivas, 940 F.2d at 1496.  (Emphasis Added).

Lastly, it certainly would not "satisfy notions of common fairness" to hold Mrs. McMillan liable under § 1983 for causing Plaintiff's administrative withdrawal.  Dixon, 303 F.3d at 1275.  As explained earlier, causation is but one[4] of the elements required to be established with every § 1983 claim, and it "does not exist when the continuum between [the] Defendant's action and the ultimate harm is occupied by the *conduct of deliberative and autonomous decision-makers.*"  Id.  (Emphasis Added).

---

[4] Before even getting to the element of causation with his § 1983 claim, Plaintiff would *first* have to show Mrs. McMillan violated one of his constitutional rights *and* exercised deliberate indifference in doing so— which he cannot do.  (See discussion *supra*, p. 14).

Here, as Mrs. McMillan has shown, she did not participate in the withdrawal of Plaintiff from VSU. (See discussion *supra,* pp. 10-12). Plus, Mrs. McMillan had no power[5] to administratively withdraw Plaintiff from VSU. (McMillan Statement Of Undisputed Material Fact, ¶ 83; Zaccari Dep., p. 291, lines 11-12). Instead, the "deliberative and autonomous decision" to withdraw Plaintiff from VSU was President Zaccari's.[6] Dixon, 303 F.3d at 1275.

Indeed, as Plaintiff points out, President Zaccari made the decision to withdraw him from VSU and disregarded Mrs. McMillan's May 8, 2007 letter advising that Plaintiff was not a threat. (See discussion *supra*, pp. 10-12; Pf's Motion for Summary Judgment Brief, pp. 22-23, p. 60; McMillan

---

[5] In adverse employment actions filed under § 1983 for the exercise of First Amendment rights, in determining liability the Eleventh Circuit has utilized the "decisionmaker" inquiry, which "addresses who has the power to make official decisions and, thus, be held *individually* liable." Quinn v. Monroe County, 330 F.3d 1320, 1326 (11th Cir. 2003); Kamensky v. Dean, 148 Fed. Appx. 878 (11th Cir. 2005). (Emphasis In Original). Here, Mrs. McMillan was a staff level counselor and lacked any decision power over the handling of Plaintiff's administrative withdrawal—which the evidence shows she advocated against.

[6] President Zaccari has acknowledged that after evaluating a number of different things and coming up with a certain conclusion, he made the final call to administratively withdraw Plaintiff from VSU. (Zaccari Dep., p. 294, lines 5-9).

Summary Judgment Brief, p. 39, pp. 46-47, Statement Of Undisputed Material Facts, ¶ 84).

Therefore, as Mrs. McMillan has just shown, she cannot be held liable to Plaintiff under § 1983 for causing his administrative withdrawal.

## III. CONCLUSION

Based upon the foregoing, Mrs. McMillan respectfully submits that this Court should deny Plaintiff's motion for summary judgment, and grant her motion for summary judgment in its entirety.  As the discussion set forth above shows, Plaintiff's motion fails to establish a constitutional violation against Mrs. McMillan, thereby entitling her to qualified immunity.  (See McMillan Summary Judgment Brief, pp. 39-40).  Moreover, even if Plaintiff's motion for summary judgment could somehow show Plaintiff has presented a colorable First Amendment retaliation or due process claim against Mrs. McMillan, she is nonetheless entitled to qualified immunity from said claims as the law supporting their existence was not clearly established prior to her conduct.  (See McMillan Summary Judgment Brief, pp. 48-49).

This <u>24</u><sup>th</sup> day of March, 2010.

**s/ Matthew R. LaVallee, Esq.**
Georgia Bar No. 438196
Attorney for Defendant
LEAH McMILLAN

**DALEY, KOSTER & LAVALLEE, LLC**
Overlook I, Suite 160
2849 Paces Ferry Road
Atlanta, GA 30339
(678) 213-2401 (phone)
(678) 213-2406 (facsimile)
mlavallee@dkllaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THOMAS HAYDEN BARNES,

      Plaintiff,

v.

RONALD M. ZACCARI, et al.,

      Defendants.

CASE NO.
1:08-cv-00077-CAP

## CERTIFICATE OF SERVICE

This is to certify that on March 24, 2010, I served a copy of **DEFENDANT LEAH MCMILLAN'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record listed below:

**Attorneys for Plaintiff**
Robert Corn-Revere, Esq.
Chris A. Fedeli, Esq.
Erin Reid, Esq.
Davis Wright Tremaine, LLP
1919 Pennsylvania Ave NW Ste 200
Washington, DC 20006
bobcornrevere@dwt.com
chrisfedeli@dwt.com

erinreid@dwt.com

Cary Stephen Wiggins, Esq.
Cook Youngelson & Wiggins
260 Peachtree St NW Ste 401
Atlanta, GA 30303
cary@wigginslawgroup.com

**Attorney for the Valdosta State University Defendants**
David C. Will, Esq.
Holly Hance, Esq.
Royal Washburn Will
4799 Sugarloaf Parkway
Building J
Lawrenceville, GA 30044
dwill@royallaw.net
hhance@royallaw.net

**Attorney for Defendant Laverne Gaskins**
David R. Smith, Esq.
Brannen Searcy & Smith
PO Box 8002
22 E 34th St
Savannah GA 31412-8002
Dsmith@brannenlaw.com

**s/ Matthew R. LaVallee, Esq.**
Georgia Bar No. 438196
Attorney for Defendant
LEAH McMILLAN

**DALEY, KOSTER & LAVALLEE, LLC**
Overlook I, Suite 160
2849 Paces Ferry Road
Atlanta, GA 30339
(678) 213-2401 (phone)
(678) 213-2406 (facsimile)
mlavallee@dkllaw.com