# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THOMAS HAYDEN BARNES,                    *
                                         *
Plaintiff,                               *
                                         *
-vs-                                     *
                                         *    Case No. 1:08-cv-00077-CAP
RONALD M. ZACCARI, *et al.*,             *
                                         *
Defendants.                              *
                                         *

**CHART OF DEFENDANTS' RESPONSES TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS**

| Barnes SUF[1] | Zaccari & VSU Response[2] | McMillan Response[3] | Gaskins Response[4] |
|---|---|---|---|
| 9.    Plaintiff Thomas Hayden Barnes is a recent graduate of Kennessaw State University with a Bachelor of Science degree in anthropology.  Burke Dep. 130:9-17 (hereafter Ex. 12). | This statement is not material. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Admitted. |

---

[1] (Dkt. # 179-1.  The exhibit numbers in this first column refer to the exhibits attached to Plaintiff's summary judgment motion.  (Dkt. # 179.)  Pursuant to this Court's order, (Dkt. #230), Plaintiff's summary judgment exhibits have been withdrawn and refiled at Dkt. # 231-32.)
[2] (Dkt. # 177-1.)
[3] (Dkt. # 167-2.)
[4] (Dkt. # 174-3.)

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 10. In December of 2000, Barnes began seeing Dr. Kevin Winders, a psychiatrist, for physical problems associated with anxiety. Winders Dep. 12:23-13:10 (hereafter Ex. 13); Ex. 1 at 63:14-16; Ex. 12 at 32:20-33:4; August 2006 letter from Dr. Winders to VSU Access Office (hereafter Ex. 14). | This statement is admitted. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Disputed. The citation provided by the Plaintiff shows Dr. Winders' testimony was actually that Barnes' initial diagnosis was 'depressive disorder not otherwise specified,' after being prescribed an antidepressant by his general physician. [Deposition of Dr. Winders, p. 13.] |
| 11. Barnes is a licensed Paramedic in the State of Georgia. Ex. 1 at 58:21-59:11. | This statement is not material. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Admitted. |
| 13. In the Fall 2005, Barnes enrolled as a transfer student at VSU. He left VSU to attend paramedic school in Savannah in 2006. Ex. 1 at 55:15-23. *See also* Letter from Barnes to Dr. Winders requesting a letter of documentation from Dr. Winders to the VSU Access Office (hereafter Ex. 17). | These statements are admitted. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Admitted; in further answer, this Defendant shows that Barnes left VSU while on academic probation. [*Ibid.*] |
| 14. In the fall of 2006, Barnes contacted the VSU Access Office regarding the procedures necessary to register as an on-campus disabled student suffering from a panic disorder with agoraphobia. Tanner Dep. 7:7-23 (hereafter Ex. 18); Ex. 14. | The statement is denied as worded. In the attributed quote, Dr. Tanner testified that the Plaintiff contacted her regarding accommodations (Tanner depo. 7:7-23), not that he was a disabled student. Dr. Winders, in his letter, stated Barnes' diagnosis, not that he was disabled. (Plaintiff's Ex. 14.) | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Disputed. The citation provided by the Plaintiff shows that the Plaintiff claimed panic disorder, anxiety, and social phobia. [Kimberly Tanner Depo., p. 7] |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 16. Dr. Winders wrote a letter to the Access Office on Barnes' behalf describing Barnes' medical history. Pl. Ex. 13 at 43:16-44:6; Ex. 17; Ex. 14. The disorders identified by Dr. Winders were typical of the types of disorders that the Access Office dealt with. Ex. 18 at 7:16-18. | These statements are admitted. | In regard to the first sentence of this paragraph, Mrs. McMillan admits that the record evidence reflects that Dr. Winders wrote a letter to the VSU Access Office on August 28, 2006, which outlined his diagnosis of Plaintiff. (Tanner Dep., p. 24, lines 21-25, p. 25, lines 1-15, p. 36, lines 14-19, p. 37, lines 17-25, p. 38, lines 1-14; Defendant VSU's Responses to Mrs. McMillan's First Request For Production of Documents, Plaintiff's Access Office File, Letter from Dr. Kevin Winders, dated 8/28/06; Winders Dep., p. 43, lines 16-19, Ex. 3). In regard to the second sentence of this paragraph, Mrs. McMillan admits that the record evidence referenced by Plaintiff supports the allegation provided therein. | Admitted |
| 17. Barnes received ADA accommodations from the Access Office at Valdosta State. Ex. 18 at 9:16-10:11; *see also* Ex. 19. | This statement is denied as worded. The plaintiff received accommodations from the Access Office. | Denied as stated. The record evidence referenced by Plaintiff supports the allegation that Plaintiff obtained housing accommodations from the VSU Access Officer per his request. | Admitted. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 20. On March 22, 2007, the VSU student newspaper, *The Spectator*, ran a story regarding President Zaccari's plans to construct a large parking deck on campus. *The Spectator* Article (hereafter Ex. 21); *see also* Ex. 1 at 153:6-154:1; Ex. 3 at 1. | This statement is admitted. | Mrs. McMillan admits that the record evidence referenced by the Plaintiff supports this paragraph. | Disputed. The citations do not establish the date of publication of the Article, and make no reference to President Zaccari's plans. |
| 22. On or about March 22, 2007, Barnes posted a flyer at various places on the VSU campus protesting the parking garage. Barnes listed his "concerns for the possible environmental damage that construction of a parking garage may cause and suggested environmentally friendly alternatives." Copy of flyer (hereafter Ex. 22). *See also* Ex. 1 at 153:6-154:1; Ex. 3 at 1. | This statement is admitted. | Mrs. McMillan admits that the record evidence referenced by the Plaintiff supports this paragraph. | Admitted, although the "alternatives" were alternative ways to spend the construction cost of the garage; none of the alternatives addressed the parking problems. |

4

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 25. Barnes' statements on the issue of the parking garage focused on the detrimental aspects of the "30,000,000 Parking Garage": "[U]gly, eye-sore, construction noise, dust, more pollution, less grass to enjoy, and the same" and alternative uses for the money that would be spent "2,940 full scholarships to VSU; Textbooks for 8,797 VSU students for 4 years; PeachCare health coverage for 21,739 Georgia children; Head Start/EOA for 2,845 Georgia children; 600,000 acres of Amazon rain forest protected; Housing for 215 Katrina Victims for 18 months." Ex. 22. *See also* Ex. 1 at 153:6-21. | This statement is admitted. | Mrs. McMillan admits that the record evidence referenced by the Plaintiff supports this paragraph. | This Defendant admits that the Plaintiff has recited the contents of the flyer which he posted on campus. |
| 26. On March 26, 2007, President Zaccari met with S.A.V.E., a student run environmental organization at VSU. Ex. 4 at 46:16-20. During the meeting President Zaccari "asked the leadership of the group if they knew about Mr. Barnes and his viewpoints." *Id.* at 2. *See also* Ex. 4 at 49:21-25. | The statements are admitted. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports the first sentence of this paragraph. Mrs. McMillan denies that the record evidence referenced by Plaintiff supports the second sentence of this paragraph as stated. | This Defendant disputes that the cited testimony says anything about any inquiry regarding the Plaintiff's "viewpoint" and admits the remainder. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 27. On March 26, 2007, members of S.A.V.E. told Barnes that President Zaccari was upset about the flyers. Ex. 1 at 154:1-3. *See also* Ex. 4 at 47:4-9, 50:12-22. | This statement is hearsay. Fed. R. Evid. 801. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Admitted. |
| 29. After he received Barnes' letter, Zaccari notified the Chancellor of the Board of Regents of the University System of Georgia that "Mr. Barnes is withdrawing his opposition to VSU's parking garage." March 26 email from Thressa Boyd to Sethna Beheruz (hereafter Ex. 24). | The statement is denied. **Thressa Boyd**, not President Zaccari, notified the Board of Regents that "Mr. Barnes is withdrawing his opposition to VSU's parking garage." (Plaintiff's Exhibit 24.) | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Admitted. |
| 30. On or about April 13, 2007, he created a political collage protesting the parking garage, which he posted on Facebook.com. Ex. 1 at 178:20-179:3; Ex. 3 at 2. *See also* Facebook collage (hereafter Ex. 25). The collage included photos of a multi-level parking structure, a bulldozer, a globe flattened by a tire tread, an asthma inhaler, a photo of Zaccari, and a picture of a public bus under a no-smoking style "not allowed" red circle and slash. It also included text such as "more smog," "bus system that might have been," "climate change statement for President Zaccari," and "S.A.V.E.-Zaccari Memorial Parking Garage." Ex. 25. | The Defendants admit that the Plaintiff created a collage and posted it to his Facebook page. The contents, including photos and text are not clear. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | This Defendant admits that this Statement describes and recites part of the contents of the Facebook page; but denies that the Statement protests the parking garage, as it mainly protests President Zaccari. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 33.  Barnes was told by one Board member that the proposal had not yet left the university level, and that he should express his concerns to VSU's President.  Ex. 1 at 160:9-14.  *See also* Ex. 3 at 2. | The statement is hearsay.  Fed. R. Evid 801. | Mrs. McMillan admits that the record evidence referenced by the Plaintiff supports this paragraph. | Admitted. |
| 37.   Daniels was concerned that Barnes might show up at the April 2007 Board meeting without understanding Board protocol, such as the fact that speakers must get on the board agenda in order to make a presentation.  Ex. 16 at 32:4-8.  Daniels testified she that wanted to forestall the possibility of any protest at the April 17, 2007 Board meeting at which the parking deck proposal was to be considered because, in her view, it would be "awkward" and would consist of "a very tedious kind of uninformed objections about a parking deck" that "are all very clearly answered by the master plan."  *Id.* at 31:23-33:5, 40:6-11. | The statements are admitted. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports the first sentence of this paragraph.  Mrs. McMillan denies that the record evidence referenced by Plaintiff supports the second sentence of this paragraph as stated. | Admitted. |
| 38.  Daniels told Zaccari the Board of Regents preferred that the possibility of a protest by Barnes be handled "at the campus level." Ex. 16 at 41:4-11. | The statement is admitted. | Mrs. McMillan denies that the record evidence referenced by Plaintiff supports this paragraph as stated. | Disputed, as the citation provided shows that the witness sought to help any concerned laypeople or students understand the positive aspects of the planning effort, and believed that information is best provided at the campus level. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 41.   During the meeting Zaccari said that Barnes had personally embarrassed him with his protest activities, and that he thought Barnes had "gone away" after his initial apology.   Zaccari asked Barnes, "Who did [he] think [he] was?," adding that Barnes had made life hard for him, and that he "could not forgive [him]". Ex. 3 at 2.  *See also* Ex. 1 at 161:20-162:9, 178:9-16; Ex. 4 at 112:22-115:11; Ex. 27 at 21:23-22:7; Ex. 10 at 28:15-21. | The statements are denied because they are argumentative, disputed, and/or not supported by the evidence cited. | Mrs. McMillan denies that the record evidence referenced by Plaintiff supports this paragraph as stated. | Disputed, as President Zaccari *was* questioned about comments he made at that meeting, and did not mention any of the comments claimed by the Plaintiff in this Statement.   A question of fact remains on this issue.   [Zaccari Depo., pp. 109-119] |
| 42.   During the meeting, Barnes behaved in a respectful manner towards Zaccari, listening quietly and engaging in a civil exchange of views. Ex. 10 at 27:19-28:7. | The statement is denied because it is argumentative, disputed, and/or not supported by the evidence cited. | Mrs. McMillan denies that the record evidence referenced by the Plaintiff supports this paragraph as stated. | Disputed, as the Plaintiff was respectful, and listened quietly, but did not engage in a civil exchange of views.   The Plaintiff was non-responsive, and was not interested in discussing the points raised by President Zaccari. [Zaccari Depo., pp. 109-119] |
| 46.     Barnes did not attend the April 17-18 2007 meeting of the Board of Regents. Ex. 16 at 45:1-13. | The statement is admitted. | Mrs. McMillan denies that the record evidence referenced by Plaintiff supports this paragraph. | Admitted. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 47.    After receiving the call from Chancellor Daniels, President Zaccari asked Vice President Levy to review Barnes' academic record. Ex. 4 at 190:12-191:21. | The statement is admitted. | Mrs. McMillan denies that the record evidence referenced by Plaintiff supports this paragraph. | Admitted. |
| 50.    Prior to April 20, 2007, President Zaccari summoned Dr. Tanner to his office for a discussion about Mr. Barnes. Ex. 18 at 22:24-23:18. | The statement is denied as worded. Dr. Tanner testified that President Zaccari asked her to "stop by his office" (Tanner depo, 22:17-19) to see if she could "provide any supportive information for how to deal with Hayden, which is a pretty common thing when people have learning disabilities." (Id., at 8-12). | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Admitted. |
| 53. Dr. Tanner brought the Access Office file on Barnes to her meeting with Zaccari. She shared with Zaccari items from Barnes' file at the Access office, including the letter from Dr. Winders that discussed, in detail, Barnes' medical history including his current prognosis.. *Id.* at 24:12-25:23; Ex. 8 at 43:9-45:8; Ex. 14. *See also* Ex. 13 at 43:16-48:1. | The statement is admitted up to but excluding the statement that Dr. Winders' letter contained a current prognosis on Barnes. This statement is denied because it is unsupported by the evidence cited. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports the first sentence of this paragraph.  In regard to the second sentence, Mrs. McMillan admits that the record evidence reflects that Dr. Tanner discussed the contents of Dr. Winders' letter of August 28, 2006, with President Zaccari before April 20, 2007. (Tanner Dep., p. 22, lines 22-25, p. 23, lines 1-20, p. 68, lines 1-15). | Admitted. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 55.  On April 20, 2007, Zaccari attended a small breakfast with VSU administration officials and some members of the faculty.  At the breakfast, Zaccari discussed Barnes (without naming him) with attendees. *Id.* at 197:15-198:16. | The statements are denied as worded.  President Zaccari attended a small faculty breakfast on April 20, 2007.  The construction of the parking garage was discussed as well as "some concern" and "protest."  Dr. Zaccari did not discuss the Plaintiff by name.  A professor approached Dr. Zaccari and said that he was familiar with the student and would "make an intervention and speak with him."  Dr. Zaccari asked the professor not to do so.  (Zaccari depo, 198:8-20). | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Admitted. |
| 56.  After the meeting, one of the attendees, Dr. Michael Noll, a former professor of Barnes, suspected that Zaccari was talking about Barnes and asked whether that was the case.  Zaccari confirmed his suspicions but instructed Noll to drop the subject, telling him that, "[t]his is not a faculty senate issue; that it would be handled from the administration side and the faculty.  And I asked him not to discuss it."  *Id.* at 198:14-16. | These statements are admitted. | Mrs. McMillan denies that the record evidence referenced by Plaintiff supports this paragraph as stated. | Disputed in part.  The statement is correct, except that President Zaccari did not confirm that he had spoken about the Plaintiff. [Zaccari Depo., pp. 198-199] |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 60. At the April 20, 2007 meeting, President Zaccari distributed copies of Barnes' Facebook.com collage. Ex. 27 at 28:8-9; Farmer's notes (hereafter Ex. 30 at 1-5). | The statement is denied as worded. While the Facebook collage was discussed at the meeting, the citations identified by the Plaintiff do not show it was President Zaccari who distributed copies of it. | Mrs. McMillan denies that the record evidence referenced by Plaintiff supports this paragraph as stated. | Admitted. |
| 61. At the April 20, 2007 meeting, Zaccari told the group that he had looked into Hayden's employment and his grades, and he complained about Barnes' correspondence regarding the parking garage. Ex. 30 at 1-5; Ex. 27 at 14:12-16:7. *See also supra* ¶¶ 52-53; Ex. 4 at 106:18-109:5. | This statement is denied as worded and is argumentative. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Admitted. |
| 68. The VSU Counseling Center intake form promises students "confidentiality." VSU Counseling Center intake form (hereafter Ex. 32). Under the policies of the VSU Counseling Center, all written and verbal information provided by students is confidential. *Id.* | The statement is admitted. | Mrs. McMillan denies this paragraph as stated. Mrs. McMillan admits that this form states that all written and verbal information provided by a student is confidential within the Counseling Center. (Pf's Motion For Summary Judgment, Counseling Center In-Take Form, Exhibit "4"). | Admitted. |

11

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 69. The intake form is a contract between the Counseling Center and students at VSU. Ex. 11 at 74:8-75:15. | The statement is denied. | Mrs. McMillan objects to this paragraph as it constitutes an inaccurate legal conclusion. Subject to this objection, Mrs. McMillan admits that she has opined that this page of the Counseling Center's In-Take form is basically a contract with the student. (Id.; McMillan Dep., p. 75, lines 9-17). | Disputed in part. This Defendant agrees that the cited testimony is accurately set out in the statement, but shows that the statement is one of law, not fact, made by a party without legal training. |
| 70. Confidential information provided by a student to a counselor cannot be disclosed unless mandated by law or the student signs a release. *Id.*, at 75:18-76:17. | The statement is denied to the extent that it states that the confidential information cannot be disclosed at all. The statement is admitted to the extent that it lists some of the circumstances in which the confidential information may be disclosed. | Mrs. McMillan objects to this paragraph as it constitutes an inaccurate and incomplete legal conclusion. Subject to this objection, Mrs. McMillan denies that the record evidence referenced by Plaintiff supports this paragraph. | Admitted. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 71. On the afternoon of April 20, 2007, Leah McMillan spoke with Maj. Ann Farmer about Barnes. Ex. 20 at 13; *see also* Ex. 11 at 10:23-24; Ex. 27 at 41:4-5. McMillan told Maj. Farmer that she started seeing Barnes as a counselor in February 2007. Ex. 27 at 41:13-14. McMillan also told Maj. Farmer that Barnes had a general anxiety disorder, a panic disorder. Ex. 30 at 6; *see also* Ex. 27 at 41:14-15. She also disclosed that she thought Barnes might be suffering from ADD. *Id.* at 41:24-25; Ex. 30 at 6. She also speculated that Barnes might be suffering from a bipolar schizo-affective disorder. Ex. 30 at 6; Ex. 27 at 42:17-18. Although McMillan said that, in the past, Barnes had exhibited an irrational thought pattern, there was no evidence of him harming himself or anybody else. Ex. 27 at 41:18-23. | These statements are admitted. | McMillan denies this paragraph as stated. Mrs. McMillan admits that she was instructed to call Major Farmer by her superior Dr. John Grotgen on the afternoon of April 20, 2007. (Grotgen Dep., p. 26, lines 12-14, Ex. 1; McMillan Aff., ¶ 11; McMillan Dep., p. 9, lines 9-10, Counseling Record Dated 4/20/07, Ex. 5). Upon speaking with Major Farmer, Mrs. McMillan admits that Major Farmer stated that she knew Plaintiff was a patient of Mrs. McMillan, that Major Farmer had been in a meeting with President Zaccari where he stated that he felt threatened by Plaintiff, and that Major Farmer wanted to know if there was anything to indicate that Plaintiff was a threat to himself or anyone else. (Farmer Dep., p. 41, lines 6-11; McMillan Aff. ¶ 12; McMillan Dep., p. 11, lines 8-9, p. 12, lines 7-9, Counseling Record Dated 4/20/07, Ex. 5). Mrs. McMillan admits that she then described for Major Farmer the current behaviors she had seen Plaintiff exhibit. (McMillan Aff., ¶ 12; McMillan Dep., p. 14, lines 13-17, p. 95, lines 5-12, Counseling Record Dated 4/20/07; Farmer Dep., p. 41, lines 13-25, p. 41, line 1, p. 74, lines 14-19, Farmer Notes, Ex. 2). Mrs. McMillan also referenced | Admitted. |

13

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| | | to Major Farmer that Plaintiff was not only seeing her but a psychiatrist as well. (McMillan Aff., ¶ 12; McMillan Dep., p. 14, lines 13-17; Farmer Dep., p. 41, lines 17-18, Ex. 2). Mrs. McMillan went on to state to Major Farmer that although she had concerns regarding some of Plaintiff's current behaviors, she had seen no evidence that Plaintiff was a threat to harm either himself or anyone else. (McMillan Aff., ¶12; McMillan Dep., p. 12, lines 11-19, p. 14, lines 13-17, p. 15, lines 5-10, p. 95, lines 8-9, Counseling Record Dated 4/20/07, Ex. 5; Farmer Dep., p. 41, lines 19-21, Ex. 2). | |
| 72.  McMillan told Maj. Farmer that Barnes usually saw her once a week or once every two weeks, but had cancelled his last appointment. However, McMillan also said that Barnes always called to reschedule when he missed an appointment. Ex. 30 at 6; Ex. 27 at 42:9-13. | These statements are admitted. | Denied. (McMillan Dep., p. 94, lines 20-25, p. 95, p. 96, p.97, line 1, Counseling Record Dated 4/20/07, Ex. 5). | Admitted. |
| 73.  McMillan disclosed to Maj. Farmer that she was in touch with Barnes' psychiatrist, Dr. Winders, back in Savannah. Ex. 27 at 41:17-18. McMillan also told Maj. Farmer that Barnes' psychiatrist had not seen the increase in paranoia and irrational thought that she had. Ex. 30 at 6; Ex. 27 at 41:15-17. | These statements are admitted. | Mrs. McMillan denies this paragraph as stated. Mrs. McMillan admits that she mentioned to Major Farmer that Plaintiff was seeing a psychiatrist in addition to seeing her. (McMillan Dep., p. 95, lines 1-6, p. 96, lines 11-13, Counseling Record Dated 4/20/07, Ex. 5). | Admitted. |

14

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 75. On April 23, 2007, McMillan discussed Barnes' case with Director of the Counseling Center, Dr. Victor Morgan, Dr. Grotgen, and other counselors at the Counseling Center. Ex. 20 at 13; Ex. 11 at 101:23-24. | These statements are admitted. | Mrs. McMillan admits that on April 23, 2007, she and Dr. John Grotgen discussed Major Farmer having called the Counseling Center as part of her investigation into whether Plaintiff posed a threat to President Zaccari and the VSU Campus during their weekly clinical staff meeting. (McMillan Dep., p. 43). | Admitted. |
| 76. On or about April 23, 2007, Barnes posted a series of items on his Facebook page, including clips of Bill Maher and The Daily Show television programs-regarding a variety of political issues; a New York Times article about processed foods; a note that: Hayden was cleaning out his room; and a link to a Salon.com article (written by Cary Tennis, Salon.com's advice columnist, in response to the Virginia Tech shootings on April 26, 2007). The Salon.com article observed that the tragedy was "doubly depressing" because not only was the act terrible, but that, in the author's view, people would thereafter irrationally associate the heinous acts of the shooter with all people with mental illness. Facebook pages plus Salon.com article, "I'm mentally ill but I'm no mass murderer." (hereafter Ex. 34). | These statements are admitted. | Mrs. McMillan admits that the record evidence referenced by the Plaintiff supports this paragraph. | Disputed. The citation provides no evidence of the date any of the Facebook content was posted, and misrepresents the note about cleaning out his room, which actually says, "Hayden Barnes is cleaning out and rearranging his room and thus, his mind, or so he hopes." Further, the link to the article about the Virginia Tech shooter and mental illness contains an insert reading "Shoot it. Upload it. Get Famous. Project Spotlight is looking for the next big thing. Are you it?" [Plaintiff's Motion, Exh. 34] |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 77. On April 24, 2007, Zaccari summoned McMillan to his office to discuss Barnes' advocacy about the parking deck and to get more information about Barnes' treatment history. Ex. 11 at 17:12-18:9; Ex. 4 at 170:4-7. *See also* Ex. 20 at 13. | The statement is admitted. | Mrs. McMillan denies this paragraph as stated. Mrs. McMillan admits to being summoned to President Zaccari's office on April 24, 2007, but denies knowing President Zaccari's motivation for doing so. (McMillan Aff., ¶ 16; McMillan Dep., p. 17, lines 12-14, p. 106, lines 6-9, Counseling Record Dated 4/24/07, Ex. 5; Zaccari Dep., p. 264, lines 9-10, lines 24-25, p. 265, line 1). | Admitted, if the description, "Barnes' advocacy about the parking deck," means President Zaccari's concerns over his meeting with Plaintiff, and Plaintiff's contact of others across the state, and the concern of those others about the Plaintiff's behavior. [McMillan Depo., pp. 18, 19] |
| 78. Zaccari told McMillan and he felt threatened by Barnes' continued advocacy against the parking garages and suggested that Barnes' communications about the project constituted indirect threats. Ex. 20 at 13; Ex. 11 at 106:8-12. | The statement is admitted. | Mrs. McMillan denies this paragraph as stated. Mrs. McMillan admits that President Zaccari told her he felt threatened by Plaintiff's Facebook blog. (McMillan Aff., ¶ 16; McMillan Dep., p. 106, lines 9-15, Counseling Record Dated 4/24/07, Ex. 5). | Disputed. Defendant Zaccari expressed concern not about the Plaintiff's advocacy, but about a series of indirect threats. [McMillan Depo., p. 106] |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 79.  In the April 24, 2007 meeting with Zaccari, McMillan disclosed that Barnes was seeing a psychiatrist.  Ex. 6 at 17:24-25. She also described current behaviors that Barnes was exhibiting that she had observed in her counseling sessions. Ex. 11 at 17:23-23.  McMillan told Zaccari that she "had been in contact with Dr. Winders regarding a possible re-evaluation of Mr. Barnes and a medication change." Ex. 11 at 17:24-18:6.  *See also*, Ex. 4 at 170:18-19. | The statements are admitted. | Mrs. McMillan denies this paragraph as stated. Mrs. McMillan admits that the record evidence reflects that Dr. Tanner previously "disclosed" to President Zaccari that Plaintiff was seeing a psychiatrist. (Tanner Dep., p. 24, lines 21-25, p. 25, lines 1-15, p. 36, lines 14-1, p. 37, lines 17-25, p. 38, lines 1-14; Defendant VSU's Responses to Mrs. McMillan's First Request for Production of Documents, Plaintiff's Access Office File, Letter from Dr. Kevin Winders dated 8/28/2006; Winders Dep., p. 43, lines 16-19, Ex. 3). Mrs. McMillan additionally admits that she described Plaintiff's current behaviors to President Zaccari. (McMillan Aff., ¶ 17, McMillan Dep., p. 106, lines 23-25, p. 107, line 1).  Mrs. McMillan admits having explained to President Zaccari that in addition to seeing her, Plaintiff was also seeing a psychiatrist with whom she had already been in contact with regarding a possible re-evaluation and medication change to address Plaintiff's current behaviors. (McMillan Aff., ¶ 17; McMillan Dep., p. 17, lines 21-25, p. 18, lines | Admitted. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| | | 1-3, p. 107, lines 4-6, Counseling Record Dated 4/24/07, Ex. 5). Mrs. McMillan admits that she explained to President Zaccari that although she had concerns regarding some of Plaintiff's current behaviors, she had seen no evidence that Plaintiff was a threat to harm either himself or anyone else. (McMillan Aff., ¶ 17, McMillan Dep., p. 18, lines 3-6, p. 107, lines 2-4, Counseling Record dated 4/24/07, Ex. 5). Mrs. McMillan admits that at no time did she discuss her treatment of Plaintiff with President Zaccari. (Zaccari Dep., p. 272, lines 19-22; McMillan Aff., ¶ 17; McMillan Dep., p. 48, lines 6-20.) | |
| 81. McMillan told Zaccari at April 24, 2007 meeting that she would speak to Barnes about his "behavior and plans for the summer." Ex. 20 at 14. She also disclosed that Barnes' "next appointment was April the 26[th], 2007, at 11:00 a.m." *Id.* | These statements are admitted. | Mrs. McMillan denies the first part of this paragraph. Mrs. McMillan denies the second sentence of this paragraph as stated. Mrs. McMillan admits that it is possible she mentioned to President Zaccari during their one-on-one meeting on April 24, 2007, that she had <u>previously</u> scheduled an appointment with Plaintiff for April 26, 2007. (McMillan Aff., ¶ 23). | Admitted. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 82. After April 24, 2007 meeting with Zaccari, McMillan contacted Dr. Kevin Winders, Barnes' private psychiatrist, and requested that he reevaluate Barnes in light of Zaccari's asserted concerns. *Id. See also* Ex. 11 at 39:14-24; Ex. 13 at 51:19-52:10; Winders April 25, 2007 letter to McMillan (hereafter Ex. 35). | The statements are admitted. | Mrs. McMillan denies this paragraph as stated. Mrs. McMillan admits that she had previously contacted Dr. Winders regarding Plaintiff and that a reevaluation had been "in the works" well before she was summoned to President Zaccari's office on April 24, 2007. (McMillan Dep., p. 39, lines 6-19). | Admitted. |
| 84. On April 25, 2007, Defendant Keppler called a meeting to discuss the situation involving Barnes. Attending the meeting was Dean Mast, Dr. Keppler, Assistant Dean of Students for VSU Richard Lee, Dr. Tanner and Erin Sandonato. Lee Dep. 61:3-7 (hereafter Ex. 36). At the meeting, Dean Lee reviewed the Code of Conduct and did not see any place where Barnes' activities were in violation of the code. Ex. 36 at 61:24-62:25. | The statements are denied. The evidence cited shows an accurate reflection of Richard Lee's deposition testimony; however the remainders of the statements are disputed and argumentative. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Admitted. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 85.  Student discipline at VSU is delegated by the President to the Vice President for Student Affairs, who in turn has designated the Dean of Students Office and its staff to handle the day to day disciplinary process.  *Id.* See also Ex. 9 at 134:12-16.  As Vice President of Student Affairs, Dr. Keppler is in charge "of the departments that relate to the out-of-class components" of the students' education. Ex. 9 at 9:24-10:3. | The statements are denied. Defendants admit that certain disciplinary procedures are delegated to members of his faculty and staff; however not all disciplinary procedures are delegated.  The statements are unsupported by the citations and are argumentative. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Admitted. |
| 86.  Board of Regents Policy Section 401 "authorizes each institution to develop appropriate policies and procedures to discipline students/organizations for the violation of Valdosta State University's Rules.  In accordance with this responsibility disciplinary sanctions shall be applied only after the requirements of due process, fairness and reasonableness have been met. " VSU Student Code of Conduct at 63. (hereafter Ex. 37). | The statements are denied as they are immaterial. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Admitted. |
| 87.  The VSU Code of Conduct states that all matters related to student withdrawals be routed through the Student Office of Judicial Affairs.  Ex. 8 at 155:11-13. | The statements are denied as they are immaterial. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Admitted. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 88.  The VSU Student Handbook sets forth the process to be used in disciplinary hearings: "(1) The accused student and or organization shall be notified in writing of the specific charge(s) made against them and of the date, time, and place where a hearing will be held; (2) The notification will inform the accused student and or organization that an advisor of their choosing may accompany them; (3) The charge letter notifying the student and or organization of the judicial hearing shall be postmarked no less than (4) class days prior to the date designated for the judicial hearing. The accused student and or organization shall be permitted to pose questions to all witnesses at the hearing; (5) An audio recording of the hearing will be made; (6) The hearing shall be conducted in accordance with the policy set forth in Disciplinary Hearing Procedures for Judicial Committees at Valdosta State." Ex. 37 at 64. | The statements are denied as they are immaterial. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Admitted. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 89.  On April 26, 2007, Zaccari summoned Dr. Keppler, McMillan, and Dr. Morgan to his office to discuss Barnes. Morgan Dep. 17:2-9 (hereafter Ex. 38);  Ex. 11 at 20:2-5.   As the meeting began, McMillan told the group that Barnes had been a "no-show" for his April 26 appointment. Ex. 20 at 15; Ex. 11 at 112:13-16.  However, McMillan's secretary called during the meeting to say there had been a mix-up regarding the time and Barnes was at the counseling center waiting to meet with McMillan. Ex. 11 at 113:16-114:16.  *See also* Ex. 20 at 15.  McMillan left the meeting in progress to meet with Barnes. Ex. 20 at 15. | The statements are admitted. | Mrs. McMillan denies this paragraph as stated.  Mrs. McMillan admits that she was summoned to President Zaccari's office on April 26, 2007, but denies knowing President Zaccari's motivation for doing so.  (McMillan Aff., ¶ 22; McMillan Dep., p. 19, line 25, p. 20, lines 1-5, p. 113, lines 14-17, Counseling Record Dated 4/26/-8. Ex. 5).   Mrs. McMillan further admits that before the conclusion of this meeting, her secretary called the President's office and informed his secretary that Plaintiff had mixed up his appointment time and was waiting for Mrs. McMillan over at the Counseling Center.  (McMillan Aff. ¶ 24; McMillan Dep., p. 20, lines 9-22, p. 113, lines 14-24, Counseling Record Dated 4/26/07, Ex. 5; Zaccari Dep., p. 287, lines 9-14).   Mrs. McMillan admits that President Zaccari's secretary then interrupted the meeting and relayed this information to the group.  (Id.) Mrs. McMillan admits that before leaving the meeting to go have her session with Plaintiff, she urged the group that Plaintiff needed to be allowed to finish his finals. (McMillan Aff., ¶ 24; McMillan Dep., p. 20, line 22, p. 35, lines 16-21). | Admitted. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 90. At the April 26, 2007 meeting, Zaccari showed Keppler, McMillan and Dr. Morgan a copy of Barnes' Facebook.com collage. Ex. 11 at 149:22-150:25. During the meeting, Zaccari described the collage as "an indirect threat on him regarding the parking garage." *Id.* at 160:23-161:15. *See also* Ex. 38 at 20:12-21:2. However, no one else at the meeting expressed agreement with this concern. | The statements are admitted up to but excluding the last sentence, which is denied as being unsupported by evidence and argumentative. | Mrs. McMillan admits the first two sentences of this paragraph. In regard to the third sentence, Mrs. McMillan admits that she did not find Plaintiff's Facebook blog threatening. | Admitted. |
| 92. Dr. Morgan told Zaccari that he did not believe Barnes used the word "memorial" in the collage in a threatening manner. Rather, he said he believed Barnes used it to mean that "this is a building that is going to be designated with your name on it; that you're going to be held responsible for the parking garage." Ex. 38 at 21:13-22:6. *See also* Ex. 11 at 162:10-15. | The statements are denied to the extent that it states that Dr. Morgan "told" Dr. Zaccari how he felt about the memorial, as the evidence cited does not support the statements. The remainder of the statement is admitted. | Admitted. | Admitted. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 94.    Defendant Keppler did not think Barnes or the Facebook.com collage presented a threat. Ex. 9 at 30:14-19, 63:8-16. *See also id.* at 76:17-77:2, 106:22-24, 136:7-10, 138:9-15, 139:3-12, 163:1-11, 167:24-168:9. More specifically, Dr. Morgan and Defendants Keppler and McMillan believed that Barnes could not be withdrawn under VSU's mental health withdrawal policy. Ex. 9 at 134:24-140:13; Ex. 11 at 72:23-73:22; Ex. 38 at 22:23-23:1. | The statement is admitted to the extent that the specific knowledge Dr. Morgan, Dr. Keppler, and McMillan had on Barnes, at the time, did not provide sufficient evidence to withdraw Barnes under the mental health withdrawal policy.    The remaining statements are denied because the cited evidence does not support the assertions made. | Admitted. | Admitted. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 95.  VSU's mental health withdrawal policy authorizes a student to be withdrawn from the University if 1) "[t]he student displays behavioral indicators which are determined by a mental health professional to be of danger to himself or others; 2) [w]hen a mental professional recommends that a student be withdrawn from school for mental health reasons, an informal hearing will then be set to determine whether or not a student should be withdrawn, and 3) in his informal hearing conducted by the Office of the Dean of Students, the student or his representatives may present any pertinent information that he or she believes will have a hearing on a particular case." VSU Mental Health Withdrawal Policy (hereafter Ex. 39) at 68.  *See also* Ex. 9 at 134:24-140:13. | The statements are denied as they are immaterial. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Admitted. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 96. Zaccari looked for a process by which he could withdraw Barnes without a hearing or the presentation of evidence. According to Maj. Farmer's notes, Zaccari discussed the possibility of using a procedure he called an "administrative withdrawal," which Zaccari believed would not require convening a student/faculty council or from the Counseling Center. *Id.* at 11.  Ex. 27 at 54:12-57:15. Zaccari testified that the Mental Health withdrawal process was "cumbersome" and would have required him to present evidence to support his decision.  Ex. 4 at 247:10-248:9. | The statements are denied because they are argumentative and not supported by the evidence cited. | Mrs. McMillan objects to this paragraph as argumentative. Subject to this objection, Mrs. McMillan admits that the record evidence referenced by Plaintiff supports the second sentence in this paragraph.  Mrs. McMillan denies that the record evidence referenced supports the third sentence in this paragraph as stated. | Admitted. |
| 97. On April 26, 2007, Defendant Barnes attended a counseling session with Defendant McMillan. Ex. 11 at 114:23-116:20; Ex. 20 at 15. During the meeting, Defendant McMillan and Barnes discussed his "issues with President" Zaccari. Ex. 20 at 15-16; Ex. 11 at 115:10-13.   During session, McMillan asked Barnes if he was planning or thinking about hurting Zaccari. Ex. 20 at 16. *See also* Ex. 38 at 52:15-19.  Barnes responded that he had made "no direct or indirect threats to President" Zaccari, that he would "not harm self or others." Ex. 20 at 16-17. | The statements contained in the first two (2) sentences are admitted. However the remainder of the statements are denied because they are unsupported by the evidence cited. | Admitted. | Admitted. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 98. Barnes was taken aback by McMillan's inquiries about President Zaccari and discussed with Dr. Morgan the possibility of changing counselors. Ex. 38 at 52:12-54:15. | The statement is admitted to the extent that Barnes inquired about changing counselors. The statement is denied to the extent that Barnes was taken aback. Barnes credibility is an issue to be decided by the trier of fact. | Mrs. McMillan denies this paragraph as stated. At no time was Mrs. McMillan directed or tasked by President Zaccari to seek out Plaintiff and ask him specific questions. (McMillan Aff., ¶ 21; McMillan Dep., p. 67, lines 13-18; Morgan Dep., p. 73, lines 19-24). Mrs. McMillan admits Plaintiff called the Counseling Center and spoke with Dr. Morgan regarding possibly switching counselors. (Morgan Dep., p. 52, lines 5-19, p. 53, lines 6-22; McMillan Dep., p. 65, lines 15-22, p. 66, lines 1-2; Barnes Dep., p. 195, lines 15-19). Mrs. McMillan admits to giving Plaintiff the option of switching counselors, but Plaintiff stated that he wished to stay with Mrs. McMillan. (McMillan Aff., ¶ 29; McMillan Dep., p. 66, lines 6-11, p. 124, lines 15-17, Counseling Record Dated 5/2/07, Ex. 5). | Admitted. |

27

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 99. On April 26, 2007, at President Zaccari's request, Defendant Gaskins inquired of Elizabeth Neely, Vice Chancellor for Legal Affairs at the Board of Regents, as to how a university president could file a complaint against a student "for violation of the Student Code of Conduct" and what processes that would apply to such a situation. April 26, 2007 email from Gaskins to Neely (hereafter Ex. 40). *See also* Ex. 8 at 14:13-19:5; Ex. 4 at 233:7-235:14. | These statements are admitted. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Disputed. Defendant has already confirmed under oath that this statement is ***not*** true, but continues to repeat it. In fact, Defendant Gaskins sent an e-mail to Vice Chancellor for Legal Affairs, attorney Elizabeth Neely, on April 26, 2007, stating:<br><br>*Today, Dr. Zaccari directed me to pose to you the following question to you. Our appeal process provides that decisions of the judicial board may be appealed to the President. In the event the President files a complaint against a student for a violation of the Student Code of Conduct and the student wishes to file an appeal, should the appeal go directly to your office (BOR) or should the President appoint a designee (i.e., Dr. Levy)?*<br><br>Clearly, as Plaintiff conceded on deposition, that communication asked only about appeal rights, and not about the method of filing a complaint. [Gaskins Depo., pp. 12, 14-15, and Exh. 4; Barnes Depo., p. 215] |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 100.    Neely    responded    by cautioning Gaskins that "[i]t is not good practice for the President to be bringing a complaint against any student," as student-conduct issues "should be handled by staff in Student    Affairs.    Once    the President has made a decision in a matter, there is no due process at the campus level." Ex. 40.  *See also* Neely Dep. 14:5-16 (hereafter Ex. 41); Ex. 8 at 19:6-11; Ex. 4 at 235:10-20. | The statements are admitted. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Disputed  in  part.    In  fact, Chancellor Neely responded to the inquiry about appeal rights by answering that, where the president files a complaint against a student, that student's appeal must be directed to the Board of Regents, rather than to the President's subordinates, as due process would not  otherwise  be  sufficient. [Gaskins Depo. Exh. 4] |
| 102.   On May 1, 2007, Zaccari summoned Gaskins to his office for a conference call with Neely. Ex. 8 at   56:8-22.     Neely   discussed various ways that Barnes could be administratively withdrawn. *Id.* at 61:19-21.    Gaskins  raised  "due process    concerns,    the    ADA concerns,"  with  Neely  and  Zaccari. *Id.* at 58:9-61:1.  *See also* Ex. 4 at 236:11-14.   She also raised First Amendment  concerns.    Ex.  8  at 60:16-18.        Despite    these expressions of concern, Neely said "[w]e'll  worry about the lawsuit later." *Id.* at 68:13-17. | The statements are admitted up to but excluding the last sentence, which is denied because it is argumentative. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Admitted. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 104.  On May 3, 2007, Defendant Zaccari summoned Defendant Keppler, Thressea Boyd, Defendant Mast, Major Farmer, Police Chief Scott Doner, Defendant Gaskins, Dr. Tanner, Dr. Levy, and Dr. Morgan to his office for a meeting on Barnes. Ex. 30 at 10-15. *See also* Ex. 38 at 25:17-26:5; Ex. 27 53:12-15; Ex. 9 at 90:5-9.  Zaccari told the group that he and Gaskins had been in communication with the Board of Regents and had discussed the situation involving Barnes with the Board.  Ex. 30 at 13; *see also* Ex. 38 at 26:22-25. | The statement is admitted except for assert that Dr. Levy was present at the May 3rd 2007 meeting, which is denied because it disputed by conflicting and/or non-confirming evidence. | Mrs. McMillan admits that she was not at this meeting and admits that the record evidence referenced by the Plaintiff supports this paragraph. | Admitted. |
| 107.  Gaskins informed the group that "a student accused of violating Board Policy 1902 is entitled to due process concerns." Ex. 8 at 89:9-12; *see also* Pl.'s Ex. 44. Nevertheless Zaccari said that he was planning to administratively withdraw Barnes. Ex. 30 at 9-15. *See also* Ex. 38 at 27:2-3. | The statements are denied because they are unsupported by evidence and are argumentative.  Policy 1902 was not being discussed in this citation. | Mrs. McMillan denies that the record evidence referenced by Plaintiff supports the first sentence of this paragraph.  Mrs. McMillan admits that the record evidence referenced by Plaintiff supports the second sentence of this paragraph. | Admitted. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 108. According to Major Farmer's contemporaneous notes, Gaskins told the group that an administrative withdrawal "leaves the group in a precarious legal position." Ex. 30 at 16. Gaskins said that the withdrawal must rest on "mental health and clear and present danger." Ex. 30 at 15; Ex. 27 at 57:16-18. | The statements are admitted. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Disputed in part. Defendant Gaskins actually said that an "emergency withdrawal" must rest on mental health and clear and present danger. [Plaintiff's Summary Judgment Motion Exh. 30, p. 15] |
| 109. Dr. Keppler told Zaccari that no one at the counseling center could withdraw Barnes for mental health reasons because there was nothing to support that Barnes was a threat. Ex. 30 at 16; *see also* Ex. 27 at 58:18-20. he noted that Barnes' psychiatrist had agreed with McMillan that Barnes was rational and presented no threat to himself or to anyone else. Ex. 27 at 58:20-23; *see also* Ex. 11 at 122:6-9; Ex. 13 at 55:14-68:8. *See also* Ex. 42; Ex. 20 at 17. | The statements are denied because they are unsupported by evidence, argumentative, and immaterial. | Mrs. McMillan denies that the record evidence referenced by Plaintiff supports this paragraph as stated. Mrs. McMillan admits that she stated to President Zaccari that she did not believe Plaintiff was a threat to harm him or anyone else. | Admitted. |
| 110. On May 4, 2007, at Zaccari's request, Gaskins prepared a memorandum providing a draft of a proposed withdrawal letter. Draft withdrawal notice prepared by Gaskins (hereafter Ex. 45). | The statements are admitted. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Admitted. Defendant Gaskins further shows that the memorandum included in the heading the statement, "You should note that due process dictates that the student be apprised of what particular policy has been violated, an opportunity to be heard and also be informed of the appeal process." [ Plaintiff's MSJ Exh. 45] |

31

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 112.  On May 7, 2007, Defendant Gaskins met with Defendant McMillan, Defendant Keppler and Dr. Morgan to discuss the possible withdrawal of Barnes.  Ex. 8 at 150:13-22; Ex. 11 at 131:9-132:22; Ex. 38 at 33:6-19.  Defendant McMillan reiterated to "Ms. Gaskins and to Dr. Morgan and Dr. Keppler…that I did not feel that he was a threat." Ex. 11 at 132:19-22. | The statement is denied because it is immaterial. | Mrs. McMillan denies this paragraph as stated. Mrs. McMillan admits that she was summoned to a meeting in Mrs. Gaskins' office on May 7, 2007, but denies knowing Mrs. Gaskins' motivation for having done so. Mrs. McMillan admits that she stated during this meeting that she did not believe Plaintiff was a threat to himself or others. (McMillan Aff., ¶ 34; McMillan Dep., p. 33, lines 18-20). | Disputed.  The meeting was not to discuss the possible withdrawal of Plaintiff, but for Defendant Gaskins to advice McMillan, Keppler, and Dr. Morgan that Plaintiff might be withdrawn.  [McMillan Depo., p. 132] |
| 119.  On or around May 8, 2007, Zaccari received letters from Dr. Winders and McMillan.  Zaccari read the letters and placed them in a file without taking any action on them. Ex. 4 at 255:10-14. | The statement is admitted to the extent that Zaccari received the letters and maintained them in a file. However, the remainder of the statement is denied for its argumentative nature. | Mrs. McMillan admits that she hand delivered these letters to President Zaccari on May 8, 2007.  Mrs. McMillan denies knowing what President Zaccari did with said letters.  Mrs. McMillan admits that despite receiving her letter, President Zaccari continued with his administrative withdrawal of Plaintiff form VSU. (Zaccari Dep., p. 249, lines 7-13, p. 258, lines 4-7, p. 259, lines 14-23, p. 300, lines 3-17, McMillan Letter Dated 5/8/07, Ex. 23). | Admitted. |
| 121.  Zaccari decided that the conditions of Barnes' administrative withdrawal had not been met by the letters submitted by Winders and McMillan. *Id.* at 254:6-8. | The statement is admitted. | Mrs. McMillan admits that despite receiving her letter, President Zaccari continued with his administrative withdrawal of Plaintiff form VSU. (Zaccari Dep., p. 249, lines 7-13, p. 258, lines 4-7, p. 259, lines 14-23, p. 300, lines 3-17, McMillan Letter Dated 5/8.07, Ex. 23). | Admitted. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 123.    On June 21, Defendant Zaccari submitted to the BOR a letter defending his decision to administratively withdraw Barnes. Ex. 5.  Before submitting his letter to the Board of Regents, Defendant Zaccari asked VSU Counsel Gaskins to review and revise the letter. Ex. 8 at 170:18-171:2; drafts of Zaccari letter to BOR (hereafter Ex. 51).  Gaskins made a number of modifications to the letter.  Ex. 51; *see also* Ex. 8 at 171:7-179:30. | The statements are admitted. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | Disputed as stated.    In fact, President Zaccari drafted the letter in response to the Plaintiff's appeal, and asked that Defendant Gaskins review it, and put it in the proper format for submissions to the Board of Regents.    Gaskins made no substantive contribution to President Zaccari's defense on appeal.  [Gaskins Depo., pp. 170-174] |
| 124.    The appeal of Mr. Barnes' administrative withdrawal went to Betsy Neely on the Board of Regents.    Correspondence from Neely to Barnes and Zaccari (hereafter Ex. 52). | The statement is denied to the extent that it connotes that Barnes appealed to the Betsey Neely.  The statement is admitted to the extent that it states that Barnes appealed to the Board of Regents.    The remainders of the statements are admitted. | Mrs. McMillan admits that the record evidence referenced by Plaintiff supports this paragraph. | This Defendant admits that the appeal and response were initially directed to Chancellor Neely at the Board of Regents, but shows that, because Chancellor Neely had previous involvement in the case, the matter was assigned to another attorney in the Board's legal office from the outset. [Neely Depo., pp. 61-62, 66-69]. |

| Barnes SUF | Zaccari & VSU Response | McMillan Response | Gaskins Response |
|---|---|---|---|
| 126.  On January 17, 2008, after Barnes filed suit in federal court, the Board of Regents without comment rescinded Barnes' administrative withdrawal. Rescission letter (hereafter Ex. 54). | The statement is admitted to the extent that it states that Barnes filed suit in federal court; and that, on January 17, 2008, the Board of Regents rescinded Barnes' withdrawal.  The remainder of the statement is denied for being argumentative. | Mrs. McMillan admits the record evidence reflects that on January 17, 2008, the Board of Regents, following consideration of Plaintiff's appeal, rescinded President Zaccari's decision to administratively withdraw Plaintiff from VSU.  (Plaintiff's Responses to Mrs. McMillan's First Request For Admissions, Interrogatories, And Production of Documents, Board of Regents Letter Dated 1/17/08, Bate Stamp # B000002). | Admitted. |