IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| THOMAS HAYDEN BARNES,<br><br>Plaintiff,<br><br>v.<br><br>RONALD M. ZACCARI, et al.,<br><br>Defendants. | CASE NO.<br>1:08-cv-00077-CAP |

### DEFENDANT LEAH MCMILLAN'S REPLY TO PLAINTIFF'S OPPOSITION TO HER MOTION FOR SUMMARY JUDGMENT

COMES NOW LEAH MCMILLAN, a Defendant in the above styled matter, who files this reply to Plaintiff's opposition to her motion for summary judgment, showing this Honorable Court as follows:

**I. PLAINTIFF'S OPPOSITION FAILS TO ESTABLISH A CONSTITIUTIONAL VIOLATION AGAINST MRS. MCMILLAN OR THAT SHE VIOLATED ANY CLEARLY ESTABLISHED LAW.**

**A. Mrs. McMillan Did Not Retaliate Against Plaintiff.**

On February 25, 2009, when asked to produce evidence that Mrs. McMillan's actions were somehow retaliatory, Plaintiff admitted that **"[u]pon reasonable inquiry, the information known or reasonable**

**obtainable . . . is insufficient to admit or deny."** (McMillan's Brief In Support of Summary Judgment, p. 42, Plaintiff's Written Responses To Mrs. McMillan's First Request For Admissions, Interrogatories And Production Of Documents, Response To RFA Nos. 1, 2, 4, 7, Exhibit "E"). (Emphasis Added). Plaintiff failed to supplement these discovery responses.

On June 25, 2009, Plaintiff testified that he did not **"have any specific evidence for [Mrs. McMillan] releasing information prior to my administrative withdrawal in retaliation for my beliefs regarding the parking garage, to my knowledge**." (McMillan's Brief in Support of Summary Judgment, pp. 41-42, Barnes Dep., p. 262, lines 8-14). (Emphasis Added).

On March 24, 2010, Plaintiff filed his consolidated opposition to the Defendants' motions for summary judgment. In doing so, Plaintiff again **could not cite to any evidence of retaliation by Mrs. McMillan**, and **failed to respond** to the summary judgment arguments advanced by Mrs. McMillan regarding the same. (McMillan's Brief in Support of Summary Judgment, pp. 39-45).

Instead, Plaintiff found it more important to spend forty six pages of his fifty page opposition brief on taking pot shots at the VSU Defendants and their counsel, comparing himself to a rape victim, and providing a

historical account of former President Richard Nixon and his "plumber's unit". (Pf's Opposition Brief, pp. 1-46).

In the barely three and a half pages Plaintiff found worthy to respond to Mrs. McMillan's motion for summary judgment, the best he can muster regarding how Mrs. McMillan somehow **retaliated** against him are more false innuendos. To wit, Plaintiff's newest angle is that Mrs. McMillan "knowingly disclosed confidential[1] information that **she was aware** Zaccari was seeking to use against Barnes because of his advocacy concerning the parking deck." (Id., p. 49). (Emphasis Added). Of course, Plaintiff fails to cite to **any** evidence for this false position—because he knows there is none. Indeed, there is absolutely no record evidence showing that; (1) President Zaccari ever told Mrs. McMillan that he was retaliating against Plaintiff on account of his opposition to the VSU parking deck; (2) that Mrs. McMillan "was aware" of any such intentions by President Zaccari; (3) or that the parking deck ever played a role in the reason for Mrs. McMillan's having described to President Zaccari Plaintiff's current mental health status.

---

[1] Plaintiff continues to indignantly stick his head in the sand regarding the fact that his Complaint does not assert a breach of confidentiality cause of action against Mrs. McMillan, and even if it did, he does not have a legally cognizable breach of confidentiality claim against her. (McMillan's Brief In Support Of Summary Judgment, pp. 47-48).

3

Instead, as the record evidence makes patently clear, the information provided by Mrs. McMillan was **helpful**—he posed no threat—and was provided in an attempt to help and protect Plaintiff, not in retaliation for his opposition to the VSU parking deck. (McMillan's Brief In Support Of Summary Judgment, pp. 39-45). Moreover, **as Plaintiff points out**, Mrs. McMillan "did not know what President Zaccari was really feeling." (Pf's Statement Of Disputed Material Facts, p. 16). Therefore, Plaintiff's attempt to make Mrs. McMillan out to be a mind reader in a last ditch effort to show retaliation rings hollow.

### B. **Mrs. McMillan Did Not Deprive Plaintiff Due Process.**

Plaintiff's opposition brief also fails to respond to Mrs. McMillan's having shown in her motion for summary judgment that she did not deprive Plaintiff his due process rights. (McMillan's Brief in Support of Summary Judgment, pp. 45-47). Instead, Plaintiff tries to argue that Mrs. McMillan is liable to him under 42 U.S.C. § 1983 because she "participated in, and contributed to, the series of events that led to Barnes' expulsion from VSU." (Plaintiff's Opposition Brief, p. 47). However, as Mrs. McMillan has already shown, Plaintiff's argument here is simply not plausible, as it would result in Mrs. McMillan being found civilly liable for causing his administrative withdrawal by providing **helpful** information about him and

despite her having **advocated against** his being removed from VSU. (McMillan's Response In Opposition To Plaintiff's Motion For Summary Judgment, pp. 5-12, pp. 13-14). Secondly, as Mrs. McMillan has already explained, this argument has zero legal footing. (Id., pp. 14-19). Plaintiff cannot create liability against Mrs. McMillan by cleverly plucking **out of context** "causation" quotes from § 1983 **supervisory liability** cases that have absolutely no application to the civil action that has been filed against her. (Id.).

Nonetheless, Plaintiff marches on with his attempt to find anyway possible to keep Mrs. McMillan in this case. Plaintiff's final attempt to do so can be found on the last page of his opposition brief where he alleges that Mrs. McMillan's discussion of his current mental health status with President Zaccari "became the linchpin of Zaccari's rationale for withdrawing Barnes." (Pf's Opposition Brief, p. 50).[2] Again, it is completely unfathomable how Plaintiff can continue to cling to this notion.

---

[2] The record evidence has shown that President Zaccari was provided with a great deal of information regarding Plaintiff's mental health by VSU Access Office Director Dr. Kimberly Tanner on at least two occasions **prior to ever speaking with Mrs. McMillan on April 24, 2007**: (1) during a meeting on April 20, 2007, and (2) during a one-on-one meeting with President Zaccari "[q]uite awhile before" April 20, 2007. (McMillan's Brief In Support Of Summary Judgment, pp. 10-12). How then could Mrs. McMillan be "the linchpin" for why President Zaccari decided to withdraw Plaintiff?— especially in light of Mrs. McMillan stating Plaintiff posed no threat.

As the undisputed evidence has shown, according to President Zaccari's administrative withdrawal letter Plaintiff was withdrawn from VSU for representing a "**clear and present danger to this campus**." (Pf's Motion For Summary Judgment Brief, Withdrawal Letter, Ex. "2"). (Emphasis Added)  This premise is **polar opposite** to—as Plaintiff's own motion for summary judgment sets forth: (1) Mrs. McMillan's pre-withdrawal statements to President Zaccari, VSU Police Major Ann Farmer, and VSU Attorney Laverne Gaskins, that she did not believe Plaintiff was a threat to anyone; (2) Mrs. McMillan having advocated for Plaintiff to stay enrolled at VSU, and (3) Mrs. McMillan doing everything in her power after the withdrawal to get Plaintiff reinstated to VSU.  (Pf's Motion For Summary Judgment Brief, pp. 15-17, p. 20, pp. 24-26).

Plus, contrary to Mrs. McMillan's having stated that she did not believe Plaintiff was a threat to harm himself or anyone else in her May 8, 2007 letter to President Zaccari and the Board of Regents, President Zaccari "**rejected [Mrs. McMillan's] conclusions" and made the decision to keep Plaintiff's administrative withdrawal in place**.  (Pf's Motion For Summary Judgment Brief, p. 26; McMillan's Motion For Summary Judgment Brief, p. 39, Statement Of Material Facts, ¶ 84, McMillan Dep., Ex. 8). (Emphasis Added).

6

In light of such, it is preposterous for Plaintiff to suggest that Mrs. McMillan somehow became the "linchpin" for President Zaccari's rational to administratively withdraw him from VSU.

### C. Plaintiff Failed To Respond To Several Of Mrs. McMillan's Statement Of Undisputed Material Facts.

Additionally fatal to Plaintiff's case against Mrs. McMillan is his failure to respond to several of her undisputed material facts. Specifically, Plaintiff failed to respond to the following statement of undisputed material facts presented by Mrs. McMillan: 1-2, 5-8, 10-13, 15-19, 21-27, 29, 31-32, 34-35, 37-40, 46-47, 49-53, 55-56, 58-65, 68-81, 83-84. (Pf's Statement Of Disputed Material Facts, pp. 14-27).

According to Local Rule 56.1(B)(2), a response to the movant's statement of undisputed facts "shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts." If a response does not either "directly refute[]," "state a valid objection" to, or "point out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise failed to comply with the provisions set out in LR 56.1 B.(1).," the Court "will deem each of the movant's facts as admitted." Id.; see also Hall v. Graham Packing Co., L.P., 2010 U.S. Dist. LEXIS 9363 (N.D. Ga. 2010). As a result, a litany of dispositive material facts showing that

7

Plaintiff's case against Mrs. McMillan is completely meritless has now been deemed admitted.

Lastly, as it pertains to the statement of material facts tendered by Mrs. McMillan that Plaintiff actually did respond to, several of Plaintiff's responses illustrate the stubbornly indignant nature of his case against Mrs. McMillan.  For instance, Plaintiff repeatedly states that the issue of whether Mrs. McMillan shared information about him **out of retaliation** for his opposing the construction of the VSU parking deck "**is immaterial** to the issue of McMillan's unauthorized disclosure of confidential information." (Pf's Statement Of Disputed Material Facts, No. 33, 41, 42, 45, 54, 57, 66, 85, pp. 18-27).  Plaintiff filed a First Amendment retaliation case against Mrs. McMillan.  How can he with a straight face come before this Court and argue that the issue of whether Mrs. McMillan **retaliated** against him for the purported exercise of his First Amendment rights—**his opposition to the parking garage**—is somehow immaterial?  Likely because the record evidence shows no such retaliation ever took place.

Moreover, Plaintiff continues to advance the patently absurd position that Mrs. McMillan somehow "participated" in the decision made by President Zaccari to withdraw him from VSU simply because she was "present" at meetings with President Zaccari.  (Pf's Statement Of Disputed

8

Material Facts, No. 82, pp. 26-27). As the evidence has shown, the only meetings that Mrs. McMillan attended regarding Plaintiff with President Zaccari was on April 24th and April 26th 2007. (McMillan Aff., ¶ 33; McMillan Dep., p. 19, lines 21-25, p. 20, lines 1-5). Mrs. McMillan was summoned to both meetings. Id. To suggest that Mrs. McMillan's mere presence at these two meetings somehow shows that she "participated" in the decision to administratively withdraw Plaintiff from VSU not only defies logic, it ignores the fact that Mrs. McMillan opposed Plaintiff's withdrawal, and ignores President Zaccari's testimony that the decision was his alone and was made contrary to Mrs. McMillan's having opined to him that Plaintiff was no threat and should remain enrolled at VSU. (McMillan's Brief In Support Of Summary Judgment, pp. 46-47, n.21).

The only conceivable explanation for Plaintiff's continued use of his "participation" theory is that he learned during Mrs. McMillan's deposition **back on July 1, 2009**, that she was not anywhere near the VSU campus on May 3, 2007—the day Plaintiff falsely alleged that Mrs. McMillan attended a meeting where the decision was made to withdraw Plaintiff from VSU. (McMillan's Brief In Support Of Summary Judgment, p. 44; Compl., ¶ 51).

9

## II.     CONCLUSION

The record evidence shows Plaintiff cannot establish a constitutional violation against Mrs. McMillan, nor can he demonstrate that she violated any clearly established law.  As a result, Mrs. McMillan's motion for summary judgment should be granted.

With equal clarity the record evidence establishes that Plaintiff's audacity has no bounds.  Apparently a staff-level counselor's hand delivering a letter to her boss (the President of one of the largest universities in the State of Georgia) that directly opposed action he was taking did not cut it for Plaintiff.  Nor was it good enough that Mrs. McMillan summarized her therapy notes for the law firm representing Plaintiff in this matter so they could better understand them.  Instead of thanking Mrs. McMillan for having done all of this and helping him have his administrative withdrawal overturned by the Board of Regents, he found it more appropriate to sue her.

It became patently clear during this litigation that Plaintiff's animus towards Mrs. McMillan comes from his belief that she should have obtained a waiver of confidentiality from him prior to her discussing his current mental health status with President Zaccari on April 24, 2007.  It may be Plaintiff's prerogative to harbor anger at Mrs. McMillan for not obtaining a waiver, but Plaintiff's ire does not give him legal cause to sue her—the

likely reason his Complaint does not contain a breach of confidentiality cause of action against Mrs. McMillan.  Indeed, the law does not provide Plaintiff a private right of action against Mrs. McMillan for breach of confidentiality.  (McMillan's Brief In Support Of Summary Judgment, pp. 47-48).  Plaintiff knows this.

The closest Plaintiff refrains from attempting to vilify Mrs. McMillan comes via a **footnote** in his opposition brief, where he states that "it is arguable that McMillan could have released some information to Zaccari <u>if she believed</u> there was an actual danger . . . ."  (Pf's Opposition Brief, p. 49, n. 31).  (Emphasis Added).  Plaintiff's statement however only supports what Mrs. McMillan has been saying all along—**she did believe Plaintiff may have been danger**.  As Mrs. McMillan has explained, the inquiries made by VSU Police Major Ann Farmer and President Zaccari regarding whether Plaintiff was a threat came within days after the shootings at Virginia Tech, and Mrs. McMillan believed it was necessary to explain she had never seen that type of behavior from Plaintiff.  As Mrs. McMillan has testified, she did not want "someone going to [Plaintiff's] dorm room and snatching him out" or for "anyone going after him."  (McMillan Aff., ¶ 14; McMillan Dep., p. 81, lines 13-17, p. 94, lines 13-15).

It wasn't lost on Plaintiff the difficult nature of the situation Mrs. McMillan was thrust into. As Plaintiff has stated, "I understand that school counselors are in a tough spot right now following Virginia Tech in terms of risky students. I am insulted I am thought as one." (Winders' Depo., Ex. 5, p. 1). Similarly, Plaintiff's mother testified that "I do believe [Mrs. McMillan's] intentions were to help my son." (Burke Dep., p. 119, line 25, p. 120, line 2).

In recognition of all this, and in light of his admitting he has no evidence of retaliation against her, Plaintiff does not dispute that Mrs. McMillan did not retaliate against him. Instead, he disingenuously states that the issue of retaliation is "immaterial." (Supra, p. 8).

The record evidence establishes that Plaintiff should have dropped Mrs. McMillan from this lawsuit a long time ago. Instead of doing so however, Plaintiff has attempted time and time again to manufacture ways to keep her in. Plaintiff may believe that he was improperly withdrawn from VSU by President Zaccari, but that did not give him a license to wreck as much havoc on as many people as he saw fit—especially upon a woman who he knows did not retaliate against him and was instead an advocate on his behalf.

This 12th day of April, 2010.

                                      **s/ Matthew R. LaVallee, Esq.**
                                      Georgia Bar No. 438196
                                      Attorney for Defendant
                                      LEAH McMILLAN

**DALEY, KOSTER & LAVALLEE, LLC**
Overlook I, Suite 160
2849 Paces Ferry Road
Atlanta, GA 30339
(678) 213-2401 (phone)
(678) 213-2406 (facsimile)
mlavallee@dkllaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THOMAS HAYDEN BARNES,<br><br>  Plaintiff,<br><br>v.<br><br>RONALD M. ZACCARI, et al.,<br><br>  Defendants. | CASE NO.<br>1:08-cv-00077-CAP |

## CERTIFICATE OF SERVICE

This is to certify that on April 12, 2010, I served a copy of **DEFENDANT LEAH MCMILLAN'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MCMILLAN'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record listed below:

**Attorneys for Plaintiff**
Robert Corn-Revere, Esq.
Chris A. Fedeli, Esq.
Erin Reid, Esq.
Davis Wright Tremaine, LLP
1919 Pennsylvania Ave NW Ste 200
Washington, DC 20006
bobcornrevere@dwt.com
chrisfedeli@dwt.com

14

erinreid@dwt.com

Cary Stephen Wiggins, Esq.
Cook Youngelson & Wiggins
260 Peachtree St NW Ste 401
Atlanta, GA 30303
cary@wigginslawgroup.com

**Attorney for the Valdosta State University Defendants**
David C. Will, Esq.
Holly Hance, Esq.
Royal Washburn Will
4799 Sugarloaf Parkway
Building J
Lawrenceville, GA 30044
dwill@royallaw.net
hhance@royallaw.net

**Attorney for Defendant Laverne Gaskins**
David R. Smith, Esq.
Brannen Searcy & Smith
PO Box 8002
22 E 34th St
Savannah GA 31412-8002
Dsmith@brannenlaw.com

                              **s/ Matthew R. LaVallee, Esq.**
                              Georgia Bar No. 438196
                              Attorney for Defendant
                              LEAH McMILLAN

**DALEY, KOSTER & LAVALLEE, LLC**
Overlook I, Suite 160
2849 Paces Ferry Road
Atlanta, GA 30339
(678) 213-2401 (phone)
(678) 213-2406 (facsimile)
mlavallee@dkllaw.com